4/10/25, 12:19 PM    Case 4:25-cv-00084-BSB-CLB - Case Information - Shelia Garcia-Wilder vs Savannah-Chatham County Public School District - 2 of 261-MO

https://researchga.tylerhost.net/CourtRecordsSearch/ViewCasePrint/d42b4fa9418f57be82d25bca58ddd1fd

## Case Information

## Shelia Garcia-Wilder vs Savannah-Chatham County Public School District

SPCV24-01173-MO

Location
Chatham County - Superior Court

Case Category
Civil

Case Type
Tort - Other

Case Filed Date
10/8/2024

Judge
Morse, John E., Jr.

Case Status
Open (Open)

## Parties [2]

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| Plaintiff/Petitioner | Shelia Garcia-Wilder | | Matthew Carl Billips, S. Wesley Woolf |
| Defendant/Respondant | Savannah-Chatham County Public School District | | Andrew Harrison Dekle |

## Events [18]

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 10/8/2024 | Filing | Complaint - Filed | Tort -Other with Exhibits | Garcia-Wilder - Renewed Complaint - Final (w Exs).pdf |
| 10/8/2024 | Filing | Summons | Savannah-Chatham County Public School District | Renewed Complaint - Summons.pdf |
| 10/8/2024 | Filing | Certification - Under Rule 3.2 | x | Renewed Complaint - Rule 3.2 Certificate.pdf |
| 10/8/2024 | Filing | Case - Filing Form | x | Renewed Complaint - Civil Info Form.pdf |
| 10/17/2024 | Filing | Affidavit - Of Service | Corporate Service Savannah Chatham County Public Schools via Michelle Finch-Wirth October 11, 2024 | Affidavit of Process Server.pdf |
| 11/8/2024 | Filing | Extension Of Time To Answer | for Defendant to File an Answer or Otherwise Responsive Pleadings | 11.08.24 Stipulation for Extension of Time to Answer.pdf |
| 11/12/2024 | Filing | Leave Of Absence | Andrew H. Dekle | AHD LOA (Chatham - Superior) (SPCV24-01173-MO) (11-12-24).pdf |
| 12/10/2024 | Filing | Motion - To Dismiss | Renewal Suit | Motion-Dismiss-Renewal-Action-12-10-24.pdf |
| 12/10/2024 | Filing | Answer - Filed | of Defendant to Renewal Complaint | Answer - Renewal Complaint-12-20-24.pdf |
| 12/20/2024 | Filing | Extension Of Time To Answer | Stipulation for Extension of Time to File Response to Defendant's Motion to Dismiss | Stipulation for Extension of Time to File Response to Defendant's Motion to Dismiss.pdf |
| 2/10/2025 | Filing | Response - | Plaintiff's Response In Opposition to Defendant's Motion to Dismiss | Garcia-Wilder - Response to MTD (021025) - Final.pdf |
| 3/12/2025 | Filing | Amendment - | Amended Complaint | Garcia-Wilder - Amended Renewed Complaint - Final w Exhibits.pdf |
| 3/17/2025 | Filing | Brief | Reply Brief in Support of Motion to Dismiss Renewal Suit | Reply-In-Support-Motion-Dismiss-Renewal-Action-3-17-25.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 3/20/2025 | Filing | Motion - | to Strike Defendant's Reply Brief in Support of Motion to Dismiss Renewal Suit or, in the Alternative, Motion for Leave to File Sur-Reply in Support of Plaintiff's Response to Defendant's Motion to Dismiss Renewal Suit with Certificate of Service and Proposed Order | Garcia-Wilder - M to Strike Reply or for Order Allowing Surreply - Final.pdf, Garcia-Wilder - Proposed Order on M to file sur-reply.pdf |
| 3/27/2025 | Filing | Leave Of Absence | Andrew H. Dekle | AHD LOA (SPCV24-01173-MO)(Garcia-Wilder v. SCCPSS).pdf |
| 3/27/2025 | Filing | Motion - To Dismiss | Motion to Dismiss First Amended Complaint in Renewal Suit | Motion to Dismiss Amended Complaint (3-27-25) .pdf |
| 4/3/2025 | Filing | Brief | Plaintiff's Sur-Reply in Opposition to Motion to Dismiss | Garcia-Wilder - Surreply to MTD (040325) - Final.pdf |
| 4/10/2025 | Filing | Response - | to Motion to Strike Defendants Reply Brief in Support of Motion to Dismiss Renewal Suit, or in the Alternative for Leave to File Sur-Reply Brief | Def's Resp to Motion to Strike Reply Brief (4-10-25).pdf |

© 2025 Tyler Technologies, Inc. | All Rights Reserved
Version: 2024.9.0.585


EMPOWERED BY
TYLER TECHNOLOGIES

SPCV24-01173

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 10/8/2024 6:10 PM
Reviewer: DH

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **SHELIA GARCIA-WILDER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO.** |
| | : | SPCV24-01173 |
| | : | _____ |
| | : | |
| **SAVANNAH-CHATHAM COUNTY** | : | |
| **PUBLIC SCHOOL DISTRICT,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

---

### COMPLAINT

COMES NOW Plaintiff Shelia Garcia-Wilder and hereby files this Complaint against the above-named Defendants pursuant to the Georgia Whistleblower Act showing this Court as follows:

### RENEWAL ACTION

1.

This is a renewal action pursuant to O.C.G.A. § 9-2-61. The prior case was pending in this Court *sub nom* Shelia Garcia-Wilder v. Savannah-Chatham County Public School District, SPCV21-00522-MO. A true and accurate copy of the filed Complaint in that action is attached as Exhibit A; a true and accurate copy of the filed Summons, Affidavit of Service, Case Filing Information Form and Rule 3.2

Certificate attached as Exhibit B; and a true and accurate copy of the Answer of Defendant filed in that action is attached as Exhibit C.

2.

Plaintiff brings this renewal action within the applicable statute of limitations and within six (6) months of voluntarily dismissing the original action without prejudice. See copy of Dismissal Without Prejudice attached Exhibit D.

3.

Plaintiff has confirmed with the Clerk of Superior Court of Chatham County and affirms here that all costs in the prior action are paid pursuant to O.C.G.A. § 9-2-61 and O.C.G.A. § 9-11-41.

4.

This action includes substantially the same cause of action and the prior case was filed within the statute of limitations applicable to the claims therein. The prior case was not void, nor was it dismissed on the merits; and the prior case was such a valid suit as may be renewed under O.C.G.A. § 9-2-61 and O.C.G.A. § 9-11-41. Plaintiff incorporates herein by reference the record in the referenced prior case.

**JURISDICTION AND VENUE**

5.

The jurisdiction of this Court is conferred pursuant to the Georgia Civil Practice Act, including O.C.G.A. §§ 9-10-30 and 9-10-91.

6.

The Defendant's principal, and only, place of business is located in Chatham County, Georgia.

7.

All claims in this action are timely filed within the statute of limitations applicable to claims under the Georgia Whistleblower Act.

**PARTIES**

8.

Plaintiff Shelia Garcia-Wilder is a resident of Chatham County, Georgia who is entitled to bring actions of this type and nature.    At all times relevant to the claims asserted here, Plaintiff Garcia-Wilder was employed by Defendant, first as Chief of Schools until her demotion to Senior Grant Writer.    She is presently being demoted again to the position of Grant Writer.

9.

Dr. Garcia-Wilder holds a Doctor of Education degree, a Master of Education degree, and a Bachelor of Science degree in elementary education.    She has 30 years of experience of working in rural, urban, and small metro counties throughout Georgia at all levels, including in the roles of Georgia Department of Education (GDOE) state director, chief of schools, assistant superintendent of teaching and learning, chief academic officer, turnaround principal, director of school

improvement, assistant principal, undergraduate, graduate associate professor, and classroom teacher.

10.

Defendant Savannah-Chatham County Public School District ("SCCPSS") is a public school district organized under Georgia law and is a governmental entity providing public education services in Chatham County, Georgia.   Defendant may be served by personal service on its chief executive officer, Superintendent S. Denise Watts, Ed.D., at 208 Bull Street, Savannah, Georgia 31401.

11.

Defendant SCCPSS was, at all times relevant to this action, Dr. Garcia-Wilder's employer and was and is a public employer as that term is defined by the Georgia Whistleblower Act. Dr. Garcia-Wilder was, at all times relevant to this action, a public employee as that term is defined by the Georgia Whistleblower Act.

## **FACTS**

12.

Plaintiff began her employment with SCCPSS at the beginning of the 2019-2020 school year, in approximately July 2019 as Chief of Schools, a position that was part of the SCCPSS Division of Academic Affairs and reported directly to then-Superintendent M. Ann Levett, Ed.D.

13.

Dr. Garcia-Wilder performed her positions of employment with SCCPSS at a satisfactory level at all times.

14.

As Chief of Schools, Dr. Garcia-Wilder's performance responsibilities were substantial, and included:

a. leading the planning and implementation process to increase student achievement,

b. overseeing school and central office departmental budgets,

c. overseeing the management and governance of schools,

d. supervising the executive directors of schools,

e. supporting principals in their work to improve student learning,

f. providing professional learning to district and building leadership, and

g. reviewing and developing practices to improve student discipline and best practices of school leadership to address students' academic, behavioral, and social-emotional learning needs.

15.

A substantial responsibility of Dr. Garcia-Wilder as Chief of Schools was the oversight of student discipline proposed by SCCPSS principals, including discipline in the form of long-term suspensions and expulsions.

16.

Prior to becoming Superintendent, Superintendent Levett was employed by the SCCPSS as its Deputy Chief Academic Officer from 2013-2017 and was responsible for student attendance and for oversight of student discipline proposed by SCCPSS principals.

17.

In an audit of the school disciplinary process in 2010, the auditor determined that there existed conditions of inconsistent handling of student discipline, and inaccurate reporting of discipline data by the Division of Academic Affairs. The 2010 Audit revealed:

> During the course of the audit, we identified concerns related to the documentation of student discipline data that we felt needed immediate action. We brought these concerns to the attention of District management in April 2010.

In April 2010, the District was notified by the Georgia Department of Education (GDOE) that "based on an analysis of this data, Chatham County School System is 'at serious risk' for having significant disproportionality for the discipline of SWD [students with disabilities]."

18.

At the time of the 2010 audit findings, David Feliciano (Dr. Garcia-Wilder's supervisor at the time of her second demotion – see below) was employed by the SCCPSS as its Chief Data and Accountability Officer, now Chief Technology

Officer, a position he still holds, and he was responsible for reporting accurate discipline and attendance data to the GDOE.

19.

Immediately after her employment began as Chief of Schools in the Division of Academic Affairs, in August and September 2019, Dr. Garcia-Wilder began receiving from school principals, through Executive Directors (the principals' direct supervisors), discipline recommendations indicating a failure to follow standards and procedures required by law. Dr. Garcia-Wilder was responsible for approving or disapproving these recommendations.

20.

Case law has established that Constitutional due process requires that students for whom long-term suspension or expulsion is proposed must be offered a hearing (to determine whether the suspension or expulsion is appropriate) before a neutral decision-maker within approximately ten (10) days after the proposed action. *Goss v. Lopez*, 419 U.S. 565 (1975), O.C.G.A. § 20-2-754.

21.

All qualified school-aged children with a disability have a statutory right to a free and public education (FAPE) and may not, "solely by reason of their disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under SCCPSS programs and activities. 29 U.S.C. § 504

(Rehabilitation Act), 20 U.S.C. § 1400, *et seq*., (Individuals with Disabilities Education Act of 2004 (IDEA)).

22.

According to the recommendations for discipline received in the 2019-2020 school year by Dr. Garcia-Wilder from school principals and approved by Executive Directors, SCCPSS students were being recommended for long-term suspension or expulsion, alternatively or in combination:

1. without a discipline notice to their parents,

2. without a report to the GDOE,

3. without a manifestation determination review (MDR) required by the IDEA and Section 504 of the Rehabilitation Act in circumstances of a student with a disability,

4. without determination of whether a disability was the cause of their conduct (in circumstances that suggested further review for whether a disability existed),

5. without following a disabled student's Individualized Education Program (IEP) required by the IDEA, and/or

6. without a hearing required by due process clause of the Fourteenth Amendment to the Constitution of the United States, by 20 U.S.C. § 1415(a) through (k), and by O.C.G.A. § 20-2-754.

23.

Further, certain suspended or expelled students were falsely recorded as present in the classroom – data required to be reported to federal and state governments. Given federal statutes tying federal funding to students present in the classroom, false reporting of presence in the classroom permitted continued, uninterrupted access to that funding and complete denial of services to the children.

24.

Further, the recommended suspensions or expulsions of these students were not being recorded and reported. State law requires accurate reporting of attendance and disciplinary incidents for the purpose of determining a school "climate" rating, a public rating used by GDOE as a diagnostic tool to determine if a school is on the right path to school improvement. See O.C.G.A. §§ 20-2-690.2, 20-14-33.

25.

In October 2019, Dr. Garcia-Wilder communicated to Superintendent Levett that she was disapproving suspension and expulsion recommendations from Executive Directors and school principals because of failures to follow the legal standards set forth above.

26.

Moreover, it was apparent from the data collected by Dr. Garcia-Wilder and her team that suspensions and expulsions were occurring in a manner disproportionately impacting Black male students and students with disabilities.

27.

Discrimination against students on the basis of their race is protected under federal law, including without limitation, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*

28.

Before the end of October 2019, Dr. Garcia-Wilder met with Superintendent Levett and informed her that there was a substantial decrease in elementary school academics and that the decrease may be related to disproportionate discipline of disabled and Black male students and because of attendance issues (e.g., if students are not in school, they are not learning). At this time, Superintendent Levett threatened Dr. Garcia-Wilder, indicating that she could remove Dr. Garcia-Wilder from her position and place her in a position where she would "feel comfortable."

29.

In another meeting in November 2019, Superintendent Levett acknowledged to Dr. Garcia-Wilder that she (Superintendent Levett) also disapproved recommended suspensions and expulsions before she became Superintendent and

when she was responsible for such matters, but explained "I did not do it the way you were doing it by putting it in writing."

30.

In January 2020, Dr. Garcia-Wilder discovered that a Black male student was suspended from school without referral to her and without the student having been afforded due process. Upon informing Superintendent Levett of the incident, Superintendent Levett directed Dr. Garcia-Wilder to meet with Chief of Human Resources Ramon Ray, whereupon Mr. Ray made it clear to Dr. Garcia-Wilder that she should proceed no further in "opening a can of worms" relating to the failure to report the fact of students being sent home, the failure to report student absences as suspensions and relating further to the fact of race-related and disability-related disproportional disciplinary measures.

31.

The same failures to comply with the law revealed in the 2010 Audit apparently continued under Superintendent Levett's tenure as a Deputy Chief Academic Officer from 2013-2017 and remained a recurring reality for families and students attending SCCPSS schools in the 2019-2020 school year.

32.

On May 12, 2020, Dr. Garcia-Wilder was informed by Chief Data and Accountability Officer, David Feliciano and Chief Human Resources Officer,

Ramon Ray, that her position was being eliminated in the following school year because of budget issues.

33.

On the same day, the other Chief of Schools position under Superintendent Levett's direct supervision, held by Dr. Garret Brundage, was eliminated for the same alleged reason.   Dr. Brundage worked closely with Dr. Garcia-Wilder in reporting due process violations, disproportionate disciplinary action against students with disabilities and racial minority students, and other violations of law noted hereinabove.

**RETALIATION IN VIOLATION OF**
**THE GEORGIA WHISTLEBLOWER ACT**

34.

The Georgia Whistleblower Act provides the following prohibitions against retaliation against employees who complain of misconduct by public employers:

> (d)(1) No public employer shall make, adopt, or enforce any policy or practice preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

> (2) No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

> (3) No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or

<strong>Page 12 of 18</strong>

practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

O.C.G.A. § 45-1-4(d).

35.

Between September 2019 and the date of her May 2021 demotion, Dr. Garcia-Wilder engaged in several actions which are protected under O.C.G.A. § 45-1-4(c), in that she both disclosed violations of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency and she objected to, and refused to participate in, activities, policies, or practices of SCCPSS that she had reasonable cause to believe were a violation of or noncompliance with a law, rule, or regulation.

36.

The policies and practices of SCCPSS prevented Dr. Garcia-Wilder from further disclosing violations or noncompliance with laws, rules and regulations to either a supervisor or a government agency.

37.

With its May 12, 2020 demotion of Dr. Garcia-Wilder, Defendant SCCPSS removed her entirely from the Division of Academic Affairs where she would have any authority over the violations of law of which she complained. She was

designated as "Senior Grant Writer" and her salary was reduced by approximately $40,000.

38.

Again in May 2021, despite satisfactory performance during the 2020-2021 school year, Dr. Garcia was further demoted with assignment to a position designated as "Grant Writer," with a further reduction in responsibilities and a further approximate $37,000 reduction in salary.

39.

The demotions of Dr. Garcia-Wilder were in retaliation for her reports of violations of, or noncompliance with, laws, rules and regulations to Dr. Levett, her supervisor and in retaliation for her refusal to participate in, activities, policies, or practices of the SCCPSS that she reasonably believed to be a violation of or noncompliance with a law, rule, or regulation.

40.

Dr. Garcia-Wilder was forced from the workplace by, among other things, the extreme reductions in salary and the isolation from professional work for which she had built a career of expertise and accomplishment.

41.

Like any other reasonable person, Dr. Garcia-Wilder could not tolerate the substantial loss of income and workplace humiliation she experienced at the instance

of Dr. Levett and the SCCPSS, and she resigned.

42.

Retaliation continued after she was forced from the job when applying for numerous job positions approximating her professional status as Chief of Schools for SCCPSS and available with SCCPSS. She never received an interview and persons dramatically less qualified than her received interviews and were hired.

43.

As a result of the retaliatory conduct of the Superintendent and supervisory personnel in violation of the Georgia Whistleblower Act as set forth above, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation, and has further suffered and will continue to suffer mental and emotional distress.

44.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were willful, wanton and intentionally directed to harm the Plaintiff.

45.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were reckless and taken in willful disregard of the probable consequences of their actions.

46.

As a direct and proximate result of Defendant SCCPSS's conduct, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

47.

Defendant SCCPSS's actions and failures to act were the proximate cause of the harm suffered by Dr. Garcia-Wilder as alleged herein.

48.

Defendant SSCPSS is responsible for the unlawful conduct of Dr. Levett and others, and Dr. Garcia-Wilder seeks from SCCPSS all financial and other damages for which recovery is provided under the Georgia Whistleblower Act, including reinstatement to her former position as Chief of Schools of SCCPSS. O.C.G.A. § 45-1-4(e).

49.

The Georgia Whistleblower Act further authorizes Dr. Garcia-Wilder to recover her costs of litigation, including her reasonable attorney fees and, in accordance with law, she seeks recovery of those costs and fees. O.C.G.A. § 45-1-4(f).

50.

Dr. Garcia-Wilder seeks all relief authorized by the Georgia Whistleblower Act and state law from this Court for SCCPSS's violations of those laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following specific and general relief:

a.    That he she be reinstated to her position as Chief of Schools or an equivalent position, with all salary, benefits, and other emoluments of employment to which she would have been entitled but for Defendant's unlawful acts.

b.    That she receive full lost wages with prejudgment interest and employee benefits, including applicable retirement benefits.

c.    That all documents relating to Plaintiff's demotion be expunged, destroyed, and never referenced again by Defendant, except as necessary to afford full and complete relief to Plaintiff;

d.    That she receive compensatory damages for mental and emotional distress in an amount to be determined in the enlightened conscience of the jury;

e.    That she receive nominal damages for the deprivation of her protected rights;

f.    That she receive attorneys' fees, costs, and expenses of litigation

pursuant to O.C.G.A. § 45-1-4 and other applicable law.

g.    That she receive a trial by jury; and

h.    That she receive such other and further relief as the Court deems

just and proper.

RESPECTFULLY SUBMITTED, this 8th day of October, 2024.

WOOLF LAW

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Counsel for Plaintiff*

WOOLF LAW
2509 Bull Street
Savannah, Georgia 31405
T: (912) 201-3696
F: (912) 201-3699
woolf@woolflawfirm.net

BARRETT & FARAHANY

/s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
*Counsel for Plaintiff*

BARRETT & FARAHANY
3344 Peachtree Rd., NE
Suite 800
Atlanta, GA 30326
(470) 284-7265
matt@justiceatwork.com

# EXHIBIT A

Complaint

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

SPCV21-00522

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **SHELIA GARCIA-WILDER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO.** |
| | : | **SPCV21-00522** |
| | : | |
| **SAVANNAH-CHATHAM COUNTY** | : | |
| **PUBLIC SCHOOL DISTRICT,** | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

## COMPLAINT

COMES NOW Plaintiff Shelia Garcia-Wilder and hereby files this Complaint against the above-named Defendants on the following grounds:

### NATURE AND PURPOSE

1.

This is a lawsuit brought against Defendant Savannah-Chatham County Public School District ("SCCPSS") because of the conduct of its Superintendent M. Ann Levett, Ed.D. and other employees of the SCCPSS for retaliation against Plaintiff Shelia Garcia-Wilder in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4.

## JURISDICTION AND VENUE

### 2.

The jurisdiction of this Court is conferred pursuant to the Georgia Civil Practice Act, including O.C.G.A. § 9-10-30 and 9-10-91.

### 3.

The Defendant's principal, and only, place of business is located in Chatham County, Georgia.

### 4.

This action is timely filed within the statute of limitations applicable to claims under the Georgia Whistleblower Act.

## PARTIES

### 5.

Plaintiff Shelia Garcia-Wilder is a resident of Chatham County, Georgia who is entitled to bring actions of this type and nature. At all times relevant to the claims asserted here, Plaintiff Garcia-Wilder was employed by Defendant, first as Chief of Schools until her demotion to Senior Grant Writer. She is presently being demoted again to the position of Grant Writer.

### 6.

Dr. Garcia-Wilder holds a Doctor of Education degree, a Master of Education degree, and a Bachelor of Science degree in elementary education. She has 30 years

of experience of working in rural, urban, and small metro counties throughout Georgia at all levels, including Georgia Department of Education state director, chief of schools, assistant superintendent of teaching and learning, chief academic officer, turnaround principal, director of school improvement, assistant principal, undergraduate, graduate associate professor, and classroom teacher.

7.

Defendant Savannah-Chatham County Public School District ("SCCPSS") is a public school district organized under Georgia law and is a governmental entity providing public education services in Chatham County, Georgia. Defendant may be served by personal service on its chief executive officer, Superintendent M. Ann Levett, Ed.D., at 208 Bull Street, Savannah, Georgia 31401.

8.

Defendant SCCPSS was, at all times relevant to this action, Dr. Garcia-Wilder's employer and was and is a public employer as that term is defined by the Georgia Whistleblower Act. Dr. Garcia-Wilder was, at all times relevant to this action, a public employee as that term is defined by the Georgia Whistleblower Act.

## FACTS

9.

Plaintiff began her employment with SCCPSS at the beginning of the 2019-2020 school year, in approximately July 2019 as Chief of Schools, a position that

was part of the SCCPSS Division of Academic Affairs and reported directly to the Superintendent.

10.

Dr. Garcia-Wilder performed her positions of employment with SCCPSS at a satisfactory level at all times.

11.

As Chief of Schools, Dr. Garcia-Wilder's performance responsibilities were substantial, and included:

a. leading the planning and implementation process to increase student achievement,

b. overseeing school and central office departmental budgets,

c. overseeing the management and governance of schools,

d. supervising the executive directors of schools,

e. supporting principals in their work to improve student learning,

f. providing professional learning to district and building leadership, and

g. reviewing and developing practices to improve student discipline and best practices of school leadership to address students' academic, behavioral, and social-emotional learning needs.

12.

A substantial responsibility of Dr. Garcia-Wilder as Chief of Schools was the oversight of student discipline proposed by SCCPSS principals, including discipline in the form of suspensions and expulsions.

13.

Prior to becoming Superintendent, Superintendent Levett was employed by the SCCPSS as its Deputy Chief Academic Officer from 2013-2017 and was responsible for student attendance and for oversight of student discipline proposed by SCCPSS principals.

14.

In an audit of the school disciplinary process in 2010, the auditor determined that there existed conditions of inconsistent handling of student discipline, and inaccurate reporting of discipline data by the Division of Academic Affairs. The 2010 Audit revealed:

> During the course of the audit, we identified concerns related to the documentation of student discipline data that we felt needed immediate action.   We brought these concerns to the attention of District management in April 2010.

In April 2010, the District was notified by the Georgia Department of Education (GDOE) that "based on an analysis of this data, Chatham County School System is 'at serious risk' for having significant disproportionality for the discipline of SWD [students with disabilities]."

Page **5** of **16**

15.

At the time of the 2010 audit findings, David Feliciano (Dr. Garcia-Wilder's supervisor at the time of her second demotion – see below) was employed by the SCCPSS as its Chief Data and Accountability Officer, a position he still holds, and he was responsible for reporting accurate discipline and attendance data to the GDOE.

16.

Immediately after her employment as Chief of Schools in the Division of Academic Affairs, in August and September 2019, Dr. Garcia-Wilder began receiving from school principals discipline recommendations indicating a failure to follow procedures required by law.   Dr. Garcia-Wilder was responsible for approving or disapproving these recommendations.

18.

Case law has developed a determination that Constitutional due process requires that students for whom long-term suspension or expulsion is proposed must be offered a hearing before a neutral decision-maker within approximately ten (10) days after the proposed action. *Goss v. Lopez*, 419 U.S. 565 (1975), O.C.G.A. § 20-2-754.

19.

All qualified school-aged children with a disability have a statutory right to a free and public education (FAPE) and may not, "solely by reason of their disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under SCCPSS programs and activities. 29 U.S.C. § 504 (Rehabilitation Act), 20 U.S.C. § 1400, *et seq*., (Individuals with Disabilities Education Act of 2004 (IDEA)).

20.

According to the recommendations received in the 2019-2020 school year by Dr. Garcia-Wilder from school principals and approved by Executive Directors (the principals' supervisors), SCCPSS students were being recommended for long-term suspension or expulsion, alternatively or in combination:

1.   without a discipline notice to their parents,

2.   without a report to the GDOE,

3.   without a manifestation determination review (MDR) required by the IDEA and Section 504 of the Rehabilitation Act in circumstances of a student with a disability,

4.   without determination of whether a disability was the cause of their conduct (in circumstances that suggested further review for whether a disability existed),

5. without following a disabled student's Individualized Education Program (IEP) required by the IDEA, and/or

6. without a hearing required by due process clause of the Fourteenth Amendment to the Constitution of the United States and by O.C.G.A. § 20-2-754.

21.

Further, certain suspended or expelled students were falsely recorded as present in the classroom – data required to be reported to federal and state governments.  Given federal statutes tying federal funding to students present in the classroom, false reporting of presence in the classroom allows continued, uninterrupted access to that funding.

22.

Further, the recommended suspensions or expulsions of these students were not being recorded and reported.  State law requires accurate reporting of attendance and disciplinary incidents for the purpose of determining a school "climate" rating, a public rating used by GDOE as a diagnostic tool to determine if a school is on the right path to school improvement. See O.C.G.A. §§ 20-2-690.2, 20-14-33.

23.

In October 2019, Dr. Garcia-Wilder communicated to Superintendent Levett that she was disapproving suspension and expulsion recommendations from school principals because of failures to follow the legal standards set forth above.

24.

Moreover, it was apparent from the data collected by Dr. Garcia-Wilder and her team that suspensions and expulsions were occurring in a manner disproportionately impacting Black male students and students with disabilities.

25.

Discrimination against students on the basis of their race is protected under federal law, including without limitation, Title IV and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

26.

Before the end of October 2019, Dr. Garcia-Wilder met with Superintendent Levett and informed her that there was a substantial decrease in elementary school academics and that the decrease may be related to disproportionate discipline of disabled and Black male students and because of attendance issues (e.g., if students are not in school, they are not learning).  At this time, Superintendent Levett threatened Dr. Garcia-Wilder, indicating that she could remove Dr. Garcia-Wilder from her position and place her in a position where she would "feel comfortable."

27.

In another meeting in November 2019, Superintendent Levett acknowledged to Dr. Garcia-Wilder that she (Superintendent Levett) also disapproved some recommended suspensions and expulsions before she became Superintendent and when she was responsible for such matters, but stated "I did not do it the way you were doing it by putting it in writing."

28.

In January 2020, Dr. Garcia-Wilder discovered that a Black male student was suspended from school without referral to her and without the student having been afforded due process.  Upon informing Superintendent Levett of the incident, Superintendent Levett directed Dr. Garcia-Wilder to meet with Chief of Human Resources Ramon Ray, whereupon Mr. Ray made it clear to Dr. Garcia-Wilder that she should proceed no further in "opening a can of worms" relating to the failure of administrators to report the fact of students being sent home, the failure of administrators to report them as suspensions and the fact of race-related and disability-related disproportional disciplinary measures.

29.

The same failures to comply with the law revealed in the 2010 Audit apparently continued under Superintendent Levett's tenure as a Deputy Chief

Academic Officer from 2013-2017 and remained a recurring reality for families and students attending SCCPSS schools in the 2019-2020 school year.

30.

On May 12, 2020, Dr. Garcia-Wilder was informed by Chief Data and Accountability Officer, David Feliciano and Chief Human Resources Officer, Ramon Ray, that her position was being eliminated because of budget issues.

31.

On the same day, the other Chief of Schools position under Superintendent Levett's direct supervision, held by Dr. Garret Brundage, was eliminated for the same alleged reason. Dr. Brundage worked closely with Dr. Garcia-Wilder in reporting due process violations, disproportionate disciplinary action against students with disabilities and racial minority students, and other violations of law noted hereinabove.

## RETALIATION IN VIOLATION OF
## THE GEORGIA WHISTLEBLOWER ACT

32.

The Georgia Whistleblower Act provides the following prohibitions against retaliation against employees who complain of misconduct by public employers:

> (d)(1) No public employer shall make, adopt, or enforce any policy or practice preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

Page **11** of **16**

(2) No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

(3) No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

O.C.G.A. § 45-1-4(d).

33.

Between September 2019 and the date of her May 2021 demotion, Dr. Garcia-Wilder engaged in several actions which are protected under O.C.G.A. § 45-1-4(c), in that she both disclosed violations of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency and she objected to, and refused to participate in, activities, policies, or practices of the Defendants that she had reasonable cause to believe are a violation of or noncompliance with a law, rule, or regulation.

34.

The policies and practices of SCCPSS prevented Dr. Garcia-Wilder from further disclosing violations or noncompliance with laws, rules and regulations to either a supervisor or a government agency.

35.

With its May 12, 2020 demotion of Dr. Garcia-Wilder, Defendant SCCPSS removed her entirely from the Division of Academic Affairs where she would have any authority over the violations of law of which she complained. She was designated as "Senior Grant Writer" and her salary was reduced by approximately $40,000.

36.

Now again in May 2021, despite satisfactory performance during the 2020-2021 school year, Dr. Garcia is being further demoted with assignment to a position designated as "Grant Writer," with a further reduction in responsibilities and a further approximate $37,000 reduction in salary.

37.

As a result of the retaliatory conduct of the Superintendent and supervisory personnel in violation of the Georgia Whistleblower act as set forth above, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

38.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were willful, wanton and intentionally directed to harm the Plaintiff.

39.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were reckless and taken in willful disregard of the probable consequences of their actions.

40.

As a direct and proximate result of Defendant SCCPSS's conduct, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

41.

Defendant SCCPSS's actions and failures to act were the proximate cause of the harm suffered by Dr. Garcia-Wilder as alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following specific and general relief:

a.      That he she be reinstated to her position as Chief of Schools or an equivalent position, with all salary, benefits, and other emoluments of employment to which she would have been entitled but for Defendant's unlawful acts.

b.      That she receive full lost wages with prejudgment interest and employee benefits, including applicable retirement benefits.

c.      That all documents relating to Plaintiff's demotion be expunged, destroyed, and never referenced again by Defendant, except as necessary to afford full and complete relief to Plaintiff;

d.      That she receive compensatory damages for mental and emotional distress in an amount to be determined in the enlightened conscience of the jury;

e.      That she receive nominal damages for the deprivation of her protected rights;

f.      That she receive attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 45-1-4 and other applicable law.

g.      That she receive a trial by jury;

h.      And that she receives such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 12th day of May, 2021.

**WOOLF LAW**

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Attorney for Plaintiff*

Page **15** of **16**

**WOOLF LAW**
**408 East Bay Street**
**Savannah, Georgia 31401**
**T: (912) 201-3696**
**F: (912) 236-1884**
**woolf@woolflawfirm.net**

# EXHIBIT B

Summons,  Affidavit of Service, Case Filing Information Form, and Rule 3.2 Certificate

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

SPCV21-00522

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

SHELIA GARCIA-WILDER,                    :
                                         :
        Plaintiff,                   :
                                         :
vs.                                      :    CIVIL ACTION NO.
                                         :
                                         :    **SPCV21-00522**
                                         :
SAVANNAH-CHATHAM COUNTY                  :
PUBLIC SCHOOL DISTRICT,                  :
                                         :
                                         :
        Defendant.                   :

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

**Savannah-Chatham County Public School District
c/o M. Ann Levett, Ed.D., Superintendent of Schools
208 Bull Street
Savannah, Georgia 31401**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

**WOOLF LAW FIRM
408 East Bay Street
Savannah, Georgia 31401**

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This ____**12th**____ day of ____**May**____, 2021

                  TAMMIE MOSLEY
                  Clerk of Superior Court
                  CHATHAM COUNTY

                  By _____
                  Deputy Clerk

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

**Instructions: Attach**

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev 04

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
### STATE OF GEORGIA

SHELIA GARCIA-WILDER,                    :
                                          :
            Plaintiff,                    :
                                          :
                                          :
vs.                                       :          CIVIL ACTION NO.
                                          :
                                          :          **SPCV21-00522**
                                          :
SAVANNAH-CHATHAM COUNTY                   :
PUBLIC SCHOOL DISTRICT,                   :
                                          :
                                          :
            Defendant.                    :
                                          :

---

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

**Savannah-Chatham County Public School District**
**c/o M. Ann Levett, Ed.D., Superintendent of Schools**
**208 Bull Street**
**Savannah, Georgia 31401**

Filed in the Clerk's Office this **2th** day of May, 2021.

Clerk, Dep. Clerk, S.C.C.C. GA

S. WESLEY WOOLF
PLAINTIFF'S ATTORNEYS

===================================

SPCV21-00522-CO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/14/2021 4:47 PM
Reviewer: MS

# Affidavit of Process Server

### THE SUPERIOR COURT OF CHATHAM COUNTY, STATE OF GEORGIA
(NAME OF COURT)

Shelia Garcia-Wilder _____ vs Savannah-Chatham County Public School District  SPCV21-00522

PLAINTIFF/PETITIONER                    DEFENDANT/RESPONDENT                    CASE NUMBER

I Michael A. Palmer _____, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served Savannah-Chatham County Public School District

NAME OF PERSON / ENTITY BEING SERVED

with (list documents) Summons; Complaint; Case Filing Info; 3.2 Certification and Standing Order Notice

by leaving with Savannah-Chatham County Public School District, c/o Dr. M. Ann Levett, Ed.D.   **Superintendent of Schools**   At

NAME                                        RELATIONSHIP

☐ Residence _____    Savannah, Georgia

ADDRESS                                        CITY / STATE

☑ Business Savannah-Chatham County Public School District, 208 Bull Street   Savannah, Georgia

ADDRESS                                        CITY / STATE

On May 13, 2021 _____ AT 4:13 PM _____

DATE                                                TIME

☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

Thereafter copies of the documents were mailed by prepaid, first class mail on_____

DATE

from_____

CITY            STATE            ZIP

**Manner of Service:**

☑ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.

☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address    ☐ Moved, Left no Forwarding    ☐ Service Cancelled by Litigant  ☐ Unable to Serve in Timely Fashion

☐ Address Does Not Exist ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____    (2)_____

DATE        TIME                    DATE        TIME

(3)_____ (4)_____    (5)_____

DATE        TIME        DATE        TIME        DATE        TIME

**Description:.** Age 65   Sex Female  Race Black Height 5' 9"   Weight 200 lbs Hair Blk   Beard No   Glasses Yes

_____

SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this 14th   day of May _____, 20 21

Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the State of Georgia

FORM 2        NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

SPCV21-00522

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

**General Civil and Domestic Relations Case Filing Information Form**

☐ Superior or ☐ State Court of <u>Chatham</u> County For Clerk Use

| Only | | |
|---|---|---|
| Date Filed | **5/13/2021** | Case Number **SPCV21-00522** |
| | **MM-DD-YYYY** | |

**Plaintiff(s)**
**GARCIA-WILDER , SHELIA**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**
**SAVANNAH-CHATHAM COUNTY PUBLIC SCHOOL**
**DISTRICT**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** S. Wesley Woolf                **State Bar Number** 776175  **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
    Automobile Tort
    Civil Appeal
    Contempt/Modification/Other
    Post-Judgment
    Contract
    Garnishment
    General Tort
    Habeas Corpus
    Injunction/Mandamus/Other Writ
    Landlord/Tenant
    Medical Malpractice Tort
    Product Liability Tort
    Real Property
    Restraining Petition
    X <u>Other General Civil</u>

**Domestic Relations Cases**
☐    Adoption
☐    Contempt
    ☐ Non-payment of child support, medical support, or alimony
☐    Dissolution/Divorce/Separate Maintenance/Alimony
☐    Family Violence Petition
☐    Modification
    ☐ Custody/Parenting Time/Visitation
☐    Paternity/Legitimation
☐    Support – IV-D
☐    Support – Private (non-IV-D)
☐    Other Domestic Relations

☐    Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____      _____
    **Case Number**                **Case Number**

☐    I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐    Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐    Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

SPCV21-00522

## RULE 3.2 CERTIFICATION AND STANDING ORDER NOTICE

**Pursuant to rules 3.2 and 3.4 of the Uniform Superior Court Rules, I hereby certify that:**

(CHECK ONE)

[X ] no case has heretofore been filed in the Superior Court of the Eastern Judicial Circuit involving substantially the same parties or substantially the same subject matter or substantially the same factual issues which would require the petition-pleading to be specifically assigned to the judge whom the original action was or is assigned.

OR

[ ] this petition-pleading involves substantially the same parties or substantially the same subject matter or substantially the same factual issues as in case #_____.

_____(Plaintiff) vs._____(Defendant)

This 12ᵗʰ day of May, 2021.

_____/s/ S. Wesley Woolf_____Attorney/Plaintiff

## Notice of Eastern Judicial Circuit Standing Orders

YOU MUST SERVE THIS NOTICE UPON THE OPPOSING PARTY together with the initial filing of suit, counterclaim, crossclaim or interpleader. The Superior Court has adopted the following STANDING ORDERS which may apply to you and which may affect your ability to obtain a hearing:

1. **MANDATORY MEDIATION ORDER**, effective January 3, 2011: This order requires parties to mediate their case prior to the pretrial conference or trial. Certain limited cases are exempt from the mediation requirement. Please secure a copy of the mediation order and determine if it applies to your case.
2. **ORDER ON PRODUCTION OF DOCUMENTS**, effective March 15, 2002 and reinstated January 3, 2011: This order applies to all domestic cases in which temporary or permanent financial relief is sought. The order requires the parties in such cases to exchange certain documents listed in the order within a specified time frame. A copy of the production of documents order must be served upon the defendant together with the complaint and summons.
3. **TRANSITIONAL PARENTING SEMINAR ORDER**, effective March 10.2010 and reinstated January 3, 2011: This order requires the parties in certain domestic cases involving the interest of children under 18 years of age to complete the "Transitional Parenting Seminar". Please secure a copy of the mediation order and determine if it applies to your case.

**COPIES OF THE STANDING ORDERS ARE AVAILABLE AT THE OFFICE OF THE CLERK OF SUPERIOR COURT OR AT:**

**http://www.chathamcounty.org/department_freeform_T7_R132.html**

FORM 3.2 REVISED JAN 2011

# EXHIBIT C

Answer of Defendant

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

SPCV21-00522-CO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 6/11/2021 10:39 AM
Reviewer: MS

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| SHELIA GARCIA-WILDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. SPCV21-00522 |
| | ) | |
| SAVANNAH-CHATHAM COUNTY | ) | |
| PUBLIC SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## ANSWER OF DEFENDANT

---

COMES NOW Defendant Savannah-Chatham County Public School District (hereafter "Defendant" or "SCCPSS"), and responds to the Complaint as follows:

### FIRST DEFENSE

All of Plaintiff's claims are barred by the applicable statute of limitations.

### SECOND DEFENSE

Plaintiff accepted voluntarily each position offered her by the District, and this action is barred.

### THIRD DEFENSE

To the extent Plaintiff's Complaint seeks claims in tort, the same are barred by the sovereign immunity of the School District. All tort claims are barred by such immunity. Any other claims for which the General Assembly has not specifically waived sovereign immunity are barred by that doctrine.

## FOURTH DEFENSE

Some or all of Plaintiff's purported equitable claims may be barred by the doctrine of laches.

## FIFTH DEFENSE

Answering the numbered paragraphs of the Complaint, Defendant shows as follows:

### NATURE AND PURPOSE

1.    This Defendant admits only that this is a lawsuit, but denies that it has violated any provision of Georgia law by retaliation or otherwise.  All other allegations of paragraph 1 of Plaintiff's Complaint are denied.

### JURISDICTION AND VENUE

2.    Defendant admits that this Court has jurisdiction over the claims as stated, but Defendant denies that there is any basis for this claim.

3.    The allegations contained in paragraph 3 of Plaintiff's Complaint are admitted.

4.    The allegations contained in paragraph 4 of Plaintiff's Complaint are denied.

### PARTIES

5.    Answering the allegations of paragraph 5, this Defendant admits only that Plaintiff has been employed by the Defendant at various points in time since 2010, including during a period from 2015 to 2017 and again from 2019 to the present. All remaining allegations are denied.

6.    The Defendant admits only that Dr. Garcia-Wilder holds the degrees listed and that she has served in a number of positions for the Defendant and other educational institutions throughout Georgia.    The Defendant lacks personal knowledge of all of Dr. Garcia-Wilder's professional experiences, therefore, it cannot admit or deny all the specific professional experiences alleged in this paragraph. Therefore, the remaining allegations in paragraph 6 of Plaintiff's Complaint are denied.

7.    The allegations contained in paragraph 7 of Plaintiff's Complaint are admitted.

8.    Answering the allegations of paragraph 8, this Defendant admits that it is an employer as that term is defined in the Whistleblower Act and that Dr. Garcia-Wilder was a public employee.  This Defendant denies she has any claims as a public employee as that term is defined in the Whistleblower Act because she fails to meet the requirements of that statute.  All other allegations are denied.

## FACTS

9.    The allegations contained in paragraph 9 of Plaintiff's Complaint are admitted.  By way of further answer, Plaintiff worked for Defendant at various points in time prior to returning in 2019, voluntarily leaving the Defendant's employ in 2006, returning in 2015, and leaving again in 2017.

10.    The allegations contained in paragraph 10 of Plaintiff's Complaint are denied.

11.    As stated, the allegations contained in paragraph 11 are denied. By way of further answer, as Chief of Schools, Plaintiff had a number of leadership and supervisory responsibilities for the District.

12.    As stated, the allegations contained in paragraph 12 are denied. By way of further answer, as Chief of Schools, Plaintiff was one of several District staff members involved in reviewing and approving student discipline recommendations.

13.    The allegations contained in paragraph 13 of Plaintiff's Complaint are admitted. By way of further answer, Dr. Levett had other job duties as Deputy Superintendent and Chief Academic Officer.

14.    Answering the allegations of paragraph 14, this Defendant admits that there was an audit in 2010. The provisions of the audit speak for themselves. The remaining allegations of paragraph 14 are denied.

15.    The allegations contained in paragraph 15 of Plaintiff's Complaint are denied.

16.    The allegations contained in paragraph 16 of Plaintiff's Complaint are denied.

17.    There was no numbered Paragraph 17 in the Complaint.

18.    Answering the allegations of paragraph 18, this Defendant avers that *Goss v. Lopez* speaks for itself, and in the context of this litigation is irrelevant. The remaining allegations of paragraph 18 are denied.

19.    The allegations contained in paragraph 19 of Plaintiff's Complaint are admitted.

20.     The allegations contained in paragraph 20 of Plaintiff's Complaint are denied.

21.     The allegations contained in paragraph 21 of Plaintiff's Complaint are denied.

22.     The allegations contained in paragraph 22 of Plaintiff's Complaint are denied.

23.     The allegations contained in paragraph 23 of Plaintiff's Complaint are denied.

24.     The allegations contained in paragraph 24 of Plaintiff's Complaint are denied.

25.     The allegations contained in paragraph 25 of Plaintiff's Complaint are admitted.

26.     The allegations contained in paragraph 26 of Plaintiff's Complaint are denied.

27.     The allegations contained in paragraph 27 of Plaintiff's Complaint are denied.

28.     The allegations contained in paragraph 28 of Plaintiff's Complaint are denied.

29.     The allegations contained in paragraph 29 of Plaintiff's Complaint are denied.

30.     The allegations contained in paragraph 30 of Plaintiff's Complaint are denied.

31.    The allegations contained in paragraph 31 of Plaintiff's Complaint are denied.

## RETALIATION IN VIOLATION OF
## THE GEORGIA WHISTLEBLOWER ACT

32.    Answering the allegations of paragraph 32, the provisions of the statute speak for themselves and no answer is required by this Defendant.

33.    The allegations contained in paragraph 33 of Plaintiff's Complaint are denied.

34.    The allegations contained in paragraph 34 of Plaintiff's Complaint are denied.

35.    Answering the allegations of paragraph 35, this Defendant avers that Plaintiff accepted the position of Senior Grant Writer and that her salary was reduced. The remaining allegations of paragraph 35 are denied.

36.    The allegations contained in paragraph 36 of Plaintiff's Complaint are denied.

37.    The allegations contained in paragraph 37 of Plaintiff's Complaint are denied.

38.    The allegations contained in paragraph 38 of Plaintiff's Complaint are denied.

39.    The allegations contained in paragraph 39 of Plaintiff's Complaint are denied.

40.    The allegations contained in paragraph 40 of Plaintiff's Complaint are denied.

41.    The allegations contained in paragraph 41 of Plaintiff's Complaint are

denied.

Any allegation not expressly admitted is denied.

### PRAYER FOR RELIEF

This Defendant prays that it be afforded the following relief:

a)    That it have a trial by jury;

b)    That all claims against it be dismissed with prejudice; and

c)    That all costs and attorneys' fees be assessed against Plaintiff.

This 11th day of June, 2021.

BOUHAN FALLIGANT LLP

/s/ Andrew H. Dekle
LEAMON R. HOLLIDAY, III
Georgia State Bar No. 362500
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant*
*Savannah-Chatham County*
*Public School District*

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Fax: (912) 233-0811
lrholliday@bouhan.com
ahdekle@bouhan.com

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV21-00522

Page 7 of 8

CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the

foregoing on the following counsel of record by United States Mail with proper post-

age affixed as follows:

S. Wesley Woolf, Esq.
**Woolf Law**
408 East Bay Street
Savannah, Georgia  31401

This 11th day of June, 2021.

BOUHAN FALLIGANT LLP

/s/ Andrew H. Dekle
LEAMON R. HOLLIDAY, III
Georgia State Bar No. 362500
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant*
*Savannah-Chatham County*
*Public School District*

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
lrholliday@bouhan.com
ahdekle@bouhan.com

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV21-00522

Page 8 of 8

# EXHIBIT D

Dismissal Without Prejudice

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

SPCV21-00522-MO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 4/26/2024 11:11 AM
Reviewer: DH

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

SHEILIA GARCIA-WILDER,

    PLAINTIFF,

V.

                                **CIVIL ACTION NO. SPCV21- 00522**

SAVANNAH-CHATHAM COUNTY
PUBLIC SCHOOL DISTRICT,

    DEFENDANT.

---

## DISMISSAL WITHOUT PREJUDICE

---

COMES NOW PLAINTIFF, SHELIA GARCIA-WILDER, by and through her attorney of record, and hereby dismisses WITHOUT PREJUDICE all claims against Defendant SAVANNAH-CHATHAM COUNTY PUBLIC SCHOOL DISTRICT, pursuant to O.C.G.A. § 9-11-41, specifically reserving her right to recommence the same within six (6) months hereof pursuant to O.C.G.A. § 9-2-61.

RESPECTFULLY SUBMITTED this 26th day of April, 2024.

                                WOOLF LAW

                                */s/ S. Wesley Woolf*
                                S. WESLEY WOOLF
                                Georgia State Bar No. 776175
                                *Attorney for Plaintiff*

WOOLF LAW
2905 Bull Street
Savannah, Georgia 31405
Telephone: (912) 201-3696
Facsimile: (912) 236-1884
woolf@woolflawfirm.net

1

<u>**CERTIFICATE OF SERVICE**</u>

This will certify that the undersigned today served counsel for all parties in the foregoing

matter with a copy of **DISMISSAL WITHOUT PREJUDICE** via electronic service to their

attorneys of record as follows:

Andrew H. Dekle
Lucas D. Bradley
BOUHAN FALLIGANT LLP
Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Fax: (912) 233-0811
ahdekle@bouhan.com
ldbradley@bouhan.com

RESPECTFULLY SUBMITTED this <u>26th</u> day of April, 2024.

WOOLF LAW

*/s/ S. Wesley Woolf*
S. WESLEY WOOLF
Georgia State Bar No. 776175
*Attorney for Plaintiff*

WOOLF LAW
2905 Bull Street
Savannah, Georgia 31405
Telephone: (912) 201-3696
Facsimile: (912) 236-1884
woolf@woolflawfirm.net

2

SPCV24-01173

## IN THE SUPERIOR COURT OF CHATHAM COUNTY

### STATE OF GEORGIA

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date  10/8/2024 6 10 PM
Reviewer  DH

Shelia Garcia-Wilder

CIVIL ACTION
NUMBER _____ SPCV24-01173 _____

_____

PLAINTIFF

VS.

Savannah-Chatham County Public School District

_____

DEFENDANT

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

**Savannah Chatham County Public School District**
S. Denise Watts. Ed.D., Superintendent of Schools
208 Bull Street Savannah, Georgia 31401

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

**S. Wesley Woolf**
2905 Bull Street
Savannah, Georgia 31405

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This_____8th_____ day of _____October, 2024_____

TAMMIE MOSLEY
Clerk of Superior Court
CHATHAM COUNTY

By_____
Deputy Clerk

**Instructions:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev 04

**IN CHATHAM SUPERIOR COURT**

_____ TERM _____

_____

Shelia Garcia-Wilder

_____

_____

VS.

Savannah-Chatham County Public School District

_____

**ORIGINAL**

Filed in the Clerk's Office this _____ 8th _____

day of _____ October, 2024 _____.

Clerk, Dep. Clerk, S.C.C.C. GA

S. Wesley Woolf

PLAINTIFF'S ATTORNEY

**RECEIVED**

OCT 11 2024

Initial

# RULE 3.2 CERTIFICATION AND STANDING ORDER NOTICE

**Pursuant to rules 3.2 and 3.4 of the Uniform Superior Court Rules, I hereby certify that:**
(CHECK ONE)

[ ] no case has heretofore been filed in the Superior Court of the Eastern Judicial Circuit involving substantially the same parties or substantially the same subject matter or substantially the same factual issues which would require the petition-pleading to be specifically assigned to the judge whom the original action was or is assigned.

OR

☒ this petition-pleading involves substantially the same parties or substantially the same subject matter or substantially the same factual issues as in case # SPCV21-00522 _____.

Shelia Garcia-Wilder _____ (Plaintiff) vs. Savannah-Chatham County Public School District (Defendant)

This __8th__ day of ____October____ . 20 _24_ .

_____ S. Wesley Woolf _____ Attorney/Plaintiff

# Notice of Eastern Judicial Circuit Standing Orders

**YOU MUST SERVE THIS NOTICE UPON THE OPPOSING PARTY** together with the initial filing of suit, counterclaim, crossclaim or interpleader. The Superior Court has adopted the following STANDING ORDERS which may apply to you and which may affect your ability to obtain a hearing:

1. **MANDATORY MEDIATION ORDER**, effective January 3, 2011: This order requires parties to mediate their case prior to the pretrial conference or trial. Certain limited cases are exempt from the mediation requirement. Please secure a copy of the mediation order and determine if it applies to your case.
2. **ORDER ON PRODUCTION OF DOCUMENTS**, effective March 15, 2002 and reinstated January 3, 2011: This order applies to all domestic cases in which temporary or permanent financial relief is sought. The order requires the parties in such cases to exchange certain documents listed in the order within a specified time frame. A copy of the production of documents order must be served upon the defendant together with the complaint and summons.
3. **TRANSITIONAL PARENTING SEMINAR ORDER,** effective March 10.2010 and reinstated January 3, 2011: This order requires the parties in certain domestic cases involving the interest of children under 18 years of age to complete the "Transitional Parenting Seminar". Please secure a copy of the mediation order and determine if it applies to your case.

**COPIES OF THE STANDING ORDERS ARE AVAILABLE AT THE OFFICE OF THE CLERK OF SUPERIOR COURT OR AT:**

**http://www.chathamcounty.org/department_freeform_T7_R132.html**

FORM 3.2 REVISED JAN 2011

SPCV24-01173

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 10/8/2024 6:10 PM
Reviewer: DH

**General Civil and Domestic Relations Case Filing Information Form**

☑ **Superior** or ☐ **State Court of** ___Chatham___ **County**

| For Clerk Use Only | | |
|---|---|---|
| **Date Filed** ___10/08/2024___ | **Case Number** | ___SPCV24-01173___ |
| **MM-DD-YYYY** | | |

**Plaintiff(s)**
Garcia-Wilder   Shelia

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**
Savannah-Chatham County Public School District

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** S. Wesley Woolf    **State Bar Number** 776175    **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☑ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☑ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

___SPCV21-00522___     _____

**Case Number**         **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

Case 4:25-cv-00084-RSB-CLR    Document 1-1    Filed 04/10/25    Page 61 of 261   e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 10/17/2024 12:08 P
Reviewer: KW

# Affidavit of Process Server

## THE SUPERIOR COURT OF CHATHAM COUNTY, STATE OF GEORGIA

(NAME OF COURT)

Shelia Garcia-Wilder ___vs___ Savannah-Chatham County Public School District   Civil No. SPCV24-01173

PLAINTIFF/PETITIONER          DEFENDANT/RESPONDENT          CASE NUMBER

I Michael Palmer _____, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served Savannah Chatham County Public School District c/o S. Denise Watts, Ed.D., Superintendent of Schools

NAME OF PERSON / ENTITY BEING SERVED

with (list documents) Summons; Complaint; Exhibit A, B

by leaving with Michelle Finch-Wirth _____ Exec. Asst. to Superintendent At

NAME          RELATIONSHIP

☐ Residence _____

ADDRESS          CITY / STATE

☑ Business Savannah Chatham County Public School District, 208 Bull Street  Savannah, Georgia 31401

ADDRESS          CITY / STATE

On October 11, 2024 _____ At 11:39 AM

DATE          TIME

☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

Thereafter copies of the documents were mailed by prepaid, first class mail on_____

DATE

from _____

CITY          STATE          ZIP

**Manner of Service:**

☐ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.

☑ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant   ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist   ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____ _____ (2)_____ _____

DATE   TIME          DATE   TIME

(3)_____ _____ (4)_____ _____ (5)_____ _____

DATE   TIME          DATE   TIME          DATE   TIME

**Description:.** Age 45 __ Sex Female Race White Height 5' 07"  Weight 160 lbs Hair Reddish Beard No · Glasses No

_signature_

SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this 14th __ day of October _____, 20 24, by _____,

Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_signature_

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of Georgia

DAWN M. SAPP
NOTARY
EXPIRES
GEORGIA
August 6, 2027
PUBLIC
CHATHAM COUNTY

FORM 2          NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

NAPPS

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 11/8/2024 9:41 AM
Reviewer: DH

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

SHELIA GARCIA-WILDER,            )
                                 )
        Plaintiff,               )
                                 )
v.                               )        CIVIL ACTION NO. SPCV24-01173
                                 )
SAVANNAH-CHATHAM COUNTY          )
PUBLIC SCHOOL DISTRICT,          )
                                 )
        Defendant.               )

---

**STIPULATION FOR EXTENSION OF TIME FOR DEFENDANT TO FILE
AN ANSWER OR OTHERWISE RESPONSIVE PLEADINGS**

---

COME NOW counsel for Plaintiff and Defendant, and, pursuant to O.C.G.A. § 9-11-6(b),

stipulate that the time for Defendant to file an Answer or otherwise plead shall be extended up to

and including December 10, 2024.

This 8th day of November, 2024.

CONSENTED TO:

                                 BOUHAN FALLIGANT LLP


                                 /s/ Andrew H. Dekle
                                 LEAMON R. HOLLIDAY, III
Post Office Box 2139             Georgia State Bar No. 362500
Savannah, Georgia 31402          LUCAS D. BRADLEY
Telephone: (912) 232-7000        Georgia State Bar No. 672136
Telefax: (912) 233-0811          ANDREW H. DEKLE
lrholliday@bouhan.com            Georgia State Bar No. 847828
ldbradley@bouhan.com
ahdekle@bouhan.com               *Attorneys for Defendant Savannah-Chatham
                                 County Public School System*


Signatures Continued on Following Page

Page **1** of 3

WOOLF LAW

/s/ S. Wesley Woolf
S. WESLEY WOOLF
Georgia State Bar No. 776175

2905 Bull Street
Savannah, Georgia  31405
Telephone: (912) 201-3696
Facsimile: (912) 201-3699
woolf@woolflawfirm.net

*Attorney for Plaintiff*

BARRETT & FARAHANY

/s/ Matthew C. Billips
Matthew C. Billips
Georgia Bar No. 057110
*Attorney for Plaintiff*

BARRETT & FARAHANY
3344 Peachtree Rd., NE, Suite 800
Atlanta, GA   30326
(470) 284-7265
matt@justiceatwork.com

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV24-01173

2

CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record via email and by United States Mail with proper postage affixed as follows:

S. Wesley Woolf, Esq.
Woolf Law
2905 Bull Street
Savannah, Georgia 31405
woolf@woolflawfirm.net

Matthew C. Billips, Esq.
BARRETT & FARAHANY
3344 Peachtree Rd., NE, Suite 800
Atlanta, GA 30326
matt@justiceatwork.com

This 8th day of November, 2024.

BOUHAN FALLIGANT LLP

/s/ Andrew H. Dekle
ANDREW H. DEKLE
Georgia State Bar No. 847828

*Attorneys for Defendant Savannah-Chatham
County Public School District*

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
lrholliday@bouhan.com
ahdekle@bouhan.com

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV24-01173

3

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 11/12/2024 2:37 PM
Reviewer: KW

| | |
|---|---|
| **TO:** | **Clerk of Superior Court of Chatham County,**<br>**The Judges of the Superior Court of Chatham County, and**<br>**Counsel of Record in the Superior Court of Chatham County** |
| **FROM:** | **Andrew H. Dekle, Esq.** |
| **RE:** | **Notice of Leave of Absence** |
| **DATE:** | **November 12, 2024** |

COMES NOW Andrew H. Dekle, and respectfully notifies all Judges before whom he has cases pending, all affected Clerks of Court, and all opposing counsel, that he will be on leave pursuant to Georgia Uniform Court Rule 16.  A list of cases pending in Chatham County Superior Court is attached as Exhibit "A."

The periods of leave during which Applicant will be away from the practice of law are as follows:

> **(1) December 24, 2024 through December 27, 2024 for holidays and related travel; and**

> **(2) December 31, 2024 through January 3, 2025 for personal travel.**

All affected judges and opposing counsel/parties shall have ten days from the date of this Notice to object to it.  If no objections are filed, the leave shall be granted.

WHEREFORE, applicant prays that this application be granted.

Respectfully submitted, this 12th day of November, 2024.

One West Park Avenue
Savannah, Georgia 31401
T:  912-232-7000
F:  912-233-0811
ahdekle@bouhan.com

BOUHAN FALLIGANT LLP

/s/Andrew H. Dekle
Andrew H. Dekle, Esq.
Georgia Bar No. 847828

EXHIBIT "A"

| Name of Case and Case Number | Name of Judge | Opposing Counsel / Party |
|---|---|---|
| West Wing Food Service, LLC d/b/a West Wing Pizzeria, Inc. v. Savannah-Chatham County Board of Education<br><br>SPCV16-1034-FR | Honorable Penny Haas Freesemann<br>Chief Judge, Chatham County Superior Court<br>Chatham County Courthouse, Room 422<br>133 Montgomery Street<br>Savannah, Georgia 31401 | Stephen H. Harris, Esq.<br>7 E. Congress Street, Suite 1003<br>Savannah, GA 31401 |
| Shelia Garcia-Wilder v. Savannah-Chatham County Public School District<br><br>SPCV24-01173-MO | Honorable John E. Morse, Jr.<br>Judge, Chatham County Superior Court<br>Chatham County Courthouse, Room 213<br>133 Montgomery Street<br>Savannah, Georgia 31401 | S. Wesley Woolf, Esq.<br>Woolf Law<br>408 East Bay Street<br>Savannah, Georgia 31401<br><br>Mathew Billips, Esq.<br>Barrett & Farahany<br>P.O. Box 530092<br>Atlanta, Georgia 30353-0092 |
| West Construction Company GA, LLC v. Middle Georgia Insulated Structures, LLC, Polar King America Inc., and Joshua Taylor<br><br>SPCV23-00837-FR | Honorable Penny Haas Freesemann<br>Chief Judge, Chatham County Superior Court<br>Chatham County Courthouse, Room 422<br>133 Montgomery Street<br>Savannah, Georgia 31401 | Joshua Taylor<br>414 E. 19th Avenue<br>Cordele, Georgia 31015 |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this date served a copy of the foregoing Notice of Leave of Absence upon all judges, clerks and opposing counsel listed on the attached Exhibit "A," by depositing the same in the U.S. Mail with adequate postage affixed thereto.

This 12th day of November, 2024.


BOUHAN FALLIGANT LLP


One West Park Avenue                    /s/Andrew H. Dekle
Savannah, Georgia 31401                 Andrew H. Dekle, Esq.
T:  912-232-7000                        Georgia Bar No. 847828
F:  912-233-0811
ahdekle@bouhan.com

3

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 12/10/2024 2:37 PM
Reviewer: KW

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

SHELIA GARCIA-WILDER,                    )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Civil Action No. SPCV24-011173
                                         )
SAVANNAH-CHATHAM COUNTY                  )
PUBLIC SCHOOL DISTRICT,                  )
                                         )
        Defendant.                       )

## MOTION TO DISMISS
## RENEWAL SUIT

COMES NOW Defendant Savannah-Chatham County Public School System (hereinafter the "School District") and hereby files its <u>Motion to Dismiss</u> Plaintiff Shelia Garcia-Wilder's Complaint in the above-captioned Renewal Action, SPCV24-011173, pursuant to O.C.G.A. § 9-11-12b(6) for failure to state a claim. The School District further notes that the filing of this O.C.G.A. § 9-11-12(b)(6) motion shall stay discovery for 90 days or "until the ruling of the court on such motion, whichever is sooner." O.C.G.A. § 9-11-12(j).

## I.    INTRODUCTION AND BACKGROUND

On May 12, 2021, Plaintiff Shelia Garcia-Wilder filed her original action against the School District under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d), Superior Court of Chatham County Case No. SPCV21-00522 (the "Original Action"). In the Original Action, Plaintiff alleged multiple discrete actions of

whistleblower retaliation, including her May 2020 reassignment from "Chief of Schools" to a "Senior Grant Writer" position, *see* (Complaint, Original Action, ¶¶ 9, 30, 35) and her May 2021 reassignment from "Senior Grant Writer" to "Grant Writer," *see* (Complaint, Original Action ¶36). In her Original Action, May 2021, was the latest time period asserted for her claims. The School District denied Plaintiff's allegations of whistleblower retaliation in the Original Action and denies them again here.

On April 26, 2024, Plaintiff Garcia-Wilder dismissed the Original Action without prejudice, specially reserving her right to recommence the same within six (6) months hereof pursuant to O.C.G.A. § 9-2-61.

On October 8, 2024, Plaintiff Garcia-Wilder filed the above-captioned action, SPCV24-011173, (the "Renewal Action"), seeking to renew her suit pursuant to O.C.G.A. § 9-2-61. Again, Plaintiff alleges multiple, discrete acts of whistleblower retaliation, with the last claimed act of retaliation occurring in **May 2021.** (Complaint, Renewal Action ¶36). Again, the School District denies these allegations.

The merits of the case aside, Plaintiff Garcia-Wilder's procedural maneuver must fail, because Plaintiff's Renewal Action is barred by the three-year statute of repose set forth in the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(e)(1).

First, Plaintiff's renewal is ineffective against a statute of repose. As a leading treatise on Georgia Procedure flatly explains: **"The renewal provisions of O.C.G.A. § 9-2-61(a) may not be used to avoid the bar of a statute of repose."** § 30:16. Dismissal or discontinuance; renewal, Ga. Practice & Procedure § 30:16 (2024-2025 ed.)

2

(emphasis added) (citing *Siler v. Block*, 204 Ga. App. 672, 673, 420 S.E.2d 306, 308 (1992), aff'd, 263 Ga. 257, 429 S.E.2d 523 (1993) ("The result is that the renewal provisions of OCGA § 9–2–61(a) may not be used to avoid the bar of the statute of repose."))

And second, the three-year maximum for bringing Georgia whistleblower suits—as opposed to the one-year statute of limitation that begins running once a litigant discovers her right to sue under the statute—is a statute of repose (and thus bars even renewal suits). A law review article providing a detailed study of Georgia' Whistleblower Act describes O.C.G.A. § 45-1-4(e) as follows: "Subsections (e) and (f) provide the right of action, jurisdictional limitation, statute of limitations, and remedies for whistleblowers. Actions under the GWA cannot be brought in a magistrate court or state court; they must be brought in superior court. **The statute of limitations is one year after discovery of the retaliation, with a three-year statute of repose.**" Micah Barry, *Ordered into Oblivion: How Courts Have Rendered the Georgia Whistleblower Act Useless, and How to Fix It*, 19 SEATTLE J. FOR SOC. JUST. 121, 125–26 (2020) (citing O.C.G.A. § 45-1-4(e)(1)); *see also Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 354, 756 S.E.2d 585, 588 (2014) (recognizing the one-year period in O.C.G.A. § 45-1-4(e)(1) as a statute of limitations, but not discussing the three-year period).

Federal cases interpret similar timing statutes the same way: when a statute provides for a limitations period triggered by discovery (for example, "two years after discovery of facts underlying the violation") and an ultimate time limit arising from

3

the date of the incident (for example, "five years after the violation"), the latter deadline is an unambiguous statute of repose. *See, e.g. Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 403 (2d Cir. 2016), *as amended* (Apr. 29, 2016) (interpreting the statute of repose contained in § 1658(b) and Section 9(f)).

Mr. Barry's interpretation of O.C.G.A. § 45-1-4(e)(1) as providing a three-year statute of repose therefore tracks both the statute's language and interpretations of similar provisions by federal courts, and the subject statute of repose defeats Dr. Garcia-Wilder's Renewal Action. Construed most favorably to Plaintiff, the last possible date of whistleblower retaliation would be **May 31, 2021. October 8, 2024,** is more than three years after May 31, 2021, and her Renewal Action is barred by the statute of repose created by O.C.G.A. § 45-1-4(e).

## II.    LEGAL STANDARD

A motion to dismiss "provides a two-pronged attack on a notice pleading complaint." Ruskell, Richard C., *Davis and Shulman's Ga. Practice & Procedure* § 9:5 (2018-2019 Ed.). "Under the first basis of attack, like the general demurrer, the complaint is attacked for failing to allege a claim for relief," meaning it should be dismissed if "it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." *Id.; see also, e.g., Sparra v. Deutsche Bank Nat. Tr. Co.*, 336 Ga. App. 418, 420, 785 S.E.2d 78, 82 (2016) (granting a motion to dismiss a wrongful foreclosure claim as a matter of law where the plaintiff's own allegations revealed that no foreclosure sale had occurred, preventing the plaintiff from proving beyond doubt all of the essential elements of a wrongful

foreclosure claim). In effect, a plaintiff can plead itself out of a claim by alleging facts in its complaint that affirmatively defeat one of its attempted causes of action. *See, e.g., Freebirds LLC v. Coca-Cola Co.*, 366 Ga. App. 443, 449, 883 S.E.2d 388, 395 (2023) (recognizing that a plaintiff may "plead himself out of court by revealing a state of facts which affirmatively shows that there is no liability on the defendant" and dismissing a misrepresentation claim because "Freebird's own allegations in its complaint defeat its claim for relief").

"The second prong of the attack deals with actions which are absolutely barred as a matter of law, no matter what hypothetical state of facts might exist." GA. PRACTICE & PROCEDURE § 9:5 (2018-2019 Ed.) "Such defense in bar is based either upon undisputed facts that give rise to defenses of statute of limitations, of res judicata, or of minority, which are an absolute bar to recovery, or upon defenses such as sovereign immunity that attach despite what the factual situation might be." *Id.*

"In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a court must assume the factual allegations of the complaint are true, even if they are doubtful in fact." *Charles H. Wesley Educ. Found., Inc. v. State Election Bd.*, 282 Ga. 707, 714, 654 S.E.2d 127, 132 (2007). It should be noted that "when ruling on a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings, the courts may consider written instruments attached to and incorporated into the complaint and answer." *Handberry v. Stuckey Timberland, Inc.*, 345 Ga. App. 191, 191, 812 S.E.2d 547, 549 (2018) (citing O.C.G.A. § 9-11-10(c)).

5

A motion to dismiss is an appropriate vehicle to test whether a lawsuit is barred by the statute of repose. *See, e.g. Bush v. Sreeram*, 298 Ga. App. 68, 68, 679 S.E.2d 87, 88 (2009) ("After answering the complaint, the defendants moved to dismiss, arguing that the complaint was filed beyond the five-year statute of repose for medical malpractice claims. The trial court granted the motions, and Bush appealed. Finding no error in the trial court's decision, we affirm.").

## III.  ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's sole claim in the Renewal Action, which travels under the Georgia Whistleblower Statute, is only timely if it can be saved by the renewal statute, O.C.G.A. § 9-2-61. Since every act of alleged retaliation in her Complaint took place more than three years before she filed her Renewal Action, however, Plaintiff's newest lawsuit fails a matter law.

## A. Section 9-2-61 does not save a suit that is filed after expiration of the statute of repose.

O.C.G.A. § 9-2-61, Georgia's renewal statute, provides a limited mechanism that (under some circumstances) allows a prior timely suit to be renewed as a new suit outside the governing statute of limitations.  It reads:

(a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

6

O.C.G.A. § 9-2-61(a) (emphasis added). By its plain language, the statute only refer-
ences statutes of limitations, not repose.

It has been long established that O.C.G.A. § 9-2-61 does not save a suit that is
filed outside the applicable statute of repose. The Supreme Court has been clear on
that point for over thirty years now: "We find that the statute of repose abrogates
plaintiff's cause of action. Therefore, she cannot renew her medical malpractice action
beyond the five-year statutory period." *Wright v. Robinson*, 262 Ga. 844, 845, 426
S.E.2d 870, 871 (1993). The *Wright* Court explained *why* statutes of repose are so
inviolable, such that they cannot yield to the renewal statute or any other attempt at
modification or expansion:

> A statute of repose stands as an unyielding barrier to a plaintiff's right
> of action. The statute of repose is absolute; the bar of the statute of lim-
> itation is contingent. . . . The statute of repose destroys the previously
> existing rights so that, on the expiration of the statutory period, the
> cause of action no longer exists.

*Wright*, 262 Ga. at 845, 426 S.E.2d at 871–72. Accordingly, if Plaintiff's Renewal Suit
is outside any applicable statute of repose, it is untimely, even given the potential
operation of Section 9-2-61.

## B. Section 45-1-4(e)(1) provides both a statute of limitations and a statute of repose.

The Georgia Whistleblower Statute, Section 45-1-4(e)(1), provides both a stat-
ute of limitation <u>and</u> a statute of repose. The relevant subsection of the statute
reads:

> (e)(1) A public employee who has been the object of retaliation in viola-
> tion of this Code section may institute a civil action in superior court for
> relief as set forth in paragraph (2) of this subsection within one year

7

after discovering the retaliation or within three years after the retalia-
tion, whichever is earlier."

O.C.G.A.. § 45-1-4(e)(1).  The statute prescribes a one-year limitation period that only

accrues **upon discovery** of alleged retaliation.  *Id.*  And, it prescribes a separate dead-

line that is *not* based on accrual[1]:  a pure three-year time deadline after which no

right of action <u>can even be brought</u>.  As the *Wright* Court explained, that is precisely

the difference between statutes of limitation and statutes of repose.  It explicitly noted

that for a statute of repose, the injury does not even have to "have been discovered."

*Wright*, 262 Ga. at 845, 426 S.E.2d at 871.  The two periods in the whistleblower

statute track the limitation/repose distinction precisely:  a shorter period that is con-

tingent on accrual through discovery, and a longer absolute period that is inviolable

and after which no cause of action can exist.

The Georgia Court of Appeals has previously acknowledged that O.C.G.A. § 45-

1-4(e)(1) contains a one-year statute of limitations tied to discovery of the alleged

wrong, implicitly recognizing that the three-year period in O.C.G.A. § 45-1-4(e) must

be something else, a statute of repose.  *See Tuttle v. Georgia Bd. of Regents of Univ.*

*Sys. of Georgia*, 326 Ga. App. 350, 354, 756 S.E.2d 585, 588 (2014).  In *Tuttle,* former

Georgia Perimeter College ("GPC") police chief, Garry Tuttle, sued the Board of

---

[1] Black's Law Dictionary defines "Accrual" as follows in the context of discovery for
limitations purposes:

"accrual rule (1938) A doctrine delaying the existence of a claim until the plaintiff has
discovered it.  • The accrual rule arose in fraud cases as an exception to the general
limitations rule that a claim comes into existence once a plaintiff knows, or with due
diligence should know, facts to form the basis for a claim."  ACCRUAL RULE, Black's
Law Dictionary (12th ed. 2024)

Regents of the University System of Georgia (the "BOR") in **August 2010**, alleging

that the BOR terminated him in retaliation for his whistleblower activities in viola-

tion of the Georgia Whistleblower Act ("GWA"), OCGA § 45–1–4. Id., 326 Ga. App. at

350, 756 S.E.2d at 586. Although the effective date of his termination was July 31,

2009, Chief Tuttle learned that he was scheduled to be terminated on June 2, 2009.

Id., 326 Ga. App. at 352, 756 S.E.2d at 587. The Trial Court granted summary judg-

ment to GPC on statute-of-limitations grounds, concluding the one-year statute of

limitations began to run on June 2, 2009, when Chief Tuttle first learned of his up-

coming termination, and the August 2010 lawsuit was barred by the one-year statute

of limitations of O.C.G.A.. § 45-1-4(e)(1).

Chief Tuttle appealed, arguing that there was a question of fact as to whether

his whistleblower complaint was barred by the statute of limitations. The Court of

Appeals disagreed and affirmed the trial court, explaining:

> There is no dispute that, on June 2, 2009, Tuttle discovered that his po-
> sition was to be terminated effective July 31, 2009. Although the issue
> of accrual of a cause of action under the GWA has not been specifically
> addressed in Georgia, it is well settled that:
>
> when the question is raised as to whether an action is barred by a stat-
> ute of limitation, the true test to determine when the cause of action
> accrued is to ascertain the time when the plaintiff could first have main-
> tained his action to a successful result. Mere ignorance of the facts con-
> stituting a cause of action does not prevent the running of the statute of
> limitation, for a plaintiff must exercise reasonable diligence to learn of
> the existence of a cause of action
>
> (Citation and punctuation omitted.) *Sandy Springs Toyota v. Classic
> Cadillac Atl. Corp.,* 269 Ga.App. 470, 471–472(1), 604 S.E.2d 303 (2004).
> **Here, Tuttle's cause of action accrued and the one-year limitation period
> began to run on June 2, 2009 when Tuttle first discovered the retaliation
> in question, namely, that his position was to be terminated.**

9

*Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia,* 326 Ga. App. 350, 353–54, 756 S.E.2d 585, 588 (2014). Thus, the Georgia Court of Appeals has recognized that the one-year period referenced in O.C.G.A. § 45-1-4(e)(1) is a statute of limitations tied to discovery. The *Tuttle* Court did not expressly address the separate three-year provision of O.C.G.A § 45-1-4(e)(1), suggesting that it was something different than a statute of limitations.

Unsurprisingly, therefore, commentators have accurately described Georgia's Whistleblower Statute as containing both a statute of limitations (the one-year period, accruing upon discovery) *and* a statute of repose (the inviolable three-year period that is agnostic towards discovery or any other consideration). Those commentators were clear: "Subsections (e) and (f) provide the right of action, jurisdictional limitation, statute of limitations, and remedies for whistleblowers. Actions under the GWA cannot be brought in a magistrate court or state court; they must be brought in superior court. **The statute of limitations is one year after discovery of the retaliation, with a three-year statute of repose**." Micah Barry, *Ordered into Oblivion: How Courts Have Rendered the Georgia Whistleblower Act Useless, and How to Fix It*, 19 SEATTLE J. FOR SOC. JUST. 121, 125–26 (2020) (citing O.C.G.A. § 45-1-4(e)(1)) (emphasis added).

The text and purpose of the two time periods in the Whistleblower Statute would be enough to establish the three-year limitation as a statute of repose, but analogous federal law also supports that conclusion. For example, the United States

Code provides the following time limits on commencement of civil actions arising un-

der Acts of Congress that relate to securities fraud:

> **"(b)** Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--
> **(1)** 2 years after the discovery of the facts constituting the violation; or
> **(2)** 5 years after such violation."

28 U.S.C.A. § 1658. And, in that setup, which is structured exactly like Georgia's

Whistleblower Statute, multiple courts have accurately referred to the five-year pe-

riod as a statute of repose. *See, e.g. Dekalb Cnty. Pension Fund v. Transocean Ltd.*,

817 F.3d 393, 403 (2d Cir. 2016), *as amended* (Apr. 29, 2016) ("Thus, the statutes of

repose contained in § 1658(b) and Section 9(f) both purport to apply to Section 9(f),

but prescribe different periods of time."). Federal courts, in construing setups with a

shorter period triggered by discovery and a longer, inviolable period that flows inex-

orably from the date of the subject loss, have therefore held the former to be a limita-

tion period and the latter to be a statute of repose. *See generally id.* As the Georgia

Whistleblower Statute provides the same setup, it should similarly be construed to

have a one-year statute of limitations and a three-year statute of repose.

Additional statutory context provides yet more reason to read the three-year

period referenced in § 45-1-4(e)(1) as a statute of repose. Such context is an appro-

priate consideration, as the Court of Appeals has previously held that legislative in-

tent and context are key considerations in deciding that a time limitation is a statute

of repose. *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 468, 627 S.E.2d 90, 94 (2006)

11

(holding that two-year period was statute of repose despite lack of specific language designating it as such, because any other interpretating would generate competing and irreconcilable procedural timelines for two similar types of claims). Interpreting the three-year repose period as a statute of limitations would provide two separate periods within the law that would both be malleable depending on variables like discovery and tolling. The General Assembly would not have provided two separate dates that could float depending on various accrual doctrines; rather, it provided one date that depended on accrual and one absolute repose period that could not be altered. As the *Trax-Fax* Court showed, because that interpretation is the only one that fits the broader legislative scheme and purpose, it must control.

Further complimenting this reading, O.C.G.A. § 45-1-4 is a limited waiver of sovereign immunity. *See Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 355, 756 S.E.2d 585, 589 (2014). It must therefore be narrowly construed. *Upshaw v. Columbus Consol. Gov't*, 369 Ga. App. 524, 533, 894 S.E.2d 75, 83 (2023) ("Importantly, "statutes providing for a waiver of sovereign immunity are in derogation of the common law and thus are to be strictly construed *against* a finding of waiver."). It is because of sovereign immunity, for example, that the Georgia Supreme Court held that the ante litem notice deadlines in the Georgia Torts Claim Acts could not be tolled beyond one-year, even though not allowing tolling of the ante litem notice might have inequitable results. *See Dep't of Pub. Safety v. Ragsdale*, 308 Ga. 210, 215, 839 S.E.2d 541, 546 (2020) Thus, reading O.C.G.A. § 45-1-4(e)(1) to contain a three-year statute of repose helps promote the goals of sovereign immunity

12

by providing a firm cut-off date for whistleblower claims that would otherwise be in derogation of ordinary sovereign immunity principles.

In sum, the Georgia Whistleblower Statute's text, analogous federal statutes, Georgia interpretive principles, and sovereign immunity doctrines all show that the Whistleblower Statute contains a one-year statute of limitations and a three-year statute of repose.

## C. Applying the Law to Plaintiff's Allegations of Fact Requires Dismissal of Plaintiff's Renewal Action.

On the face of Plaintiff's Complaint, the Court may conclude that all of Plaintiff's claims in the Renewal Action are barred by O.C.G.A. § 45-1-4(e)(1)'s three-year statute of repose. In this Renewal Action, as in the Original Action, Plaintiff alleges multiple discrete actions of whistleblower retaliation, including her May 2020 reassignment from "Chief of Schools" to a "Senior Grant Writer" position, *see* (Complaint, Renewal Action, ¶¶ 12, 32, 35, 37) and her May 2021 reassignment from "Senior Grant Writer" to "Grant Writer," *see* (Complaint, Renewal Action ¶38). In Paragraph 38 of the Renewal Action, Dr. Garcia Wilder does not specifically allege which day in May 2021 that she was "further demoted," so construing the allegation in the manner most favorable to her would put the latest date of alleged retaliation on **May 31, 2021.** Three years after May 31, 2021, is May 31, 2024.

On October 8, 2024, Plaintiff Garcia-Wilder filed this Renewal Action seeking to renew the Original Action pursuant to O.C.G.A. § 9-2-61. **October 8, 2024**, is well

13

after **May 31, 2024**, and the Renewal Action is barred by the application of O.C.G.A.

§ 45-1-4(e)(1)'s three-year statute of repose.

**D.    This Motion Stays Discovery of the Renewal Action.**

The filing of this Motion stays discovery in this case.  O.C.G.A. § 9-11-12(j)

provides:

> (1) If a party files a motion to dismiss before or at the time of filing an answer and pursuant to the provisions of this Code section, discovery shall be stayed for 90 days after the filing of such motion or until the ruling of the court on such motion, whichever is sooner. The court shall decide the motion to dismiss within the 90 days provided in this paragraph.

> (2) The discovery period and all discovery deadlines shall be extended for a period equal to the duration of the stay imposed by this subsection.

O.C.G.A. § 9-11-12.  This Motion is being filed the same day as the School District's

Answer and discovery shall be stayed for 90 days or until ruling on the motion, which-

ever is sooner.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's renewal action should be ***DISMISSED***

as violating Section 45-1-4(e)(1)'s three-year statute of repose.

RESPECTFULLY SUBMITTED THIS 10th DAY OF DECEMBER, 2024.

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

BOUHAN FALLIGANT LLP
/s/ Lucas D. Bradley
LUCAS D. BRADLEY
Georgia State Bar No. 672136
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant Savannah-Chatham County Public School System*

14

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by United States Mail with proper postage affixed as follows, with additional copy by email:

S. Wesley Woolf, Esq.
Woolf Law
2905 Bull Street
Savannah, Georgia  31405
woolf@woolflawfirm.net

Matthew C. Billips, Esq.
BARRETT & FARAHANY
3344 Peachtree Rd., NE Suite 800
Atlanta, GA 30326
matt@justiceatwork.com

This 10th day of December, 2024.

BOUHAN FALLIGANT LLP

/s/Lucas D. Bradley
Post Office Box 2139          LUCAS D. BRADLEY
Savannah, Georgia 31402       Georgia State Bar No. 672136
Telephone: (912) 232-7000     ANDREW H. DEKLE
Telefax: (912) 233-0811       Georgia State Bar No. 847828
ldbradley@bouhan.com          *Attorneys for Defendant Savannah-Chat-*
ahdekle@bouhan.com            *ham County Public School System*

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District
Superior Court of Chatham County, Georgia
Civil Action No. SPCV24-0117

SPCV24-011173-MO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 12/10/2024 3:02 PM
Reviewer: KW

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

SHELIA GARCIA-WILDER,                )
                                     )
    Plaintiff,                   )
                                     )
v.                                   )        Civil Action No. SPCV24-011173
                                     )
SAVANNAH-CHATHAM COUNTY              )
PUBLIC SCHOOL DISTRICT,              )
                                     )
    Defendant.                   )
                                     )

---

## ANSWER OF DEFENDANT
## TO RENEWAL COMPLAINT

---

COMES NOW Defendant Savannah-Chatham County Public School District (hereafter "Defendant" or "SCCPSS"), and responds to Plaintiff's Renewal Complaint as follows:

### FIRST DEFENSE

Plaintiff's Renewal Complaint is barred by the three-year statute of repose created by O.C.G.A. § 45-1-4(e)(1). The renewal provisions of O.C.G.A. § 9-2-61(a) may not be used to avoid the bar of a statute of repose." *See* Ga. Practice & Procedure § 30:16 (2024-2025 ed.) (emphasis added) (citing *Siler v. Block*, 204 Ga. App. 672, 673, 420 S.E.2d 306, 308 (1992), aff'd, 263 Ga. 257, 429 S.E.2d 523 (1993)

### SECOND DEFENSE

Plaintiff may not use O.C.G.A. § 9-2-61(a) to attempt to add otherwise barred claims to renewal actions, when such claims are not substantially the same as the

claims in the original action.

### THIRD DEFENSE

The Georgia Whistleblower Act provides a limited waiver of sovereign immunity. *See Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 355, 756 S.E.2d 585, 589 (2014). Attempted Whistleblower suits that go beyond the scope of the provisions of the Georgia Whistleblower Act are barred by sovereign immunity. Thus, the School District is entitled to the defense of sovereign immunity to the extent Plaintiff's claims fall outside the scope (whether temporal or substantive) of the Georgia Whistleblower Act.

### FOURTH DEFENSE

All of Plaintiff's claims are barred by any applicable statute of limitations or statute of repose.

### FIFTH DEFENSE

Plaintiff voluntarily accepted each position offered her by the District, and this action is barred by the defense of waiver.

### SIXTH DEFENSE

To the extent Plaintiff's Renewal Complaint states claims in tort, the same are barred by the sovereign immunity of the School District. All tort claims are barred by such immunity. Any other claims for which the General Assembly has not specifically waived sovereign immunity are barred by that doctrine.

### SEVENTH DEFENSE

Some or all of Plaintiff's purported equitable claims may be barred by the

doctrine of laches and sovereign immunity.

### EIGHTH DEFENSE

Plaintiff cannot demonstrate that any relevant decision-maker acted with animus or that any relevant decision was infected with animus.

### NINTH DEFENSE

The District denies that Plaintiff engaged in Protected Activity. No actions taken by Defendant were in response to any protected activity undertaken by Plaintiff. Even if Plaintiff engaged in protected activity, the Defendant would have taken the actions for other, legitimate, non-protected reasons. None of Plaintiff's allegedly protected actions were the cause of any employment action undertaken.

### TENTH DEFENSE

Plaintiff may have failed to properly invoke the renewal statute and may otherwise be barred by the statute of limitations or statute of repose.

### ELEVENTH DEFENSE

None of the alleged activities that Plaintiff alleges she disclosed were violations or noncompliance with a law, rule, or regulation.

### TWELFTH DEFENSE

Plaintiff waived any claims for damages (including lost wages, interest, or otherwise) to the extent her voluntary dismissal of her first action has delayed the adjudication of her claims.

### THIRTHEENTH DEFENSE

Any of Plaintiff's alleged grievances that do not rise to the level of discharge,

suspension, or demotion are legally insufficient to constitute "adverse employment" action that would support any whistleblower claim.

## FOURTEENTH DEFENSE

Answering the numbered paragraphs of the Complaint, Defendant shows as follows:

## RENEWAL ACTION

1.      Defendant acknowledges that this action purports to be a renewal action under O.C.G.A. § 9-2-61. Exhibits A, B, and C speak for themselves. Defendant does not admit that this is a proper renewal action, and this paragraph contains legal conclusions that do not require any response. To the extent that any allegations are made in this paragraph, they are denied. Moreover, Defendant submits that this Renewal Action is barred by the applicable statute of repose and should be dismissed.

2.      This paragraph contains legal conclusions that do not require any response. To the extent that any allegations are made in this paragraph, they are denied. Exhibit D speaks for itself. By way of further answer, Plaintiff failed to bring this action within the applicable statute of repose and cannot be saved by O.C.G.A. § 9-2-61.

3.      The Defendant is without personal knowledge to confirm that all costs of prior action have been paid, and those allegations therefore stand denied. To the extent this paragraph contains legal conclusions, they do not require a response.

4.      The Defendant denies that this action can renew the prior case, as it is barred by the applicable statute of repose. Plaintiff may not use O.C.G.A. § 9-2-61(a)

to attempt to add otherwise barred claims to renewal actions, when such claims are not substantially the same as the claims in the original action. Defendant objects to incorporation of the entire record of the prior case and moves to strike any such incorporation. To the extent this paragraph contains legal conclusions, they do not require a response. Any allegation not specifically responded to stand denied.

### JURISDICTION AND VENUE

5.    Defendant admits that this Court has jurisdiction over Georgia Whistleblower Act claims generally, but Defendant denies that there is any basis for this claim or that it is timely. To the extent sovereign immunity may provide a jurisdictional defense, not just a defense of liability, this Court lacks jurisdiction to any claim barred by sovereign immunity.

6.    The allegations contained in paragraph 6 of Plaintiff's Renewal Complaint are admitted.

7.    The allegations contained in paragraph 7 of Plaintiff's Renewal Complaint are denied. By way of further answer, Defendant submits that Plaintiff's Renewal Complaint is barred, on its face, by the three-year statute of repose created by O.C.G.A. § 45-1-4(e)(1).

### PARTIES

8.    Answering the allegations of paragraph 8, this Defendant admits only that Plaintiff was employed by the Defendant at various points in time since 2010, including during a period from 2015 to 2017 and again from 2019 to 2021. She then voluntarily resigned. All remaining allegations are denied.

9.      The Defendant admits only that Dr. Garcia-Wilder holds the degrees listed and that she has served in a number of positions for the Defendant and other educational institutions throughout Georgia.   The Defendant lacks personal knowledge of all of Dr. Garcia-Wilder's professional experiences, therefore, it cannot admit or deny all the specific professional experiences alleged in this paragraph. Therefore, the remaining allegations in paragraph 9 of Plaintiff's Renewal Complaint are denied.

10.      The allegations contained in paragraph 10 of Plaintiff's Renewal Complaint are admitted.

11.      Answering the allegations of paragraph 11, this Defendant admits that it is an employer as that term is defined in the Whistleblower Act and that Dr. Garcia-Wilder was a public employee.  This Defendant denies she has any claims as a public employee as that term is defined in the Whistleblower Act because she fails to meet the requirements of that statute.  All other allegations are denied.

## FACTS

12.      The allegations contained in paragraph 12 of Plaintiff's Renewal Complaint are admitted.  By way of further answer, Plaintiff worked for Defendant at various points in time prior to returning in 2019, voluntarily leaving the Defendant's employ in 2006, returning in 2015, and leaving again in 2017.

13.      The allegations contained in paragraph 13 of Plaintiff's Renewal Complaint are denied.

14.    As stated, the allegations contained in paragraph 14 are denied.  By way of further answer, as Chief of Schools, Plaintiff had a number of leadership and supervisory responsibilities for the District.

15.    As stated, the allegations contained in paragraph 15 are denied.  By way of further answer, as Chief of Schools, Plaintiff was one of several District staff members involved in reviewing and approving student discipline recommendations.

16.    The allegations contained in paragraph 16 of Plaintiff's Renewal Complaint are admitted in part, as Dr. Levett had significant responsibility for the duties described.  By way of further answer, Dr. Levett had other job duties as Deputy Superintendent and Chief Academic Officer.

17.    Answering the allegations of paragraph 17, this Defendant admits that there was an audit in 2010.  The provisions of the audit speak for themselves.  The remaining allegations of paragraph 17 are denied.

18.    The allegations contained in paragraph 18 of Plaintiff's Renewal Complaint are denied.

19.    The allegations contained in paragraph 19 of Plaintiff's Renewal Complaint are denied.

20.    Answering the allegations of paragraph 20, this Defendant avers that *Goss v. Lopez* speaks for itself, and in the context of this litigation is irrelevant.  The remaining allegations of paragraph 20 are denied.

21.    The allegations contained in paragraph 21 of Plaintiff's Renewal Complaint are admitted.

22.     The allegations contained in paragraph 22 of Plaintiff's Renewal Complaint are denied.

23.     The allegations contained in paragraph 23 of Plaintiff's Renewal Complaint are denied.

24.     The allegations contained in paragraph 24 of Plaintiff's Renewal Complaint are denied.

25.     The allegations contained in paragraph 25 of Plaintiff's Renewal Complaint are denied.

26.     The allegations contained in paragraph 26 of Plaintiff's Renewal Complaint are denied.

27.     The allegations contained in paragraph 27 of Plaintiff's Renewal Complaint are denied.  By way of further answer, Title VI does not "protect" discrimination.

28.     The allegations contained in paragraph 28 of Plaintiff's Renewal Complaint are denied.

29.     The allegations contained in paragraph 29 of Plaintiff's Renewal Complaint are denied.

30.     The allegations contained in paragraph 30 of Plaintiff's Renewal Complaint are denied.

31.     The allegations contained in paragraph 31 of Plaintiff's Renewal Complaint are denied.

32.    The allegations contained in paragraph 32 of Plaintiff's Renewal Complaint are denied.

33.    The allegations contained in paragraph 33 of Plaintiff's Renewal Complaint are denied.

## RETALIATION IN VIOLATION OF
## THE GEORGIA WHISTLEBLOWER ACT

34.    Answering the allegations of paragraph 34, the provisions of the statute speak for themselves and no answer is required by this Defendant.

35.    The allegations contained in paragraph 35 of Plaintiff's Renewal Complaint are denied.

36.    The allegations contained in paragraph 36 of Plaintiff's Renewal Complaint are denied.

37.    Answering the allegations of paragraph 37, this Defendant avers that Plaintiff accepted the position of Senior Grant Writer and that her salary was reduced.  The remaining allegations of paragraph 37 are denied.

38.    The allegations contained in paragraph 38 of Plaintiff's Renewal Complaint are denied.

39.    The allegations contained in paragraph 39 of Plaintiff's Renewal Complaint are denied.

40.    The allegations contained in paragraph 40 of Plaintiff's Renewal Complaint are denied.

41.    The allegations contained in paragraph 41 of Plaintiff's Renewal Complaint are denied.

42.    The allegations contained in paragraph 42 of Plaintiff's Renewal Complaint are denied.

43.    The allegations contained in paragraph 43 of Plaintiff's Renewal Complaint are denied.

44.    The allegations contained in paragraph 44 of Plaintiff's Renewal Complaint are denied.

45.    The allegations contained in paragraph 45 of Plaintiff's Renewal Complaint are denied.

46.    The allegations contained in paragraph 46 of Plaintiff's Renewal Complaint are denied.

47.    The allegations contained in paragraph 47 of Plaintiff's Renewal Complaint are denied.

48.    The allegations contained in paragraph 48 of Plaintiff's Renewal Complaint are denied.

49.    Paragraph 49 of Plaintiff's Renewal Complaint contains legal conclusions that require no response.  To the extent paragraph 49 makes any allegations or demands any relief, the allegations are denied and no relief is warranted from Defendant.

50.    The allegations contained in paragraph 50 of Plaintiff's Renewal Complaint are denied, and no relief is warranted from Defendant.

**Response to Prayer for Relief**

Defendant denies Plaintiff is entitled to any of the relief sought in her "Prayer for Relief."

Any allegation not expressly admitted is denied.

## PRAYER FOR RELIEF

This Defendant prays that it be afforded the following relief:

a)    that this case be dismissed with prejudice because it is barred by the three-year statute of repose created by O.C.G.A. § 45-1-4(e)(1);

b) That it have a trial by jury, to the extent the case is not dismissed as a matter of law;

c)    That all claims against it be dismissed with prejudice; and

d)    That all costs and attorneys' fees be assessed against Plaintiff.

This 10th day of December, 2024.

BOUHAN FALLIGANT LLP

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

/s/Lucas D. Bradley
LUCAS D. BRADLEY
Georgia State Bar No. 672136
/s/Andrew H. Dekle
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant Savannah-Chatham County Public School System*

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by United States Mail with proper postage affixed as follows, with additional copy by email:

S. Wesley Woolf, Esq.
Woolf Law
2905 Bull Street
Savannah, Georgia 31405
woolf@woolflawfirm.net

Matthew C. Billips, Esq.
BARRETT & FARAHANY
3344 Peachtree Rd., NE Suite 800
Atlanta, GA 30326
matt@justiceatwork.com

This 10th day of December, 2024.

BOUHAN FALLIGANT LLP

Post Office Box 2139

Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

/s/Lucas D. Bradley
LUCAS D. BRADLEY
Georgia State Bar No. 672136
/s/Andrew H. Dekle
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant Savannah-Chatham County Public School System*

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
*Superior Court of Chatham County, Georgia*
*Civil Action No. SPCV24-0117*

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 12/20/2024 11:41 AM
Reviewer: WS

SHELIA GARCIA-WILDER,                    )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )    CIVIL ACTION NO. SPCV24-01173
                                         )
SAVANNAH-CHATHAM    COUNTY               )
PUBLIC SCHOOL DISTRICT,                  )
                                         )
        Defendant.                       )

## STIPULATION FOR EXTENSION OF TIME FOR PLAINTIFF TO FILE A RESPONSE TO DEFENDANT'S MOTION TO DISMISS RENEWAL SUIT

COME NOW counsel for Plaintiff and Defendant, and, pursuant to O.C.G.A. § 9-11-6(b),

stipulate that the time for Plaintiff to file a response to Defendant's Motion to Dismiss Renewal

Suit shall be extended up to and including February 10, 2025.

This 20th day of December, 2024.

CONSENTED TO:

BOUHAN FALLIGANT LLP

/s/ Andrew H. Dekle
LEAMON R. HOLLIDAY, III
Georgia State Bar No. 362500
LUCAS D. BRADLEY
Georgia State Bar No. 672136
ANDREW H. DEKLE
Georgia State Bar No. 847828

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
lrholliday@bouhan.com
ldbradley@bouhan.com
ahdekle@bouhan.com

*Attorneys for Defendant Savannah-Chatham County Public School System*

Signatures Continued on Following Page

1

WOOLF LAW


/s/ S. Wesley Woolf
S. WESLEY WOOLF
Georgia State Bar No. 776175
*Attorney for Plaintiff*

2905 Bull Street
Savannah, Georgia  31405
Telephone: (912) 201-3696
Facsimile: (912) 201-3699
  woolf@woolflawfirm.net


BARRETT & FARAHANY


/s/ Matthew C. Billips
MATTHEW C. BILLIPS
Georgia Bar No. 057110
*Attorney for Plaintiff*

BARRETT & FARAHANY
3344 Peachtree Rd., NE, Suite 800
Atlanta, GA   30326
(470) 284-7265
matt@justiceatwork.com


*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV24-01173

2

CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record via electronic service through the Court's electronic filing system:

ANDREW H. DEKLE
LUCAS BRADLEY
*Attorneys for Defendant Savannah-Chatham County Public School District*
Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

This 20th day of December, 2024.

/s/ S. Wesley Woolf
S. WESLEY WOOLF
*Attorney for Plaintiff*

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/10/2025 3:24 PM
Reviewer: KW

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

SHELIA GARCIA-WILDER,                  :
                                       :
            Plaintiff,                 :
                                       :
vs.                                    :        CIVIL ACTION NO.
                                       :        SPCV24-01173-MO
SAVANNAH-CHATHAM COUNTY                :
PUBLIC SCHOOL DISTRICT,                :
                                       :
            Defendant.                 :

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW PLAINTIFF, Shelia Garcia-Wilder, and files her Response to Defendant's Motion to Dismiss. In its Motion, Defendant notes that this is a renewal action filed pursuant to O.C.G.A. § 9-3-61, but that is the only thing they are correct about. Defendant spills much ink urging this Court to find that her claims are untimely despite the Renewal Statute because the statute under which she asserts her claims, the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA"), contains a statute of repose. It does not. The GWA nowhere states that it prescribes a period of repose, and Georgia cases make clear that statutes of repose are in derogation of the common law, exist only when a statute includes specific prohibitive language that is not present in the GWA, and only when the statute defines the limitations period by reference to the date the claim accrues – which the GWA does not. Ultimately, Defendant asks the Court to go against the controlling authorities in Georgia to find that the GWA contains a statute of repose when it does not. And because the GWA does not contain a statute of repose, the Renewal Statute preserves all of Plaintiff's claims and Defendant's Motion to Dismiss should be denied.

1

## I.    INTRODUCTION AND FACTUAL BACKGROUND

This action, like the original action, alleges violations of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4. Dr. Garcia-Wilder timely filed the original action within one year of Defendnat's first retaliatory demotion and just prior to the time her employment ended in 2021. At the time her rights under the GWA were violated, she was the second-highest ranking educator in the Savannah Chatham County Public School District (commonly, and herein, referenced as SCCPSS).

Dr. Garcia-Wilder reported unlawful conduct to her supervisor, Dr. Anne Levett; to wit, disproportionate suspensions and expulsions of Black and disabled students, who often suffered the additional failure of SCCPSS to provide due process – neither notice nor an opportunity to be heard - to contest the proposed discipline.  Dr. Garcia-Wilder, in her reports, connected these actions to the failures of Dr. Levett and her maintenance of a fraudulent and discriminatory system which pushed disabled and Black students out the graduation door with below-grade reading levels.

Dr. Levett obviously was not pleased with Dr. Garcia-Wilder's disclosures of these violations of laws, rules, and regulations, and demoted her after the 2019 school year to "senior" grant writer, reducing her contract by approximately $40,000. Nonetheless, Dr. Garcia-Wilder did not leave and therefore was demoted again to grant writer with a reduction in salary by an additional approximately $37,000.  At this point, after suffering a $77,000 reduction in pay, Dr. Garcia-Wilder was forced to leave the workplace, as any reasonable person under the circumstances would do.

Until her reports of unlawful conduct, Dr. Garcia-Wilder's career track placed her on the unquestionable path toward a career as a superintendent or beyond. That path was interrupted

2

further by Defendant's continued retaliatory conduct in refusing to consider Dr. Garcia-Wilder for

employment beginning in late October 2023 after she involuntarily resigned her position as grant

writer. These are retaliatory acts for which Dr. Garcia-Wilder seeks all available legal relief for

under the GWA.

Defendant seeks dismissal of this action, arguing that it is untimely and cannot be renewed

with the Renewal Statute because the GWA contains a statute of repose upon which the Renewal

Statute does not operate. But the GWA does not purport to contain a statute of repose, and

Defendant's arguments that it should be interpreted to include one miss the mark. They are based

on legal theories applicable to other, distinguishable statutes which prescribe limitations periods

for medical malpractice, products liability, and other claims. For all the reasons explained below,

the GWA does not include a statute of repose and cannot be interpreted as containing one, and

Defendant's Motion to Dismiss should therefore be denied.

## II.    ARGUMENT AND CITATION TO AUTHORITIES

### A.    LEGAL STANDARD

Defendant SCCPSS filed its motion to dismiss under O.C.G.A. § 9-11-12(b)(6), alleging

failure of Dr. Garcia-Wilder to state a claim. "Every defense, in law or fact, to a claim for relief in

any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that

the following defenses may, at the option of the pleader, be made by motion in writing: . . . (6)

Failure to state a claim upon which relief can be granted." O.C.G.A. § 9-11-12(b)(6). "A motion

making any of these defenses shall be made before or at the time of pleading if a further pleading

is permitted. O.C.G.A. § 9-11-12(b)." The Georgia Supreme Court has clarified that:

> A motion to dismiss for failure to state a claim upon which relief may be granted
> should not be sustained unless (1) the allegations of the complaint disclose with
> certainty that the claimant would not be entitled to relief under any state of provable
> facts asserted in support thereof;[11] and (2) the movant establishes that the claimant

3

could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.[12] If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied.[13] In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

Anderson v. Flake, 267 Ga. 498, 501, 480 S.E.2d 10, 12–13 (1997) (citations omitted).

Georgia courts also apply statutory construction rules to statutes of limitation and statutes of repose. All statutes of limitation, being in derogation of common law, are to be strictly construed. Redwine v. Arvaniti, 83 Ga. App. 203, 206, 63 S.E.2d 222, 224 (1951), citing Brinsfield v. Carter, 2 Ga. 143 (1847) and Georgia Railroad & Banking Co. v. Wright, 124 Ga. 596, 619, 53 S.E. 251 (1906). Likewise, statutes of repose also are in derogation of the common law and must be strictly construed. Mullis v. S. Co. Servs., Inc., 250 Ga. 90, 93, 296 S.E.2d 579, 583 (1982). Applying the rules of statutory construction, as explained by the Georgia courts in cases involving statutes of repose, this Court bound to conclude that the GWA does not contain a statute of repose.

## B. ARGUMENT AND CITATION OF AUTHORITY

The Georgia Whistleblower Act (GWA) creates a right of action for public employees who suffer retaliation from their public employer "for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency." O.C.G.A. § 45-1-4(d)(2). Retaliation is further prohibited for "objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." O.C.G.A. § 45-1-4(d)(3). Like the original action, this renewal action seeks relief under these GWA provisions for the Defendant's retaliatory conduct driving Dr. Garcia-Wilder from the workplace.

The Act provides time limits on instituting a civil action for vindicating these rights:

> A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier.

O.C.G.A. § 45-1-4(e)(1). Defendant does not dispute the fact that Dr. Garcia-Wilder timely filed the original action within one year of all of Defendant's conduct which Plaintiff alleges in that action was retaliatory, and Plaintiff does not dispute that the renewal action was filed more than three years after that conduct. It is further true that a renewal action filed beyond the time provided for by a statute of repose is not timely under the Georgia Renewal Statute. Therefore, the sole question raised by Defendant's Motion is whether the GWA limitation of O.C.G.A. § 45-1-4(e)(1) is a statute of repose under Georgia law.

Defendant argues in conclusory repetition that the limitations language of GWA should be interpreted as a statute of repose. In doing so, Defendant draws conclusions that meet its purpose from insufficient premises. In particular, Defendant fails to discuss Georgia authority explaining how our courts distinguish between a statute of limitations and a statute of repose. As demonstrated below, the time limitation set forth in the Georgia Whistleblower Act is not a statute of repose and Defendant's Motion should be denied.

**i.    The Renewal Statute Provides for Recommencement of Plaintiff's Case.**

By its terms, the Georgia Renewal Statute provides for recommencement of Dr. Garcia-Wilder's originally-filed GWA action. As applicable, the statute provides:

> (a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the

expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

O.C.G.A. § 9-2-61(a).

Dr. Garcia-Wilder's "case [was] commenced . . . within the applicable statute of limitations." Defendant does not argue otherwise. Dr. Garcia-Wilder discontinued or dismissed the case and recommenced it "within six months after the discontinuance or dismissal[.]" *Id*. As provided, she has exercised the privilege of renewal only once. *Id*. Without more, the circumstances of Dr. Garcia-Wilder's exercise of the privilege of renewal is precisely within the terms of the statute. Without clear direction from the legislature, strictly construing all statutes of limitation,[1] this Court should apply the terms of the GWA as a statute of limitation and Defendant's Motion to Dismiss should be denied.

### ii.    Defendant's Authorities Are Insubstantial and Inapposite.

Defendant tacitly admits that the GWA does not by its terms contain any statute of repose by offering three arguments for interpreting the GWA as containing one: (1) that it prescribes a limitations period of one year and a "separate deadline that is not based on accrual" of the cause of action (Motion, pp. 7- 8); (2) that a commentator in a Seattle, Washington law journal described the three-year limitations period as a statute of repose, albeit without citation to any authority (*id*. at 10); and (3) that a federal case from New York referred to similar language in a federal statute as containing a statute of repose. *Id*. at 11-12.[2] The problem is that none of these reasons are based

---

[1] Redwine, 83 Ga. App. At 206, 63 S.E.2d at 224; Georgia Railroad & Banking Co., 124 Ga. at 619.

[2] The other arguments made by Defendant are simply "arguments from silence," or suggestions that because a court did not say the GWA does *not* contain a statute of repose, it therefore probably does. For example, Defendant argues that the Court of Appeals in Tuttle v. Ga. Bd. Of Regents of Univ. Sys. Of Ga., 326 Ga. App. 350 (2014), "did not expressly address the separate three-year provision of O.C.G.A. § 45-1-4(e)(1), suggesting that it was something different than a statute of limitations." What a court does not consider or decide is not authority for the question presented in another case.

on *Georgia* law, which controls here and does not permit the Court to find a statute of repose in the GWA where it does not exist.

First, with respect to the text of the statute itself, Defendant argues that O.C.G.A. § 45-1-4(e)(1) provides a limitations period of one year and the separate limitations period of three years also contained in that provision must be a statute of repose because it is "not based on accrual." (Motion p., 8.) Defendant's reading of the statute is confused and inconsistent with the explanation of Georgia courts on this point. Specifically, a statute of repose is one that sets a deadline for filing an action which "bears no relation to when the cause of action accrued." McArthur v. Beech Haven Baptist Church of Athens, 368 Ga. App. 525, 534 (2023). Thus, a statute providing that claims for sexual abuse must be brought, if ever, before the plaintiff's twenty-third birthday, was a statute of repose because the deadline – the plaintiff's birthday – bore no relationship to when the cause of action accrued – the sexual abuse. *Id.*

This is the complete opposite of O.C.G.A. § 45-1-4(e)(1), which expressly provides that lawsuits must be brought "within one year after discovering the retaliation or within three years *after the retaliation*, whichever is earlier." Both are based on the date that the cause of action accrued; the earlier deadline – similar to laches – prohibits employees who know that they have been the victims of retaliation from sleeping on their rights. One cannot conclude that the three-year limitations period in O.C.G.A. § 45-1-4(e)(1) "bears no relationship to when the cause of action accrued" when, by the statute's plain terms that limitations period runs three years from exactly what gave rise to the cause of action – the "retaliation." Because of this, O.C.G.A. § 45-1-4(e)(1) cannot be a statute of repose.

The decision in <u>Albers v. Ga. Bd. of Regents of the Univ. Sys. of Ga.</u>, 330 Ga. App. 58, 766 S.E.2d 520 (2014) makes this clear. In discussing whether Mr. Albers had filed suit within one year of discovery of the act of retaliation, the Court stated:

> As we noted in *Tuttle,* "the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result."

<u>Albers,</u> 330 Ga. App. at 65, 766 S.E.2d 520, 525 (2014). The Court held that, because Mr. Albers was not terminated until November 19, 2009, his cause of action for his retaliatory termination had not yet accrued, despite his knowledge that the Board of Regents was retaliating against him in other ways. The text of the statute is unambiguous that the three-year statute of limitations rests on the accrual of the action, as it begins to run from the act of retaliation.

"Second," Defendant substantially relies upon a law review article published in the Seattle Journal for Social Justice in Seattle, Washington. It is obvious that a law review article, even one published in this State, is not controlling authority for Georgia courts, but examination of the cited portion of the article shows why it fails to support Defendant's argument. Put simply, the author describes the GWA as containing a statute of repose but does not cite any authority whatever for this proposition, let alone a discussion of cases like <u>McArthur</u> or <u>Simmons v. Sonyika</u>.[3] Indeed, the article fails to even further discuss the time limitation for filing a GWA action. This is simply not a sufficient basis for this Court to find that the GWA contains a statute of repose, and contrary to Defendant's representation that "commentators" have so concluded, this is the only such authority Defendant can or will offer.

Finally, Defendant argues that language in an opinion of the Second Circuit Court of Appeals

---

[3] <u>Simmons v. Sonyika</u>, 279 Ga. 378, 379, 614 S.E.2d 27 (2005), <u>disapproved on other grounds by</u> <u>Golden v. Floyd Healthcare Mgmt., Inc.</u>, 319 Ga. 496, 904 S.E.2d 359 (2024), <u>citing</u> <u>Craven v. Lowndes County, Hosp. Auth.</u>, 263 Ga. 657, 660(2), 437 S.E.2d 308 (1993).

about a federal statute should indicate that GWA contains a statute of repose. See Motion, pp. 10-11 (citing, Dekalb Cnty. Pension Fund v. Transocean Ltd., 817 F.3d 393 (2nd Cir. 2016)). To begin with, this federal decision determined a different question of how to interpret a statute already held to be a statute of repose. Transocean, 817 F.3d at 410-12. But even if that were not so, this federal decision interpreting a federal statute under the federal common law is simply not controlling, or even persuasive, on the analysis of how to determine whether a statute is one of repose under Georgia law, which the Georgia courts have already answered.[4]

### iii.    The GWA Limitations Period is Simply a Statute of Limitation with a Discovery Rule Provision, Not a Statute of Response.

Rather than a statute of repose, the GWA simply sets out a statute of limitations, with an earlier deadline once the retaliatory act has been discovered and the later deadline based on the date the retaliatory act occurred. *Franklin v. Eaves*, 337 Ga. App. 292, 297, 787 S.E.2d 265, 270 (2016). Both deadlines are based upon the accrual of the cause of action. *Albers*, supra. This does not meet the definition of a statute of repose. Thus, the only possible construction is that it is a statute of limitations.

The Georgia courts have so found in other analogous cases involving other statutes. Under Georgia law:

> A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable.

Simmons, 279 Ga. at 379, 614 S.E.2d 27 (2005). The GWA limits, in express terms, limits the time in which a party may bring an action for a right which has already accrued.

---

[4] As discussed below, Georgia statutes of repose have distinctive language of prohibition on the bringing of an action. The federal statute interpreted in the Defendant's out-of-state (and out-of-circuit case), *Transocean*, had such prohibitive language, *see* 817 F.3d at n.10 (citing 15 U.S.C. § 78j(f) as providing that "no action shall be maintained"), which is another reason it is distinguishable from the GWA in this case.

In a decision exhaustively discussing distinctions of this sort and concluding that Georgia's statute creating a claim of abusive litigation[5] was a statute of limitation and not a statute of repose, the Georgia Court of Appeals applied the Supreme Court's <u>Simmons</u> decision as follows:

> Applying these principles, we conclude that OCGA § 51-7-84(b) is a statute of limitation rather than a statute of repose. Indeed, several prior cases of this Court have referred to OCGA § 51-7-84(b) as a statute of limitation. See *Land v. Boone*, 265 Ga. App. 551, 552, 594 S.E.2d 741 (2004) ("An action for frivolous litigation has only a one-year statute of limitation ...."); *Wilson v. Hinely*, 259 Ga. App. 615, 616, 578 S.E.2d 254 (2003) (referring to "one-year statute of limitation" for statutory abusive litigation claims); *Nairon v. Land*, 242 Ga. App. 259, 261 (1), 529 S.E.2d 390 (2000) (referring to OCGA § 51-7-84(b) as "statute of limitation"). And, we discern no reason for construing OCGA § 51-7-8(b) differently here, given the language of the statute compared to other Georgia statutes of limitation and statutes of repose.

> Georgia statutes of limitation commonly contain language stating that a claim "shall be brought" within a certain time period after the right has accrued. See, e.g., OCGA §§ 9-3-22 ("All actions for the enforcement of rights accruing to individuals under statutes or acts of incorporation or by operation of law shall be brought within 20 years after the right of action has accrued ...."); 9-3-24 ("All actions upon simple contracts in writing shall be brought within six years after the same become due and payable. ..."); 9-3-31 ("Actions for injuries to personalty shall be brought within four years after the right of action accrues."); 9-3-33 ("Except as otherwise provided in this article, actions for injuries to the person shall be brought within two years after the right of action accrues ...."). OCGA § 51-7-84(b) contains language similar to these statutes, stating that an abusive litigation claim "must be brought within one year of the date of final termination" of the underlying proceeding, i.e., within one year of when the right accrues.

> Conversely, OCGA § 51-7-84(b) does not contain prohibitive language comparable to that found in many Georgia statutes of repose. See, e.g., OCGA §§ 9-3-51(a) ("*No action* to recover damages ... shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.") (emphasis supplied); 9-3-71(b) ("Notwithstanding subsection (a) of this Code section, *in no event* may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.") (emphasis supplied); 34-9-245 ("*No claim* for reimbursement shall be allowed where the application for reimbursement is filed more than two years from the date such overpayment was made.") (emphasis supplied); 51-1-11(b)(2) ("*No action* shall be commenced

---

[5] The statutory abusive litigation claim reads as follows: "An action or claim under this article requires the final termination of the proceeding in which the alleged abusive litigation occurred and *must be brought within one year of the date of final termination*. O.C.G.A. § 51-7-84(b) (emphasis supplied).

pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.") (emphasis supplied).

Accordingly, OCGA § 51-7-84(b), in light of its plain language and when construed in harmony with other relevant laws, constitutes a statute of limitation rather than a statute of repose. Compare *Trax-Fax v. Hobba*, 277 Ga. App. 464, 467-470 (2) (a), 627 S.E.2d 90 (2006) (concluding that OCGA § 34-9-245 was statute of repose rather than statute of limitation, given that it had "similar prohibitive language" to other statutes of repose, and given that a separate statute provided a statute of limitation for workers' compensation reimbursement claims). Consequently, the defendants' reliance on OCGA § 51-7-84(b) as an alternative basis for affirming the dismissal of Coen's statutory abusive litigation claim is misplaced.

Coen v. Aptean, Inc., 346 Ga. App. 815, 826–30, 816 S.E.2d 64, 75–77 (2018), rev'd in part, 307

Ga. 826, 838 S.E.2d 860 (2020), and opinion vacated in part, 356 Ga. App. 468, 847 S.E.2d 835

(2020).

Like the statute in Simmons, the entirety of the GWA limitations subsection (e)(1) offers a

"procedural rule limiting the time in which a party may bring an action for a right which has already

accrued." Simmons, at 379, citing Craven, supra. That GWA subsection does not "delineate[] a

time period in which a right may accrue." Coen, supra, Craven v. Lowndes Cnty. Hosp. Auth., 263

Ga. at 660, 437 S.E.2d at 310. Instead, it provides a limitation on when an employee may bring a

claim for retaliation which has already accrued—either one year after discovering it or in any

event, not later than three years.[6] Dr. Garcia-Wilder's injury occurred within the statute of

limitations; the renewal statute does not bar her renewal action.

And consistent with the Court of Appeals' analysis of statutory language in Coen, 1) the

---

[6] The fact that the GWA provides different limitations periods depending on the knowledge of the employee is also not unusual, Georgia courts recognize the difficulty for employees to develop evidence of the discriminatory or retaliatory motive behind an unlawful employment decision. See e.g., West v. City of Albany, 300 Ga. at 749, 797 S.E.2d at 814 ("municipal ante litem notice statute, would effectively bar a significant number of meritorious claims because such claimants are often offered a pretextual reason for a retaliatory employment decision, are often not contemporaneously aware that they were the victim of illegal retaliation . . . ."). Dr. Garcia-Wilder's circumstances of ascertaining Defendant's motive was similarly attenuated, Defendant having affirmatively offered her false reasons for repeated demotions clearly intended to drive her from the workplace.

GWA statute has been referenced in several prior cases as a statute of limitations, 2) it uses language common to statutes of limitation and 3) it does not employ the "prohibitive language comparable to that found in many Georgia statutes of repose." Coen v. Aptean, Inc., 346 Ga. App. at 826–30, 816 S.E.2d at 75–77. First, in West v. City of Albany, 300 Ga. 743, 748–49, 797 S.E.2d 809, 814 (2017), the Georgia Supreme Court referenced the GWA limitations period as a "carefully crafted statute of limitation in the GWA that grants an employee up to three years after the retaliation to file an action, or one year after discovering the retaliation, whichever is earlier." See also, Pattee v. Georgia Ports Auth., 477 F. Supp. 2d 1253, 1269–70 (S.D. Ga. 2006) ("statutes of limitation look only to remedy and not to substantive rights;" describing the subsection (e)(1) as the then "new statute of limitations"); Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia, 326 Ga. App. 350, 354, 756 S.E.2d 585, 588 (2014) (applying an analysis of whether the GWA "statute of limitations" had been tolled for fraud). Further, the language of Georgia statutes of limitation is the language of GWA subsection (e)(1), and the "prohibitive" language of Georgia statutes of repose is entirely absent from GWA subsection (e)(1). In Simmons, the Georgia Supreme Court recollected that in its opinion in Wright v. Robinson, 262 Ga. 844, 846(1), 426 S.E.2d 870 (1993), the exemplar case offered by Defendant, it "relied on the 'in no event' language found in [the medical malpractice statute]" in its application of the renewal statute to that statute of repose.

Clear distinction between statutes of limitation and statutes of repose is the hallmark of Georgia statute of repose jurisprudence. The GWA's terms "within one year after discovery of the retaliation or within three years after the retaliation, whichever is earlier" indicate only that it is a statute of limitation. No terms commonly used by the Georgia legislature to indicate a statute of repose are found in the GWA limitations provision; and Defendant offers no comparable statute

in the state of Georgia that uses the language used in the GWA for establishing what Defendant

argues is a statute of repose. Georgia's legislature knows the terminology it considers necessary

for designating a limitation period as a statute of repose. "Where the General Assembly wishes to

put a firm deadline on filing lawsuits, it knows how to enact a statute of repose instead of a statute

of limitation." Robinson v. Boyd, 288 Ga. 53, 57 (2), 701 S.E.2d 165 (2010). The General

Assembly did not do so here. The GWA limitations provision is not a statute of repose but rather,

is a statute of limitation and Defendant's Motion to Dismiss should be denied.

iv.   **Plaintiff's Claims of Failure to Hire Remain Viable Regardless of the Court's Determination Regarding the Claim in Her Original Complaint.**

Defendant suggests in its Motion that "Plaintiff alleges multiple, discrete acts of

whistleblower retaliation, with the last claimed act of retaliation occurring in May 2021" and

argues that "all of Plaintiff's claims in the Renewal Action are barred" by the theory of law it offers

the Court. Defendant's Motion, p. 13. Similarly, Defendant references Plaintiff's "sole claim in

the Renewal Action" and argues that "every act of retaliation in her Complaint took place more

than three years before she filed her Renewal Action[.]" Id., p. 6.

Plaintiff, however, offers in her renewal Complaint allegations of retaliation additional to

those set forth in her original Complaint. Specifically, Plaintiff alleges as follows:

> 42.
> Retaliation continued after she was forced from the job when applying for
> numerous job positions approximating her professional status as Chief of Schools
> for SCCPSS and available with SCCPSS. She never received an interview and
> persons dramatically less qualified than her received interviews and were hired.

Renewed Complaint, ¶ 42.

In a renewal action, a plaintiff may allege additional facts or contentions, and the defendant

likewise can interpose such defensive pleadings as he may deem best. SunTrust Bank v. Lilliston,

302 Ga. 840, 809 S.E.2d 819 (2018), on remand, 344 Ga.App. 641, 811 S.E.2d 80 (2018). In other words, the new cause of action stands on its own footing as to such defensive pleadings.

Defendant's pleadings clearly, but incorrectly, state that the claims of her original Complaint are the "sole claim in the Renewal Action." Defendant's Motion addresses only those claims. Hence, no motion is pending on Dr. Garcia-Wilder's claims of continuing retaliation. To the extent the Court might approach Defendant's Motion as encompassing that claim, however, "the pleadings are to be construed most favorably to the party who filed them and all doubts regarding such pleadings must be resolved in the filing party's favor." Anderson, supra. Dr. Garcia-Wilder's claim of continuing retaliation survives Defendant's Motion.[7]

## C.    CONCLUSION

For the above stated reasons, Defendant's Motion to Dismiss should be denied.

RESPECTFULLY SUBMITTED this 10th day of February, 2025.

WOOLF LAW

/s/ S. Wesley Woolf
S. Wesley Woolf
Georgia Bar No. 776175
Counsel for Plaintiff

---

[7] Defendant may argue in a later motion that retaliatory action subsequent to employment is not within the purview of the Georgia Whistleblower Act, but that issue has been resolved adverse to any such argument by the Georgia courts. See City of Pendergrass v. Rintoul, 354 Ga. App. 618, 626, 841 S.E.2d 399, 406 (2020) ("In addition to the retaliation he faced while still employed with the City, Appellee Garner also faced the effects of the City's retaliation after resigning in September 2009. The City knew that Appellee Garner's POST record contained erroneous and false information relating to his employment with the City, but failed to correct the information. Due to the negative effect of having 'resigned in lieu of termination' listed on his POST record, Appellee Garner faced difficulty in finding another job in law enforcement when the City failed to correct Garner's POST record.")

14

**WOOLF LAW**
2509 Bull Street
Savannah, Georgia 31405
T: (912) 201-3696
F: (912) 201-3699
woolf@woolflawfirm.net

                              **BARRETT & FARAHANY**

                              /s/ *Matthew C. Billips*
                              Matthew C. Billips
                              Georgia Bar No. 057110
                              *Counsel for Plaintiff*

**BARRETT & FARAHANY**
3344 Peachtree Rd., NE
Suite 800
Atlanta, GA 30326
(470) 284-7265
matt@justiceatwork.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on

the following counsel of record by same day electronic mail as follows:

LUCAS D. BRADLEY
ANDREW H. DEKLE
**BOUHAN FALLIGANT LLP**
Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

This 10th day of February, 2025.

**WOOLF LAW**

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Counsel for Plaintiff*

16

SPCV24-01173-MO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 3/12/2025 1:54 PM
Reviewer: AB

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| SHELIA GARCIA-WILDER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | **CIVIL ACTION NO.** |
| | : | **SPCV24-01173** |
| | : | |
| SAVANNAH-CHATHAM COUNTY | : | |
| PUBLIC SCHOOL DISTRICT, | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

## AMENDED COMPLAINT

COMES NOW Plaintiff Shelia Garcia-Wilder and, pursuant to O.C.G.A. § 9-11-15(a), hereby files this Amended Complaint against the above-named Defendant pursuant to the Georgia Whistleblower Act and 42 U.S.C. § 1981, showing this Court as follows:

## RENEWAL ACTION AND AMENDMENT

1.

This is an amendment to the renewal action filed pursuant to O.C.G.A. § 9-2-61 on October 8, 2024. The original case was pending in this Court *sub nom* Shelia Garcia-Wilder v. Savannah-Chatham County Public School District, SPCV21-00522-MO. A true and accurate copy of the filed renewal action Complaint (with exhibits) is attached as Exhibit 1of this Amended Complaint.

2.

Plaintiff brought the renewal action within the applicable statute of limitations and within six (6) months of voluntarily dismissing the original action without prejudice. See Exhibit 1.

3.

Plaintiff confirmed with the Clerk of Superior Court of Chatham County and affirms here that all costs in the prior action are paid pursuant to O.C.G.A. § 9-2-61 and O.C.G.A. § 9-11-41.

4.

The renewal action included. and this amended renewal action includes substantially the same cause of action and the original case was filed within the statute of limitations applicable to the claims therein. The prior case was not void, nor was it dismissed on the merits; and the prior case was such a valid suit as may be renewed under O.C.G.A. § 9-2-61 and O.C.G.A. § 9-11-41. Plaintiff incorporates herein by reference the record in the referenced prior case.

5.

In addition to the substantially same cause of action as the original action, the renewal action included an additional claim for continued retaliation. See renewal action Complaint, ¶ 42. See also Exhibit 1. In this amended renewal action, Plaintiff

sets forth additional facts in support of that additional claim for continued retaliation. Without limitation, see ¶¶ 42-47, below.

6.

Plaintiff further amends her renewal action to include additional claims for relief under 42 U.S.C. § 1981 (Section 1981) by and through 42 U.S.C. § 1983 (Section 1983). Without limitation, see ¶¶ 56-72, below.

**JURISDICTION AND VENUE**

7.

The jurisdiction of this Court is conferred pursuant to the Georgia Civil Practice Act, including O.C.G.A. § 9-10-30 and 9-10-91.

8.

This Court has concurrent jurisdiction of the claims asserted under Section 1981 and Section 1983.

9.

The principal, and only, place of business of Defendant SCCPSS is located in Chatham County, Georgia.

10.

All claims in this action are timely filed within the statutes of limitations applicable to claims under the Georgia Whistleblower Act and Section 1981.

## PARTIES

### 11.

Plaintiff Shelia Garcia-Wilder is a resident of Chatham County, Georgia who is entitled to bring actions of this type and nature.   At all times relevant to the claims asserted here, Plaintiff Garcia-Wilder was employed by Defendant, first as Chief of Schools until her demotion to Senior Grant Writer.   At the next opportunity to demote Dr. Garcia-Wilder without cause, she was demoted to the position of Grant Writer.

### 12.

Dr. Garcia-Wilder holds a Doctor of Education degree, a Master of Education degree, and a Bachelor of Science degree in elementary education.   She has 30 years of experience of working in rural, urban, and small metro counties throughout Georgia at all levels, including in the roles of Georgia Department of Education (GDOE) state director, chief of schools, assistant superintendent of teaching and learning, chief academic officer, turnaround principal, director of school improvement, assistant principal, undergraduate, graduate associate professor, and classroom teacher.

### 13.

Defendant Savannah-Chatham County Public School District ("SCCPSS") is a public school district organized under Georgia law and is a governmental entity

providing public education services in Chatham County, Georgia.   Defendant may

be served by personal service on its chief executive officer, Superintendent S. Denise

Watts, Ed.D., at 208 Bull Street, Savannah, Georgia 31401.

14.

Defendant SCCPSS was, at all times relevant to this action, Dr. Garcia-

Wilder's employer and was and is a public employer as that term is defined by the

Georgia Whistleblower Act. Dr. Garcia-Wilder was, at all times relevant to this

action, a public employee as that term is defined by the Georgia Whistleblower Act.

## FACTS

15.

Plaintiff began her employment with SCCPSS at the beginning of the 2019-

2020 school year, in approximately July 2019 as Chief of Schools, a position that

was part of the SCCPSS Division of Academic Affairs and reported directly to then-

Superintendent M. Ann Levett, Ed.D.

16.

Dr. Garcia-Wilder performed her positions of employment with SCCPSS at a

satisfactory level at all times.

17.

As Chief of Schools, Dr. Garcia-Wilder's performance responsibilities were

substantial, and included:

a. leading the planning and implementation process to increase student achievement,

b. overseeing school and central office departmental budgets,

c. overseeing the management and governance of schools,

d. supervising the executive directors of schools,

e. supporting principals in their work to improve student learning,

f. providing professional learning to district and building leadership, and

g. reviewing and developing practices to improve student discipline and best practices of school leadership to address students' academic, behavioral, and social-emotional learning needs.

18.

A substantial responsibility of Dr. Garcia-Wilder as Chief of Schools was the oversight of student discipline proposed by SCCPSS principals, including discipline in the form of long-term suspensions and expulsions.

19.

Prior to becoming Superintendent, Superintendent Levett was employed by the SCCPSS as its Deputy Chief Academic Officer from 2013-2017 and was responsible for student attendance and for oversight of student discipline proposed by SCCPSS principals.

20.

In an audit of the school disciplinary process in 2010, the auditor determined

that there existed conditions of inconsistent handling of student discipline, and

inaccurate reporting of discipline data by the Division of Academic Affairs. The

2010 Audit revealed:

> During the course of the audit, we identified concerns related to the
> documentation of student discipline data that we felt needed immediate
> action.    We brought these concerns to the attention of District
> management in April 2010.

In April 2010, the District was notified by the Georgia Department of Education

(GDOE) that "based on an analysis of this data, Chatham County School System is

'at serious risk' for having significant disproportionality for the discipline of SWD

[students with disabilities]."

21.

At the time of the 2010 audit findings, David Feliciano (Dr. Garcia-Wilder's

supervisor at the time of her second demotion – see below) was employed by the

SCCPSS as its Chief Data and Accountability Officer, now Chief Technology

Officer, a position he still holds, and he was responsible for reporting accurate

discipline and attendance data to the GDOE.

22.

Immediately after her employment began as Chief of Schools in the Division

of Academic Affairs, in August and September 2019, Dr. Garcia-Wilder began

receiving from school principals, through Executive Directors (the principals' direct supervisors), discipline recommendations indicating a failure to follow standards and procedures required by law. Dr. Garcia-Wilder was responsible for approving or disapproving these recommendations.

23.

Case law has established that Constitutional due process requires that students for whom long-term suspension or expulsion is proposed must be offered a hearing (to determine whether the suspension or expulsion is appropriate) before a neutral decision-maker within approximately ten (10) days after the proposed action. *Goss v. Lopez*, 419 U.S. 565 (1975), O.C.G.A. § 20-2-754.

24.

All qualified school-aged children with a disability have a statutory right to a free and public education (FAPE) and may not, "solely by reason of their disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under SCCPSS programs and activities. 29 U.S.C. § 504 (Rehabilitation Act), 20 U.S.C. § 1400, *et seq*., (Individuals with Disabilities Education Act of 2004 (IDEA)). Under binding precedent, *Honig v. Doe*, 484 U.S. 305 (1988), and statute, 20 U.S.C. § 1415(j), students with disabilities may not be denied services for disciplinary reasons for more than ten days without the due process rights protected by the IDEA.

25.

According to the recommendations for discipline received in the 2019-2020 school year by Dr. Garcia-Wilder from school principals and approved by Executive Directors, SCCPSS students were being recommended for long-term suspension or expulsion, alternatively or in combination:

1. without a discipline notice to their parents,

2. without a report to the GDOE,

3. without a manifestation determination review (MDR) required by the IDEA and Section 504 of the Rehabilitation Act in circumstances of a student with a disability,

4. without determination of whether a disability was the cause of their conduct (in circumstances that suggested further review for whether a disability existed),

5. without following a disabled student's Individualized Education Program (IEP) required by the IDEA, and/or

6. without a hearing required by due process clause of the Fourteenth Amendment to the Constitution of the United States, by 20 U.S.C. § 1415(a) through (k), and by O.C.G.A. § 20-2-754.

26.

Further, certain suspended or expelled students were falsely recorded as present in the classroom – data required to be reported to federal and state governments.  Given federal statutes tying federal funding to students present in the classroom, false reporting of presence in the classroom permitted continued, uninterrupted access to that funding and complete denial of services to the children.

27.

Further, the recommended suspensions or expulsions of these students were not being recorded and reported.  State law requires accurate reporting of attendance and disciplinary incidents for the purpose of determining a school "climate" rating, a public rating used by GDOE as a diagnostic tool to determine if a school is on the right path to school improvement. See O.C.G.A. §§ 20-2-690.2, 20-14-33.

28.

In October 2019, Dr. Garcia-Wilder communicated to Superintendent Levett that she was disapproving suspension and expulsion recommendations from Executive Directors and school principals because of failures to follow the legal standards set forth above.

29.

Moreover, it was apparent from the data collected by Dr. Garcia-Wilder and her team that suspensions and expulsions were occurring in a manner disproportionately impacting Black male students and students with disabilities.

30.

Discrimination against students on the basis of their race is prohibited under federal law, including without limitation, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*. Title VI creates contractual rights in the beneficiaries of federal funding agreement with the school system, which contractual rights are also protected by 42 U.S.C. § 1981.

31.

Before the end of October 2019, Dr. Garcia-Wilder met with Superintendent Levett and informed her that there was a substantial decrease in elementary school academics and that the decrease may be related to disproportionate discipline of disabled and Black male students and because of attendance issues (e.g., if students are not in school, they are not learning). At this time, Superintendent Levett threatened Dr. Garcia-Wilder, indicating that she could remove Dr. Garcia-Wilder from her position and place her in a position where she would "feel comfortable."

32.

In another meeting in November 2019, Superintendent Levett acknowledged to Dr. Garcia-Wilder that she (Superintendent Levett) also disapproved recommended suspensions and expulsions before she became Superintendent and when she was responsible for such matters, but explained "I did not do it the way you were doing it by putting it in writing."

33.

In January 2020, Dr. Garcia-Wilder discovered that a Black male student was suspended from school without referral to her and without the student having been afforded due process. Upon informing Superintendent Levett of the incident, Superintendent Levett directed Dr. Garcia-Wilder to meet with Chief of Human Resources Ramon Ray, whereupon Mr. Ray made it clear to Dr. Garcia-Wilder that she should proceed no further in "opening a can of worms" relating to the failure to report the fact of students being sent home, the failure to report student absences as suspensions and relating further to the fact of race-related and disability-related disproportional disciplinary measures.

34.

The same failures to comply with the law revealed in the 2010 Audit apparently continued under Superintendent Levett's tenure as a Deputy Chief

Academic Officer from 2013-2017 and remained a recurring reality for families and students attending SCCPSS schools in the 2019-2020 school year.

35.

On May 12, 2020, Dr. Garcia-Wilder was informed by Chief Data and Accountability Officer, David Feliciano and Chief Human Resources Officer, Ramon Ray, that her position was being eliminated in the following school year because of budget issues.

36.

On the same day, the other Chief of Schools position under Superintendent Levett's direct supervision, held by Dr. Garret Brundage, was eliminated for the same alleged reason.  Dr. Brundage worked closely with Dr. Garcia-Wilder in reporting due process violations, disproportionate disciplinary action against students with disabilities and racial minority students, and other violations of law noted hereinabove.

37.

The following year, on July 14, 2021, SCCPSS again demoted Dr. Garcia-Wilder from Senior Grant Writer to Grant Writer, in a further act of retaliation and in an effort to drive Plaintiff from her job by cutting her pay by approximately $37,000.

## COUNT ONE
## RETALIATION IN VIOLATION OF
## THE GEORGIA WHISTLEBLOWER ACT

38.

The Georgia Whistleblower Act provides the following prohibitions against

retaliation against employees who complain of misconduct by public employers:

(d)(1) No public employer shall make, adopt, or enforce any policy or
practice preventing a public employee from disclosing a violation of or
noncompliance with a law, rule, or regulation to either a supervisor or
a government agency.

(2) No public employer shall retaliate against a public employee for
disclosing a violation of or noncompliance with a law, rule, or
regulation to either a supervisor or a government agency, unless the
disclosure was made with knowledge that the disclosure was false or
with reckless disregard for its truth or falsity.

(3) No public employer shall retaliate against a public employee for
objecting to, or refusing to participate in, any activity, policy, or
practice of the public employer that the public employee has reasonable
cause to believe is in violation of or noncompliance with a law, rule, or
regulation.

O.C.G.A. § 45-1-4(d).

39.

Between September 2019 and the date of her May 2020 demotion, Dr. Garcia-

Wilder engaged in several actions which are protected under O.C.G.A. § 45-1-4(c),

in that she both disclosed violations of or noncompliance with a law, rule, or

regulation to either a supervisor or a government agency and she objected to, and

refused to participate in, activities, policies, or practices of SCCPSS that she had reasonable cause to believe were a violation of or noncompliance with a law, rule, or regulation.

40.

The policies and practices of SCCPSS prevented Dr. Garcia-Wilder from further disclosing violations or noncompliance with laws, rules and regulations to either a supervisor or a government agency.

41.

With its May 12, 2020 demotion of Dr. Garcia-Wilder, Defendant SCCPSS removed her entirely from the Division of Academic Affairs where she would have any authority over the violations of law of which she complained.    She was designated as "Senior Grant Writer" and her salary was reduced by approximately $40,000.

42.

Again in May 2021, despite satisfactory performance during the 2020-2021 school year, Dr. Garcia was further demoted with assignment to a position designated as "Grant Writer," with a further reduction in responsibilities and a further approximate $37,000 reduction in salary.

43.

The demotions of Dr. Garcia-Wilder were in retaliation for her reports of violations of, or noncompliance with, laws, rules and regulations to Dr. Levett, her supervisor and in retaliation for her refusal to participate in, activities, policies, or practices of the SCCPSS that she reasonably believed to be a violation of or noncompliance with a law, rule, or regulation.

44.

Dr. Garcia-Wilder was forced from the workplace by, among other things, the extreme reductions in salary and the isolation from professional work for which she had built a career of expertise and accomplishment.

45.

Like any other reasonable person, Dr. Garcia-Wilder could not tolerate the substantial loss of income and workplace humiliation she experienced at the instance of Dr. Levett and the SCCPSS, and she resigned.

46.

Retaliation continued after she was forced from the job when applying for job positions approximating her professional status as Chief of Schools for SCCPSS and available with SCCPSS.

47.

Positions approximating her prior professional status became open and available after the retirement of Defendant Levett and the hiring of the new Superintendent in July 2023. Opportunities to become employed by SCCPSS in such a position prior to the time of Defendant Levett's resignation were either unavailable or would have been futile.

48.

The new SCCPSS Superintendent and her staff denied Dr. Garcia-Wilder the opportunity to even interview for the available positions for which she applied and, in late October 2024, denied her employment in those positions because she reported unlawful conduct as described herein.

49.

As a result of the retaliatory conduct of the Superintendent and supervisory personnel in violation of the Georgia Whistleblower Act as set forth above, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation, and has further suffered and will continue to suffer mental and emotional distress.

50.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were willful, wanton and intentionally directed to harm the Plaintiff.

51.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were reckless and taken in willful disregard of the probable consequences of their actions.

52.

As a direct and proximate result of Defendant SCCPSS's conduct, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

53.

Defendant SCCPSS's actions and failures to act were the proximate cause of the harm suffered by Dr. Garcia-Wilder as alleged herein.

54.

Defendant SSCPSS is responsible for the unlawful conduct of Dr. Levett and others, and Dr. Garcia-Wilder seeks from SCCPSS all financial and other damages for which recovery is provided under the Georgia Whistleblower Act, including reinstatement to her former position as Chief of Schools of SCCPSS.  O.C.G.A. § 45-1-4(e).

55.

The Georgia Whistleblower Act further authorizes Dr. Garcia-Wilder to recover her costs of litigation, including her reasonable attorney fees and, in accordance with law, she seeks recovery of those costs and fees.  O.C.G.A. § 45-1-4(f).

56.

Dr. Garcia-Wilder seeks all relief authorized by the Georgia Whistleblower Act and state law from this Court for SCCPSS's violations of those laws.

## COUNT TWO
### RETALIATION IN VIOLATION OF
### SECTION 1981

57.

Dr. Garcia-Wilder engaged in statutorily protected activity, suffered adverse employment actions, and causal connections exist between the protected activity and the adverse employment action.  Retaliation unlawful under 42 U.S.C. § 1981 (Section 1981) ensued under the supervision and at the direction of the SCCPSS Superintendents.

58.

The statutorily protected activity in which Dr. Garcia-Wilder engaged included reports to Dr. Levette that empirical evidence indicated SCCPSS was disproportionately disciplining Black male students and that the disproportionate

discipline may be causing a substantial decrease in elementary school academics because of attendance issues related to that discipline.

59.

The statutorily protected activity in which Dr. Garcia-Wilder engaged further included reports to Dr. Levette that a Black male student was suspended from school without referral to a hearing and without the student having been afforded due process.

60.

Immediate responsive comments and other retaliatory measures from Dr. Levette and her staff followed, indicating disapproval of Dr. Garcia-Wilder's report of racially disproportionate application of disciplinary procedures and racially disproportionate outcomes.

61.

As described above, retaliatory isolation from professional work and successive demotions were the direct and proximate consequence of Dr. Garcia-Wilder's reports of unlawful, racially disproportionate discipline and racially disproportionate academic outcomes.

62.

Dr. Garcia-Wilder was forced from the workplace by, among other things, the

extreme reductions in salary and the isolation from professional work for which she had built a career of expertise and accomplishment.

63.

Like any other reasonable person, Dr. Garcia-Wilder could not tolerate the substantial loss of income and workplace humiliation she experienced at the instance of Dr. Levett and the SCCPSS, and she resigned.

64.

As further described above, the retaliation continued after she was forced from the job when SCCPSS refused to interview and failed to hire her for open and available positions approximating her prior professional status for which she applied and was qualified. Persons dramatically less qualified than her received interviews and were hired.

65.

Continuing retaliation occurred following the tenure of Dr. Levette with the new SCCPSS Superintendent and staff, who, with knowledge of Dr. Garcia-Wilder's reports and opposition to unlawful racially disproportionate conduct and outcomes, denied Dr. Garcia-Wilder the opportunity to interview for the available positions for which she applied and, in late October 2024, denied her employment in those positions because she reported unlawful conduct as described herein.

66.

As a result of the retaliatory conduct of the Superintendent and supervisory personnel in violation of Section 1981 as set forth above, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation, and has further suffered and will continue to suffer mental and emotional distress.

67.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were willful, wanton and intentionally directed to harm the Plaintiff.

68.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were reckless and taken in willful disregard of the probable consequences of their actions.

69.

As a direct and proximate result of Defendant SCCPSS's conduct, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, damage to her professional reputation, and mental and emotional distress.

70.

Defendant SCCPSS's actions and failures to act are unlawful under Section

1981 and were the proximate cause of the harm suffered by Dr. Garcia-Wilder as alleged herein.

71.

Defendant SSCPSS is responsible for the unlawful conduct of Dr. Levett and others, and Dr. Garcia-Wilder seeks from SCCPSS all financial and other damages for which recovery is provided under Section 1981, including reinstatement to her former position as Chief of Schools of SCCPSS. 42 U.S.C. § 1981a (Section 1981a).

72.

Section 1981a further authorizes Dr. Garcia-Wilder to recover her costs of litigation, including her reasonable attorney fees and, in accordance with law, she seeks recovery of those costs and fees.

73.

Dr. Garcia-Wilder seeks all relief authorized by Section 1981 and Section 1981a from this Court for SCCPSS's violations of those laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following specific and general relief:

     a.    That she be reinstated to her position as Chief of Schools or an equivalent position, with all salary, benefits, and other emoluments of

employment to which she would have been entitled but for Defendant's unlawful acts.

b.    That she receive full lost wages with prejudgment interest and employee benefits, including applicable retirement benefits.

c.    That all documents relating to Plaintiff's demotion be expunged, destroyed, and never referenced again by Defendant, except as necessary to afford full and complete relief to Plaintiff;

d.    That she receive compensatory damages for mental and emotional distress in an amount to be determined in the enlightened conscience of the jury;

e.    That she receive nominal damages for the deprivation of her protected rights;

f.    That she receive attorneys' fees, costs, and expenses of litigation pursuant to O.C.G.A. § 45-1-4, 42 U.S.C. § 1981(a), and other applicable law.

g.    That she receive a trial by jury; and

h.    That she receive such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 12th day of March, 2025.

[signatures on next page]

**WOOLF LAW**

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Counsel for Plaintiff*

**WOOLF LAW**
2509 Bull Street
Savannah, Georgia 31405
T: (912) 201-3696
F: (912) 201-3699
woolf@woolflawfirm.net

**BARRETT & FARAHANY**

*/s/ Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
*Counsel for Plaintiff*

**BARRETT & FARAHANY**
3344 Peachtree Rd., NE
Suite 800
Atlanta, GA 30326
(470) 284-7265
matt@justiceatwork.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by same day electronic mail as follows:

LUCAS D. BRADLEY
ANDREW H. DEKLE
**BOUHAN FALLIGANT LLP**
Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

This 12th day of March, 2025.

WOOLF LAW

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Counsel for Plaintiff*

# EXHIBIT 1

Plaintiff's Complaint (renewal action) with Exhibits

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV24-01173

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 10/8/2024 6:10 PM
Reviewer: DH

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| SHELIA GARCIA-WILDER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. |
| | : | SPCV24-01173 |
| | : | |
| SAVANNAH-CHATHAM COUNTY | : | |
| PUBLIC SCHOOL DISTRICT, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT

COMES NOW Plaintiff Shelia Garcia-Wilder and hereby files this Complaint against the above-named Defendants pursuant to the Georgia Whistleblower Act showing this Court as follows:

## RENEWAL ACTION

1.

This is a renewal action pursuant to O.C.G.A. § 9-2-61. The prior case was pending in this Court *sub nom* Shelia Garcia-Wilder v. Savannah-Chatham County Public School District, SPCV21-00522-MO. A true and accurate copy of the filed Complaint in that action is attached as Exhibit A; a true and accurate copy of the filed Summons, Affidavit of Service, Case Filing Information Form and Rule 3.2

Certificate attached as Exhibit B; and a true and accurate copy of the Answer of Defendant filed in that action is attached as Exhibit C.

2.

Plaintiff brings this renewal action within the applicable statute of limitations and within six (6) months of voluntarily dismissing the original action without prejudice.   See copy of Dismissal Without Prejudice attached Exhibit D.

3.

Plaintiff has confirmed with the Clerk of Superior Court of Chatham County and affirms here that all costs in the prior action are paid pursuant to O.C.G.A. § 9-2-61 and O.C.G.A. § 9-11-41.

4.

This action includes substantially the same cause of action and the prior case was filed within the statute of limitations applicable to the claims therein. The prior case was not void, nor was it dismissed on the merits; and the prior case was such a valid suit as may be renewed under O.C.G.A. § 9-2-61 and O.C.G.A. § 9-11-41. Plaintiff incorporates herein by reference the record in the referenced prior case.

## JURISDICTION AND VENUE

5.

The jurisdiction of this Court is conferred pursuant to the Georgia Civil Practice Act, including O.C.G.A. §§ 9-10-30 and 9-10-91.

6.

The Defendant's principal, and only, place of business is located in Chatham County, Georgia.

7.

All claims in this action are timely filed within the statute of limitations applicable to claims under the Georgia Whistleblower Act.

## PARTIES

8.

Plaintiff Shelia Garcia-Wilder is a resident of Chatham County, Georgia who is entitled to bring actions of this type and nature.   At all times relevant to the claims asserted here, Plaintiff Garcia-Wilder was employed by Defendant, first as Chief of Schools until her demotion to Senior Grant Writer.   She is presently being demoted again to the position of Grant Writer.

9.

Dr. Garcia-Wilder holds a Doctor of Education degree, a Master of Education degree, and a Bachelor of Science degree in elementary education.   She has 30 years of experience of working in rural, urban, and small metro counties throughout Georgia at all levels, including in the roles of Georgia Department of Education (GDOE) state director, chief of schools, assistant superintendent of teaching and learning, chief academic officer, turnaround principal, director of school

improvement, assistant principal, undergraduate, graduate associate professor, and classroom teacher.

10.

Defendant Savannah-Chatham County Public School District ("SCCPSS") is a public school district organized under Georgia law and is a governmental entity providing public education services in Chatham County, Georgia. Defendant may be served by personal service on its chief executive officer, Superintendent S. Denise Watts, Ed.D., at 208 Bull Street, Savannah, Georgia 31401.

11.

Defendant SCCPSS was, at all times relevant to this action, Dr. Garcia-Wilder's employer and was and is a public employer as that term is defined by the Georgia Whistleblower Act. Dr. Garcia-Wilder was, at all times relevant to this action, a public employee as that term is defined by the Georgia Whistleblower Act.

## FACTS

12.

Plaintiff began her employment with SCCPSS at the beginning of the 2019-2020 school year, in approximately July 2019 as Chief of Schools, a position that was part of the SCCPSS Division of Academic Affairs and reported directly to then-Superintendent M. Ann Levett, Ed.D.

13.

Dr. Garcia-Wilder performed her positions of employment with SCCPSS at a satisfactory level at all times.

14.

As Chief of Schools, Dr. Garcia-Wilder's performance responsibilities were substantial, and included:

a. leading the planning and implementation process to increase student achievement,

b. overseeing school and central office departmental budgets,

c. overseeing the management and governance of schools,

d. supervising the executive directors of schools,

e. supporting principals in their work to improve student learning,

f. providing professional learning to district and building leadership, and

g. reviewing and developing practices to improve student discipline and best practices of school leadership to address students' academic, behavioral, and social-emotional learning needs.

15.

A substantial responsibility of Dr. Garcia-Wilder as Chief of Schools was the oversight of student discipline proposed by SCCPSS principals, including discipline in the form of long-term suspensions and expulsions.

16.

Prior to becoming Superintendent, Superintendent Levett was employed by the SCCPSS as its Deputy Chief Academic Officer from 2013-2017 and was responsible for student attendance and for oversight of student discipline proposed by SCCPSS principals.

17.

In an audit of the school disciplinary process in 2010, the auditor determined that there existed conditions of inconsistent handling of student discipline, and inaccurate reporting of discipline data by the Division of Academic Affairs. The 2010 Audit revealed:

> During the course of the audit, we identified concerns related to the documentation of student discipline data that we felt needed immediate action. We brought these concerns to the attention of District management in April 2010.

In April 2010, the District was notified by the Georgia Department of Education (GDOE) that "based on an analysis of this data, Chatham County School System is 'at serious risk' for having significant disproportionality for the discipline of SWD [students with disabilities]."

18.

At the time of the 2010 audit findings, David Feliciano (Dr. Garcia-Wilder's supervisor at the time of her second demotion – see below) was employed by the SCCPSS as its Chief Data and Accountability Officer, now Chief Technology

Officer, a position he still holds, and he was responsible for reporting accurate discipline and attendance data to the GDOE.

19.

Immediately after her employment began as Chief of Schools in the Division of Academic Affairs, in August and September 2019, Dr. Garcia-Wilder began receiving from school principals, through Executive Directors (the principals' direct supervisors), discipline recommendations indicating a failure to follow standards and procedures required by law.   Dr. Garcia-Wilder was responsible for approving or disapproving these recommendations.

20.

Case law has established that Constitutional due process requires that students for whom long-term suspension or expulsion is proposed must be offered a hearing (to determine whether the suspension or expulsion is appropriate) before a neutral decision-maker within approximately ten (10) days after the proposed action.   *Goss v. Lopez*, 419 U.S. 565 (1975), O.C.G.A. § 20-2-754.

21.

All qualified school-aged children with a disability have a statutory right to a free and public education (FAPE) and may not, "solely by reason of their disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under SCCPSS programs and activities.   29 U.S.C. § 504

(Rehabilitation Act), 20 U.S.C. § 1400, *et seq*., (Individuals with Disabilities Education Act of 2004 (IDEA)).

22.

According to the recommendations for discipline received in the 2019-2020 school year by Dr. Garcia-Wilder from school principals and approved by Executive Directors, SCCPSS students were being recommended for long-term suspension or expulsion, alternatively or in combination:

1. without a discipline notice to their parents,

2. without a report to the GDOE,

3. without a manifestation determination review (MDR) required by the IDEA and Section 504 of the Rehabilitation Act in circumstances of a student with a disability,

4. without determination of whether a disability was the cause of their conduct (in circumstances that suggested further review for whether a disability existed),

5. without following a disabled student's Individualized Education Program (IEP) required by the IDEA, and/or

6. without a hearing required by due process clause of the Fourteenth Amendment to the Constitution of the United States, by 20 U.S.C. § 1415(a) through (k), and by O.C.G.A. § 20-2-754.

23.

Further, certain suspended or expelled students were falsely recorded as present in the classroom – data required to be reported to federal and state governments.   Given federal statutes tying federal funding to students present in the classroom, false reporting of presence in the classroom permitted continued, uninterrupted access to that funding and complete denial of services to the children.

24.

Further, the recommended suspensions or expulsions of these students were not being recorded and reported.   State law requires accurate reporting of attendance and disciplinary incidents for the purpose of determining a school "climate" rating, a public rating used by GDOE as a diagnostic tool to determine if a school is on the right path to school improvement. See O.C.G.A. §§ 20-2-690.2, 20-14-33.

25.

In October 2019, Dr. Garcia-Wilder communicated to Superintendent Levett that she was disapproving suspension and expulsion recommendations from Executive Directors and school principals because of failures to follow the legal standards set forth above.

26.

Moreover, it was apparent from the data collected by Dr. Garcia-Wilder and her team that suspensions and expulsions were occurring in a manner disproportionately impacting Black male students and students with disabilities.

27.

Discrimination against students on the basis of their race is protected under federal law, including without limitation, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*.

28.

Before the end of October 2019, Dr. Garcia-Wilder met with Superintendent Levett and informed her that there was a substantial decrease in elementary school academics and that the decrease may be related to disproportionate discipline of disabled and Black male students and because of attendance issues (e.g., if students are not in school, they are not learning). At this time, Superintendent Levett threatened Dr. Garcia-Wilder, indicating that she could remove Dr. Garcia-Wilder from her position and place her in a position where she would "feel comfortable."

29.

In another meeting in November 2019, Superintendent Levett acknowledged to Dr. Garcia-Wilder that she (Superintendent Levett) also disapproved recommended suspensions and expulsions before she became Superintendent and

when she was responsible for such matters, but explained "I did not do it the way you were doing it by putting it in writing."

30.

In January 2020, Dr. Garcia-Wilder discovered that a Black male student was suspended from school without referral to her and without the student having been afforded due process.  Upon informing Superintendent Levett of the incident, Superintendent Levett directed Dr. Garcia-Wilder to meet with Chief of Human Resources Ramon Ray, whereupon Mr. Ray made it clear to Dr. Garcia-Wilder that she should proceed no further in "opening a can of worms" relating to the failure to report the fact of students being sent home, the failure to report student absences as suspensions and relating further to the fact of race-related and disability-related disproportional disciplinary measures.

31.

The same failures to comply with the law revealed in the 2010 Audit apparently continued under Superintendent Levett's tenure as a Deputy Chief Academic Officer from 2013-2017 and remained a recurring reality for families and students attending SCCPSS schools in the 2019-2020 school year.

32.

On May 12, 2020, Dr. Garcia-Wilder was informed by Chief Data and Accountability Officer, David Feliciano and Chief Human Resources Officer,

Ramon Ray, that her position was being eliminated in the following school year because of budget issues.

33.

On the same day, the other Chief of Schools position under Superintendent Levett's direct supervision, held by Dr. Garret Brundage, was eliminated for the same alleged reason. Dr. Brundage worked closely with Dr. Garcia-Wilder in reporting due process violations, disproportionate disciplinary action against students with disabilities and racial minority students, and other violations of law noted hereinabove.

**RETALIATION IN VIOLATION OF**
**THE GEORGIA WHISTLEBLOWER ACT**

34.

The Georgia Whistleblower Act provides the following prohibitions against retaliation against employees who complain of misconduct by public employers:

> (d)(1) No public employer shall make, adopt, or enforce any policy or practice preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.
>
> (2) No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.
>
> (3) No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or

practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

O.C.G.A. § 45-1-4(d).

35.

Between September 2019 and the date of her May 2021 demotion, Dr. Garcia-Wilder engaged in several actions which are protected under O.C.G.A. § 45-1-4(c), in that she both disclosed violations of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency and she objected to, and refused to participate in, activities, policies, or practices of SCCPSS that she had reasonable cause to believe were a violation of or noncompliance with a law, rule, or regulation.

36.

The policies and practices of SCCPSS prevented Dr. Garcia-Wilder from further disclosing violations or noncompliance with laws, rules and regulations to either a supervisor or a government agency.

37.

With its May 12, 2020 demotion of Dr. Garcia-Wilder, Defendant SCCPSS removed her entirely from the Division of Academic Affairs where she would have any authority over the violations of law of which she complained. She was

designated as "Senior Grant Writer" and her salary was reduced by approximately $40,000.

38.

Again in May 2021, despite satisfactory performance during the 2020-2021 school year, Dr. Garcia was further demoted with assignment to a position designated as "Grant Writer," with a further reduction in responsibilities and a further approximate $37,000 reduction in salary.

39.

The demotions of Dr. Garcia-Wilder were in retaliation for her reports of violations of, or noncompliance with, laws, rules and regulations to Dr. Levett, her supervisor and in retaliation for her refusal to participate in, activities, policies, or practices of the SCCPSS that she reasonably believed to be a violation of or noncompliance with a law, rule, or regulation.

40.

Dr. Garcia-Wilder was forced from the workplace by, among other things, the extreme reductions in salary and the isolation from professional work for which she had built a career of expertise and accomplishment.

41.

Like any other reasonable person, Dr. Garcia-Wilder could not tolerate the substantial loss of income and workplace humiliation she experienced at the instance

of Dr. Levett and the SCCPSS, and she resigned.

42.

Retaliation continued after she was forced from the job when applying for numerous job positions approximating her professional status as Chief of Schools for SCCPSS and available with SCCPSS. She never received an interview and persons dramatically less qualified than her received interviews and were hired.

43.

As a result of the retaliatory conduct of the Superintendent and supervisory personnel in violation of the Georgia Whistleblower Act as set forth above, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation, and has further suffered and will continue to suffer mental and emotional distress.

44.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were willful, wanton and intentionally directed to harm the Plaintiff.

45.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were reckless and taken in willful disregard of the probable consequences of their actions.

46.

As a direct and proximate result of Defendant SCCPSS's conduct, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

47.

Defendant SCCPSS's actions and failures to act were the proximate cause of the harm suffered by Dr. Garcia-Wilder as alleged herein.

48.

Defendant SSCPSS is responsible for the unlawful conduct of Dr. Levett and others, and Dr. Garcia-Wilder seeks from SCCPSS all financial and other damages for which recovery is provided under the Georgia Whistleblower Act, including reinstatement to her former position as Chief of Schools of SCCPSS. O.C.G.A. § 45-1-4(e).

49.

The Georgia Whistleblower Act further authorizes Dr. Garcia-Wilder to recover her costs of litigation, including her reasonable attorney fees and, in accordance with law, she seeks recovery of those costs and fees. O.C.G.A. § 45-1-4(f).

50.

Dr. Garcia-Wilder seeks all relief authorized by the Georgia Whistleblower Act and state law from this Court for SCCPSS's violations of those laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following specific and general relief:

a.    That he she be reinstated to her position as Chief of Schools or an equivalent position, with all salary, benefits, and other emoluments of employment to which she would have been entitled but for Defendant's unlawful acts.

b.    That she receive full lost wages with prejudgment interest and employee benefits, including applicable retirement benefits.

c.    That all documents relating to Plaintiff's demotion be expunged, destroyed, and never referenced again by Defendant, except as necessary to afford full and complete relief to Plaintiff;

d.    That she receive compensatory damages for mental and emotional distress in an amount to be determined in the enlightened conscience of the jury;

e.    That she receive nominal damages for the deprivation of her protected rights;

f.      That she receive attorneys' fees, costs, and expenses of litigation

pursuant to O.C.G.A. § 45-1-4 and other applicable law.

g.      That she receive a trial by jury; and

h.      That she receive such other and further relief as the Court deems

just and proper.

RESPECTFULLY SUBMITTED, this 8th day of October, 2024.

WOOLF LAW

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Counsel for Plaintiff*

**WOOLF LAW**
2509 Bull Street
Savannah, Georgia 31405
T: (912) 201-3696
F: (912) 201-3699
woolf@woolflawfirm.net

**BARRETT & FARAHANY**

*/s/ Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
*Counsel for Plaintiff*

**BARRETT & FARAHANY**
3344 Peachtree Rd., NE
Suite 800
Atlanta, GA 30326
(470) 284-7265
matt@justiceatwork.com

# EXHIBIT A

Complaint

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

## IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

SHELIA GARCIA-WILDER,                    :
                                         :
         Plaintiff,                      :
                                         :
vs.                                      :       CIVIL ACTION NO.
                                         :       SPCV21-00522
                                         :
SAVANNAH-CHATHAM COUNTY                  :
PUBLIC SCHOOL DISTRICT,                  :
                                         :
                                         :       **JURY TRIAL DEMANDED**
         Defendant.                      :

## COMPLAINT

COMES NOW Plaintiff Shelia Garcia-Wilder and hereby files this Complaint

against the above-named Defendants on the following grounds:

### NATURE AND PURPOSE

1.

This is a lawsuit brought against Defendant Savannah-Chatham County

Public School District ("SCCPSS") because of the conduct of its Superintendent M.

Ann Levett, Ed.D. and other employees of the SCCPSS for retaliation against

Plaintiff Shelia Garcia-Wilder in violation of the Georgia Whistleblower Act,

O.C.G.A. § 45-1-4.

## JURISDICTION AND VENUE

2.

The jurisdiction of this Court is conferred pursuant to the Georgia Civil Practice Act, including O.C.G.A. § 9-10-30 and 9-10-91.

3.

The Defendant's principal, and only, place of business is located in Chatham County, Georgia.

4.

This action is timely filed within the statute of limitations applicable to claims under the Georgia Whistleblower Act.

## PARTIES

5.

Plaintiff Shelia Garcia-Wilder is a resident of Chatham County, Georgia who is entitled to bring actions of this type and nature.   At all times relevant to the claims asserted here, Plaintiff Garcia-Wilder was employed by Defendant, first as Chief of Schools until her demotion to Senior Grant Writer.   She is presently being demoted again to the position of Grant Writer.

6.

Dr. Garcia-Wilder holds a Doctor of Education degree, a Master of Education degree, and a Bachelor of Science degree in elementary education.   She has 30 years

of experience of working in rural, urban, and small metro counties throughout Georgia at all levels, including Georgia Department of Education state director, chief of schools, assistant superintendent of teaching and learning, chief academic officer, turnaround principal, director of school improvement, assistant principal, undergraduate, graduate associate professor, and classroom teacher.

7.

Defendant Savannah-Chatham County Public School District ("SCCPSS") is a public school district organized under Georgia law and is a governmental entity providing public education services in Chatham County, Georgia.   Defendant may be served by personal service on its chief executive officer, Superintendent M. Ann Levett, Ed.D., at 208 Bull Street, Savannah, Georgia 31401.

8.

Defendant SCCPSS was, at all times relevant to this action, Dr. Garcia-Wilder's employer and was and is a public employer as that term is defined by the Georgia Whistleblower Act.   Dr. Garcia-Wilder was, at all times relevant to this action, a public employee as that term is defined by the Georgia Whistleblower Act.

## FACTS

9.

Plaintiff began her employment with SCCPSS at the beginning of the 2019-2020 school year, in approximately July 2019 as Chief of Schools, a position that

was part of the SCCPSS Division of Academic Affairs and reported directly to the Superintendent.

10.

Dr. Garcia-Wilder performed her positions of employment with SCCPSS at a satisfactory level at all times.

11.

As Chief of Schools, Dr. Garcia-Wilder's performance responsibilities were substantial, and included:

a. leading the planning and implementation process to increase student achievement,

b. overseeing school and central office departmental budgets,

c. overseeing the management and governance of schools,

d. supervising the executive directors of schools,

e. supporting principals in their work to improve student learning,

f. providing professional learning to district and building leadership, and

g. reviewing and developing practices to improve student discipline and best practices of school leadership to address students' academic, behavioral, and social-emotional learning needs.

12.

A substantial responsibility of Dr. Garcia-Wilder as Chief of Schools was the oversight of student discipline proposed by SCCPSS principals, including discipline in the form of suspensions and expulsions.

13.

Prior to becoming Superintendent, Superintendent Levett was employed by the SCCPSS as its Deputy Chief Academic Officer from 2013-2017 and was responsible for student attendance and for oversight of student discipline proposed by SCCPSS principals.

14.

In an audit of the school disciplinary process in 2010, the auditor determined that there existed conditions of inconsistent handling of student discipline, and inaccurate reporting of discipline data by the Division of Academic Affairs. The 2010 Audit revealed:

> During the course of the audit, we identified concerns related to the documentation of student discipline data that we felt needed immediate action. We brought these concerns to the attention of District management in April 2010.

In April 2010, the District was notified by the Georgia Department of Education (GDOE) that "based on an analysis of this data, Chatham County School System is 'at serious risk' for having significant disproportionality for the discipline of SWD [students with disabilities]."

15.

At the time of the 2010 audit findings, David Feliciano (Dr. Garcia-Wilder's supervisor at the time of her second demotion – see below) was employed by the SCCPSS as its Chief Data and Accountability Officer, a position he still holds, and he was responsible for reporting accurate discipline and attendance data to the GDOE.

16.

Immediately after her employment as Chief of Schools in the Division of Academic Affairs, in August and September 2019, Dr. Garcia-Wilder began receiving from school principals discipline recommendations indicating a failure to follow procedures required by law.    Dr. Garcia-Wilder was responsible for approving or disapproving these recommendations.

18.

Case law has developed a determination that Constitutional due process requires that students for whom long-term suspension or expulsion is proposed must be offered a hearing before a neutral decision-maker within approximately ten (10) days after the proposed action.  *Goss v. Lopez*, 419 U.S. 565 (1975), O.C.G.A. § 20-2-754.

19.

All qualified school-aged children with a disability have a statutory right to a free and public education (FAPE) and may not, "solely by reason of their disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under SCCPSS programs and activities.    29 U.S.C. § 504 (Rehabilitation Act), 20 U.S.C. § 1400, *et seq*., (Individuals with Disabilities Education Act of 2004 (IDEA)).

20.

According to the recommendations received in the 2019-2020 school year by Dr. Garcia-Wilder from school principals and approved by Executive Directors (the principals' supervisors), SCCPSS students were being recommended for long-term suspension or expulsion, alternatively or in combination:

1.  without a discipline notice to their parents,

2.  without a report to the GDOE,

3.  without a manifestation determination review (MDR) required by the IDEA and Section 504 of the Rehabilitation Act in circumstances of a student with a disability,

4.  without determination of whether a disability was the cause of their conduct (in circumstances that suggested further review for whether a disability existed),

5. without following a disabled student's Individualized Education Program (IEP) required by the IDEA, and/or

6. without a hearing required by due process clause of the Fourteenth Amendment to the Constitution of the United States and by O.C.G.A. § 20-2-754.

21.

Further, certain suspended or expelled students were falsely recorded as present in the classroom – data required to be reported to federal and state governments. Given federal statutes tying federal funding to students present in the classroom, false reporting of presence in the classroom allows continued, uninterrupted access to that funding.

22.

Further, the recommended suspensions or expulsions of these students were not being recorded and reported. State law requires accurate reporting of attendance and disciplinary incidents for the purpose of determining a school "climate" rating, a public rating used by GDOE as a diagnostic tool to determine if a school is on the right path to school improvement. See O.C.G.A. §§ 20-2-690.2, 20-14-33.

23.

In October 2019, Dr. Garcia-Wilder communicated to Superintendent Levett

that she was disapproving suspension and expulsion recommendations from school

principals because of failures to follow the legal standards set forth above.

24.

Moreover, it was apparent from the data collected by Dr. Garcia-Wilder and

her team that suspensions and expulsions were occurring in a manner

disproportionately impacting Black male students and students with disabilities.

25.

Discrimination against students on the basis of their race is protected under

federal law, including without limitation, Title IV and Title VI of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, *et seq*.

26.

Before the end of October 2019, Dr. Garcia-Wilder met with Superintendent

Levett and informed her that there was a substantial decrease in elementary school

academics and that the decrease may be related to disproportionate discipline of

disabled and Black male students and because of attendance issues (e.g., if students

are not in school, they are not learning).   At this time, Superintendent Levett

threatened Dr. Garcia-Wilder, indicating that she could remove Dr. Garcia-Wilder

from her position and place her in a position where she would "feel comfortable."

27.

In another meeting in November 2019, Superintendent Levett acknowledged to Dr. Garcia-Wilder that she (Superintendent Levett) also disapproved some recommended suspensions and expulsions before she became Superintendent and when she was responsible for such matters, but stated "I did not do it the way you were doing it by putting it in writing."

28.

In January 2020, Dr. Garcia-Wilder discovered that a Black male student was suspended from school without referral to her and without the student having been afforded due process. Upon informing Superintendent Levett of the incident, Superintendent Levett directed Dr. Garcia-Wilder to meet with Chief of Human Resources Ramon Ray, whereupon Mr. Ray made it clear to Dr. Garcia-Wilder that she should proceed no further in "opening a can of worms" relating to the failure of administrators to report the fact of students being sent home, the failure of administrators to report them as suspensions and the fact of race-related and disability-related disproportional disciplinary measures.

29.

The same failures to comply with the law revealed in the 2010 Audit apparently continued under Superintendent Levett's tenure as a Deputy Chief

Academic Officer from 2013-2017 and remained a recurring reality for families and students attending SCCPSS schools in the 2019-2020 school year.

30.

On May 12, 2020, Dr. Garcia-Wilder was informed by Chief Data and Accountability Officer, David Feliciano and Chief Human Resources Officer, Ramon Ray, that her position was being eliminated because of budget issues.

31.

On the same day, the other Chief of Schools position under Superintendent Levett's direct supervision, held by Dr. Garret Brundage, was eliminated for the same alleged reason. Dr. Brundage worked closely with Dr. Garcia-Wilder in reporting due process violations, disproportionate disciplinary action against students with disabilities and racial minority students, and other violations of law noted hereinabove.

### RETALIATION IN VIOLATION OF
### THE GEORGIA WHISTLEBLOWER ACT

32.

The Georgia Whistleblower Act provides the following prohibitions against retaliation against employees who complain of misconduct by public employers:

> (d)(1) No public employer shall make, adopt, or enforce any policy or practice preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

(2) No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

(3) No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

O.C.G.A. § 45-1-4(d).

33.

Between September 2019 and the date of her May 2021 demotion, Dr. Garcia-Wilder engaged in several actions which are protected under O.C.G.A. § 45-1-4(c), in that she both disclosed violations of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency and she objected to, and refused to participate in, activities, policies, or practices of the Defendants that she had reasonable cause to believe are a violation of or noncompliance with a law, rule, or regulation.

34.

The policies and practices of SCCPSS prevented Dr. Garcia-Wilder from further disclosing violations or noncompliance with laws, rules and regulations to either a supervisor or a government agency.

35.

With its May 12, 2020 demotion of Dr. Garcia-Wilder, Defendant SCCPSS removed her entirely from the Division of Academic Affairs where she would have any authority over the violations of law of which she complained. She was designated as "Senior Grant Writer" and her salary was reduced by approximately $40,000.

36.

Now again in May 2021, despite satisfactory performance during the 2020-2021 school year, Dr. Garcia is being further demoted with assignment to a position designated as "Grant Writer," with a further reduction in responsibilities and a further approximate $37,000 reduction in salary.

37.

As a result of the retaliatory conduct of the Superintendent and supervisory personnel in violation of the Georgia Whistleblower act as set forth above, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

38.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were willful, wanton and intentionally directed to harm the Plaintiff.

39.

Defendant SCCPSS's actions with respect to Dr. Garcia-Wilder were reckless and taken in willful disregard of the probable consequences of their actions.

40.

As a direct and proximate result of Defendant SCCPSS's conduct, Dr. Garcia-Wilder has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

41.

Defendant SCCPSS's actions and failures to act were the proximate cause of the harm suffered by Dr. Garcia-Wilder as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following specific and general relief:

a.    That he she be reinstated to her position as Chief of Schools or an equivalent position, with all salary, benefits, and other emoluments of employment to which she would have been entitled but for Defendant's unlawful acts.

b.    That she receive full lost wages with prejudgment interest and employee benefits, including applicable retirement benefits.

c.    That all documents relating to Plaintiff's demotion be expunged, destroyed, and never referenced again by Defendant, except as necessary to afford full and complete relief to Plaintiff;

d.    That she receive compensatory damages for mental and emotional distress in an amount to be determined in the enlightened conscience of the jury;

e.    That she receive nominal damages for the deprivation of her protected rights;

f.    That she receive attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 45-1-4 and other applicable law.

g.    That she receive a trial by jury;

h.    And that she receives such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 12th day of May, 2021.

WOOLF LAW

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Attorney for Plaintiff*

WOOLF LAW
408 East Bay Street
Savannah, Georgia 31401
T: (912) 201-3696
F: (912) 236-1884
woolf@woolflawfirm.net

# EXHIBIT B

Summons, Affidavit of Service, Case Filing Information Form, and Rule 3.2 Certificate

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

SHELIA GARCIA-WILDER,                    :
                                         :
        Plaintiff,                       :
                                         :
vs.                                      :        CIVIL ACTION NO.
                                         :
                                         :        **SPCV21-00522**
SAVANNAH-CHATHAM COUNTY                  :
PUBLIC SCHOOL DISTRICT,                  :
                                         :
        Defendant.                       :
                                         :

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

**Savannah-Chatham County Public School District**
**c/o M. Ann Levett, Ed.D., Superintendent of Schools**
**208 Bull Street**
**Savannah, Georgia 31401**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

**WOOLF LAW FIRM**
**408 East Bay Street**
**Savannah, Georgia 31401**

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This _____ **12th** _____ day of _____ **May** _____, 2021

                              TAMMIE MOSLEY
                              Clerk of Superior Court
                              CHATHAM COUNTY

                              By _____
                              ~~Deputy~~ Clerk

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

Instructions: Attach

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev 04

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

SHELIA GARCIA-WILDER,                    :
                                         :
              Plaintiff,                 :
                                         :
vs.                                      :        CIVIL ACTION NO.
                                         :
                                         :        **SPCV21-00522**
SAVANNAH-CHATHAM COUNTY                  :
PUBLIC SCHOOL DISTRICT,                  :
                                         :
              Defendant.                 :
                                         :

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

**Savannah-Chatham County Public School District**
**c/o M. Ann Levett, Ed.D., Superintendent of Schools**
**208 Bull Street**
**Savannah, Georgia 31401**

Filed in the Clerk's Office this 12th day of May, 2021.

Clerk, ~~Dep. Clerk~~, S.C.C.C. GA

S. WESLEY WOOLF
PLAINTIFF'S ATTORNEYS

================================

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/14/2021 4:47 PM
Reviewer: MS

# Affidavit of Process Server

## THE SUPERIOR COURT OF CHATHAM COUNTY, STATE OF GEORGIA

(NAME OF COURT)

| Shelia Garcia-Wilder | vs | Savannah-Chatham County Public School District | SPCV21-00522 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I __Michael A. Palmer_____, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

**Service:** I served __Savannah-Chatham County Public School District_____

NAME OF PERSON / ENTITY BEING SERVED

with (list documents) __Summons; Complaint; Case Filing Info; 3.2 Certification and Standing Order Notice__

by leaving with Savannah-Chatham County Public School District, c/o Dr. M. Ann Levett, Ed.D.    __Superintendent of Schools__    At

NAME                                     RELATIONSHIP

☐ Residence_____    Savannah, Georgia

ADDRESS                                  CITY / STATE

☑ Business Savannah-Chatham County Public School District, 208 Bull Street    Savannah, Georgia

ADDRESS                                  CITY / STATE

On __May 13, 2021_____ AT __4:13 PM_____

DATE                                     TIME

☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

Thereafter copies of the documents were mailed by prepaid, first class mail on_____

DATE

from_____

CITY          STATE          ZIP

**Manner of Service:**

☑ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.

☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ **Unknown at Address**    ☐ **Moved, Left no Forwarding**    ☐ **Service Cancelled by Litigant** ☐ **Unable to Serve in Timely Fashion**
☐ **Address Does Not Exist** ☐ **Other**_____

**Service Attempts:** Service was attempted on: (1)_____ (2)_____

DATE          TIME                    DATE          TIME

(3)_____ (4)_____ (5)_____

DATE    TIME          DATE    TIME          DATE    TIME

**Description:**. Age 65    Sex Female Race Black Height 5' 9"    Weight 200 lbs Hair Blk    Beard No    Glasses Yes

SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this __14th__ day of __May__, 20 __21__,
Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of __Georgia__

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 5/12/2021 5:52 PM
Reviewer: LS

### General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☐ State Court of <u>Chatham</u> County

**For Clerk Use Only**

Date Filed __5/13/2021__
MM-DD-YYYY

Case Number ___SPCV21-00522___

**Plaintiff(s)**

__GARCIA-WILDER , SHELIA__

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

__SAVANNAH-CHATHAM COUNTY PUBLIC SCHOOL DISTRICT__

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

Plaintiff's Attorney __S. Wesley Woolf__    State Bar Number __776175__  Self-Represented ☐

Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**

Automobile Tort
Civil Appeal
Contempt/Modification/Other
Post-Judgment
Contract
Garnishment
General Tort
Habeas Corpus
Injunction/Mandamus/Other Writ
Landlord/Tenant
Medical Malpractice Tort
Product Liability Tort
Real Property
Restraining Petition
X <u>Other General Civil</u>

**Domestic Relations Cases**

☐ Adoption
☐ Contempt
  ☐ Non-payment of child support, medical support, or alimony
☐ Dissolution/Divorce/Separate Maintenance/Alimony
☐ Family Violence Petition
☐ Modification
  ☐ Custody/Parenting Time/Visitation
☐ Paternity/Legitimation
☐ Support – IV-D
☐ Support – Private (non-IV-D)
☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
Case Number                 Case Number

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

## RULE 3.2 CERTIFICATION AND STANDING ORDER NOTICE

**Pursuant to rules 3.2 and 3.4 of the Uniform Superior Court Rules, I hereby certify that:**
(CHECK ONE)

[X ] no case has heretofore been filed in the Superior Court of the Eastern Judicial Circuit involving substantially the same parties or substantially the same subject matter or substantially the same factual issues which would require the petition-pleading to be specifically assigned to the judge whom the original action was or is assigned.

OR

[ ] this petition-pleading involves substantially the same parties or substantially the same subject matter or substantially the same factual issues as in case #_____.

_____(Plaintiff) vs._____(Defendant)

This 12th day of May, 2021.

___/s/ S. Wesley Woolf_____ Attorney/Plaintiff

## Notice of Eastern Judicial Circuit Standing Orders

**YOU MUST SERVE THIS NOTICE UPON THE OPPOSING PARTY** together with the initial filing of suit, counterclaim, crossclaim or interpleader. The Superior Court has adopted the following STANDING ORDERS which may apply to you and which may affect your ability to obtain a hearing:

1. **MANDATORY MEDIATION ORDER**, effective January 3, 2011: This order requires parties to mediate their case prior to the pretrial conference or trial. Certain limited cases are exempt from the mediation requirement. Please secure a copy of the mediation order and determine if it applies to your case.
2. **ORDER ON PRODUCTION OF DOCUMENTS**, effective March 15, 2002 and reinstated January 3, 2011: This order applies to all domestic cases in which temporary or permanent financial relief is sought. The order requires the parties in such cases to exchange certain documents listed in the order within a specified time frame. A copy of the production of documents order must be served upon the defendant together with the complaint and summons.
3. **TRANSITIONAL PARENTING SEMINAR ORDER**, effective March 10.2010 and reinstated January 3, 2011: This order requires the parties in certain domestic cases involving the interest of children under 18 years of age to complete the "Transitional Parenting Seminar". Please secure a copy of the mediation order and determine if it applies to your case.

**COPIES OF THE STANDING ORDERS ARE AVAILABLE AT THE OFFICE OF THE CLERK OF SUPERIOR COURT OR AT:**

http://www.chathamcounty.org/department_freeform_T7_R132.html

FORM 3.2 REVISED JAN 2011

# EXHIBIT C

Answer of Defendant

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

SPCV21-00522-CO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 6/11/2021 10:39 AM
Reviewer: MS

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| SHELIA GARCIA-WILDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. SPCV21-00522 |
| | ) | |
| SAVANNAH-CHATHAM COUNTY | ) | |
| PUBLIC SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ANSWER OF DEFENDANT

COMES NOW Defendant Savannah-Chatham County Public School District (hereafter "Defendant" or "SCCPSS"), and responds to the Complaint as follows:

### FIRST DEFENSE

All of Plaintiff's claims are barred by the applicable statute of limitations.

### SECOND DEFENSE

Plaintiff accepted voluntarily each position offered her by the District, and this action is barred.

### THIRD DEFENSE

To the extent Plaintiff's Complaint seeks claims in tort, the same are barred by the sovereign immunity of the School District. All tort claims are barred by such immunity. Any other claims for which the General Assembly has not specifically waived sovereign immunity are barred by that doctrine.

## FOURTH DEFENSE

Some or all of Plaintiff's purported equitable claims may be barred by the doctrine of laches.

## FIFTH DEFENSE

Answering the numbered paragraphs of the Complaint, Defendant shows as follows:

## NATURE AND PURPOSE

1.    This Defendant admits only that this is a lawsuit, but denies that it has violated any provision of Georgia law by retaliation or otherwise.  All other allegations of paragraph 1 of Plaintiff's Complaint are denied.

## JURISDICTION AND VENUE

2.    Defendant admits that this Court has jurisdiction over the claims as stated, but Defendant denies that there is any basis for this claim.

3.    The allegations contained in paragraph 3 of Plaintiff's Complaint are admitted.

4.    The allegations contained in paragraph 4 of Plaintiff's Complaint are denied.

## PARTIES

5.    Answering the allegations of paragraph 5, this Defendant admits only that Plaintiff has been employed by the Defendant at various points in time since 2010, including during a period from 2015 to 2017 and again from 2019 to the present. All remaining allegations are denied.

6.    The Defendant admits only that Dr. Garcia-Wilder holds the degrees listed and that she has served in a number of positions for the Defendant and other educational institutions throughout Georgia.    The Defendant lacks personal knowledge of all of Dr. Garcia-Wilder's professional experiences, therefore, it cannot admit or deny all the specific professional experiences alleged in this paragraph. Therefore, the remaining allegations in paragraph 6 of Plaintiff's Complaint are denied.

7.    The allegations contained in paragraph 7 of Plaintiff's Complaint are admitted.

8.    Answering the allegations of paragraph 8, this Defendant admits that it is an employer as that term is defined in the Whistleblower Act and that Dr. Garcia-Wilder was a public employee.    This Defendant denies she has any claims as a public employee as that term is defined in the Whistleblower Act because she fails to meet the requirements of that statute.    All other allegations are denied.

## FACTS

9.    The allegations contained in paragraph 9 of Plaintiff's Complaint are admitted.    By way of further answer, Plaintiff worked for Defendant at various points in time prior to returning in 2019, voluntarily leaving the Defendant's employ in 2006, returning in 2015, and leaving again in 2017.

10.    The allegations contained in paragraph 10 of Plaintiff's Complaint are denied.

11.    As stated, the allegations contained in paragraph 11 are denied.  By way of further answer, as Chief of Schools, Plaintiff had a number of leadership and supervisory responsibilities for the District.

12.    As stated, the allegations contained in paragraph 12 are denied.  By way of further answer, as Chief of Schools, Plaintiff was one of several District staff members involved in reviewing and approving student discipline recommendations.

13.    The allegations contained in paragraph 13 of Plaintiff's Complaint are admitted.  By way of further answer, Dr. Levett had other job duties as Deputy Superintendent and Chief Academic Officer.

14.    Answering the allegations of paragraph 14, this Defendant admits that there was an audit in 2010.  The provisions of the audit speak for themselves.  The remaining allegations of paragraph 14 are denied.

15.    The allegations contained in paragraph 15 of Plaintiff's Complaint are denied.

16.    The allegations contained in paragraph 16 of Plaintiff's Complaint are denied.

17.    There was no numbered Paragraph 17 in the Complaint.

18.    Answering the allegations of paragraph 18, this Defendant avers that *Goss v. Lopez* speaks for itself, and in the context of this litigation is irrelevant.  The remaining allegations of paragraph 18 are denied.

19.    The allegations contained in paragraph 19 of Plaintiff's Complaint are admitted.

20.    The allegations contained in paragraph 20 of Plaintiff's Complaint are denied.

21.    The allegations contained in paragraph 21 of Plaintiff's Complaint are denied.

22.    The allegations contained in paragraph 22 of Plaintiff's Complaint are denied.

23.    The allegations contained in paragraph 23 of Plaintiff's Complaint are denied.

24.    The allegations contained in paragraph 24 of Plaintiff's Complaint are denied.

25.    The allegations contained in paragraph 25 of Plaintiff's Complaint are admitted.

26.    The allegations contained in paragraph 26 of Plaintiff's Complaint are denied.

27.    The allegations contained in paragraph 27 of Plaintiff's Complaint are denied.

28.    The allegations contained in paragraph 28 of Plaintiff's Complaint are denied.

29.    The allegations contained in paragraph 29 of Plaintiff's Complaint are denied.

30.    The allegations contained in paragraph 30 of Plaintiff's Complaint are denied.

31.     The allegations contained in paragraph 31 of Plaintiff's Complaint are denied.

## RETALIATION IN VIOLATION OF
## THE GEORGIA WHISTLEBLOWER ACT

32.     Answering the allegations of paragraph 32, the provisions of the statute speak for themselves and no answer is required by this Defendant.

33.     The allegations contained in paragraph 33 of Plaintiff's Complaint are denied.

34.     The allegations contained in paragraph 34 of Plaintiff's Complaint are denied.

35.     Answering the allegations of paragraph 35, this Defendant avers that Plaintiff accepted the position of Senior Grant Writer and that her salary was reduced.  The remaining allegations of paragraph 35 are denied.

36.     The allegations contained in paragraph 36 of Plaintiff's Complaint are denied.

37.     The allegations contained in paragraph 37 of Plaintiff's Complaint are denied.

38.     The allegations contained in paragraph 38 of Plaintiff's Complaint are denied.

39.     The allegations contained in paragraph 39 of Plaintiff's Complaint are denied.

40.     The allegations contained in paragraph 40 of Plaintiff's Complaint are denied.

41.    The allegations contained in paragraph 41 of Plaintiff's Complaint are denied.

Any allegation not expressly admitted is denied.

## PRAYER FOR RELIEF

This Defendant prays that it be afforded the following relief:

a)    That it have a trial by jury;

b)    That all claims against it be dismissed with prejudice; and

c)    That all costs and attorneys' fees be assessed against Plaintiff.

This 11ᵗʰ day of June, 2021.

BOUHAN FALLIGANT LLP

/s/ Andrew H. Dekle
LEAMON R. HOLLIDAY, III
Georgia State Bar No. 362500
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant*
*Savannah-Chatham County*
*Public School District*

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Fax: (912) 233-0811
lrholliday@bouhan.com
ahdekle@bouhan.com

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV21-00522

Page 7 of 8

CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by United States Mail with proper postage affixed as follows:

S. Wesley Woolf, Esq.
**Woolf Law**
408 East Bay Street
Savannah, Georgia  31401

This 11th day of June, 2021.

BOUHAN FALLIGANT LLP

/s/ Andrew H. Dekle
LEAMON R. HOLLIDAY, III
Georgia State Bar No. 362500
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant*
*Savannah-Chatham County*
*Public School District*

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
lrholliday@bouhan.com
ahdekle@bouhan.com

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV21-00522

# EXHIBIT D

Dismissal Without Prejudice

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District

SPCV21-00522-MO

SPCV21-00522-MO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 4/26/2024 11:11 AM
Reviewer: DH

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

SHEILIA GARCIA-WILDER,

PLAINTIFF,

V.

SAVANNAH-CHATHAM COUNTY
PUBLIC SCHOOL DISTRICT,

DEFENDANT.

CIVIL ACTION NO. SPCV21- 00522

---

## DISMISSAL WITHOUT PREJUDICE

COMES NOW PLAINTIFF, SHELIA GARCIA-WILDER, by and through her attorney of record, and hereby dismisses WITHOUT PREJUDICE all claims against Defendant SAVANNAH-CHATHAM COUNTY PUBLIC SCHOOL DISTRICT, pursuant to O.C.G.A. § 9-11-41, specifically reserving her right to recommence the same within six (6) months hereof pursuant to O.C.G.A. § 9-2-61.

RESPECTFULLY SUBMITTED this 26th day of April, 2024.

WOOLF LAW

/s/ S. Wesley Woolf
S. WESLEY WOOLF
Georgia State Bar No. 776175
Attorney for Plaintiff

WOOLF LAW
2905 Bull Street
Savannah, Georgia 31405
Telephone: (912) 201-3696
Facsimile: (912) 236-1884
woolf@woolflawfirm.net

1

## CERTIFICATE OF SERVICE

This will certify that the undersigned today served counsel for all parties in the foregoing

matter with a copy of **DISMISSAL WITHOUT PREJUDICE** via electronic service to their

attorneys of record as follows:

Andrew H. Dekle
Lucas D. Bradley
BOUHAN FALLIGANT LLP
Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Fax: (912) 233-0811
ahdekle@bouhan.com
ldbradley@bouhan.com

RESPECTFULLY SUBMITTED this 26th day of April, 2024.

WOOLF LAW

*/s/ S. Wesley Woolf*
S. WESLEY WOOLF
Georgia State Bar No. 776175
*Attorney for Plaintiff*

WOOLF LAW
2905 Bull Street
Savannah, Georgia 31405
Telephone: (912) 201-3696
Facsimile: (912) 236-1884
woolf@woolflawfirm.net

2

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 3/17/2025 4:01 PM
Reviewer: KW

**IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| SHELIA GARCIA-WILDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SAVANNAH-CHATHAM COUNTY | ) |
| PUBLIC SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. SPCV24-011173

---

**REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS RENEWAL SUIT**

---

COMES NOW Defendant Savannah-Chatham County Public School System (hereinafter the "School District") and hereby files its <u>Reply Brief in Support of Motion to Dismiss Renewal Suit</u>.

## I. INTRODUCTION

On October 8, 2024, Plaintiff Garcia-Wilder filed the above-captioned case, seeking to renew her prior May 12, 2021 Georgia Whistleblower Act case, Superior Court of Chatham County Case No. SPCV21-00522 (the "Original Action").

On December 10, 2024, the School District moved to dismiss this case as an invalid attempt to renew the Original Action pursuant to O.C.G.A. § 9-2-61 because the last date of alleged whistleblower retaliation could not have occurred later than May 31, 2021, *see* (Complaint, Renewal Action ¶36), and would now be barred by the

three-year statute of repose set forth in the Georgia Whistleblower Act, O.C.G.A. §
45-1-4(e)(1).

In her February 10, 2025 Response in Opposition to Defendant's Motion to Dis-
miss,[1] Plaintiff does not appear to contest the well-accepted proposition that "The re-
newal provisions of O.C.G.A. § 9-2-61(a) may not be used to avoid the bar of a statute
of repose." § 30:16. Dismissal or discontinuance; renewal, GA. PRACTICE & PROCE-
DURE § 30:16 (2024-2025 ed.) (emphasis added) (citing *Siler v. Block*, 204 Ga. App.
672, 673, 420 S.E.2d 306, 308 (1992), aff'd, 263 Ga. 257, 429 S.E.2d 523 (1993); *see
also Wright v. Robinson*, 262 Ga. 844, 845, 426 S.E.2d 870, 871 (1993). *See generally*
(Plaintiff's Response).   Rather, Plaintiff focuses her Response on the idea that
O.C.G.A. § 45-1-4(e)(1) does not contain a three-year statute of repose, but merely a
"statute of limitation with a discovery rule provision." *See* (Plaintiff's Response, pp.
1, 9-13).  In support of her position, Plaintiff argues that "Georgia's legislature knows
the terminology it considers necessary for designating a limitation period as a "stat-
ute of repose," apparently suggesting that the Georgia legislature could have ex-
pressly labeled O.C.G.A. § 45-1-4(e)(1) to be a "statute of repose" had it intended for
the statute to operate as one.  *See* (Defendant's Response pp. 12-13).

However, O.C.G.A. § 45-1-4(e)(1) uses no label of any kind, neither "statute-of-
limitations" nor "statute-of-repose."  As cases like *Trax-Fax, Inc. v. Hobba* illustrate
a statute's absence of an express label as a "statute of repose" is not dispositive of

---

[1] The School District stipulated that Plaintiff could have until February 10, 2025, to
respond to the Motion.

whether the statute operates as a statute of repose. 277 Ga. App. 464, 468, 627 S.E.2d 90, 95 (2006) (interpreting O.C.G.A. § 34-9-245 as a statute of repose even though it is not expressly labeled as such).

What matters is how the statute is worded and whether it provides a time period after which an injury occurs at which it is no longer actionable, irrespective of its discovery. *See Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 467, 627 S.E.2d 90, 94 (2006) ("A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable.").

O.C.G.A. § 45-1-4(e)(1) passes that test. It has two separate parts, one tied to discovery and one that is not:

> (e)(1) A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier."

O.C.G.A.. § 45-1-4(e)(1). The one-year provision of O.C.G.A. § 45-1-4(e)(1) is tied to discovery, and it serves as statute of limitations.[2] The three-year provision provides a time period, triggered by the alleged underlying act itself, after which the retaliation is not actionable under any circumstances. The "whichever is earlier" language only emphasizes this distinction. If the alleged retaliation occurred more than three

---

[2] As explained in Defendants' Motion, pp. 9-10, the Georgia Court of Appeals has recognized that the one-year period referenced in O.C.G.A. § 45-1-4(e)(1) is a statute of limitations. *Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 353–54, 756 S.E.2d 585, 588 (2014). The *Tuttle* Court did not expressly address the separate three-year provision of O.C.G.A. § 45-1-4(e)(1), suggesting that it was something different than a statute of limitations. It is a statute of repose.

3

years prior to the date when the employee attempted to "institute a civil action for relief" under O.C.G.A. § 45-1-4(e)(2), then the lawsuit cannot be brought, even if the retaliation was only discovered less than one year prior to attempting to file the lawsuit. This language makes the three-year section of O.C.G.A. § 45-1-4(e)(1) a statute of repose, similar to the statute of repose created by O.C.G.A. § 34-9-245 and acknowledged by the Georgia Court of Appeals in *Trax-Fax, Inc. v. Hobba.*

In her Response, pp. 13-14, Plaintiff also suggests that the allegations in Paragraph 42 of her Renewal Action, that were not present in her original complaint in the Original Action, constitute a "new cause of action" that survives Defendant's Motion to Dismiss. *See* (Defendant's Response, pp. 13-14). On March 12, 2025, Plaintiff, perhaps recognizing that her original case cannot be renewed, has sought to amend her Complaint to add a specific allegation of a new claimed act of retaliation in October 2024 and a wholly new cause of action, a federal 42 U.S.C. § 1981 claim.[3] Attempts to assert wholly new claims of this nature to save an invalid renewal suit are improper and further render an attempted renewal suit invalid because they show the attempted renewal suit is not limited to the same cause of action as the original action sought to be renewed. *See, e.g. Allstate Ins. Co. v. Baldwin*, 244 Ga. App. 664, 665-666 (1)-(2), 536 S.E.2d 558 (2000) (renewal complaint that attempted to add a new party was an invalid attempt to renew under O.C.G.A. § 9-2-61) *See cf. Coen v. Aptean, Inc.* ("*Coen III*"), *356 Ga. App. 468, 471, 847 S.E.2d 835, 839 (2020)* ("The

---

[3] Defendants reserve the right to separately respond to Plaintiff's Amended Complaint.

4

relevant inquiry is whether the causes of action asserted in the original and renewal suits were substantially the same. […]")

If Plaintiff thinks that she may have a new claim that arose after her original lawsuit that can still be timely asserted, she may be able to try to file a new lawsuit raising that claim, but she cannot try to salvage her now-time barred past claims arising out of acts that occurred no later than May 31, 2021, through her invalid, attempted renewal suit filed on October 8, 2024. Accordingly, this Renewal Action should be dismissed with prejudice as to any claim attempted in the Original Action and without prejudice as to any new, independent claim that Plaintiff may think she has.

## II. ARGUMENT AND CITATION OF AUTHORITY.

### A. O.C.G.A. § 45-1-4(e)(1) need not call itself a "statute of repose" for the Court to recognize that it is one.

In her Response p. 12, Plaintiff cites *Robinson v. Boyd* for the proposition that "Where the General Assembly wishes to put a firm deadline on filing lawsuits, it knows how to enact a statute of repose instead of a statute of limitation." *Robinson v. Boyd,* 288 Ga. 53, 57, 701 S.E.2d 165, 169 (2010).[4] Plaintiff's suggestion seems to be that if the General Assembly wanted O.C.G.A. § 45-1-4(e)(1) to serve as a statute-of-repose, it could have expressly used the word "repose" in the statute. *See* (Plaintiff's Response, p. 12). While it may be true that some statutes, like the medical

---

[4] It should be noted that *Robinson* was not interpreting whether the language of a specific statute, itself, was a statute of repose but whether a renewal action brought pursuant to O.C.G.A. § 9-2-61 should be barred by laches because of the Plaintiff's delay in seeking to serve the original lawsuit. *See Robinson*, 288 Ga. at 54, 701 S.E.2d at 166.

malpractice statute-of-repose, include statutory language expressly defining the stat-ute as a statute of repose, cases like *Trax-Fax, Inc. v. Hobba* make clear that it is not necessary for a statute to expressly define itself as a statute of repose in order for that statute to actually be one.

In *Trax-Fax, Inc. v. Hobba*, the Georgia Court of Appeals held that the passage of O.C.G.A. § 34-9-245 created a statute of repose that could be applied retroactively to bar claims for reimbursement of worker's compensation disability benefits paid more than two years prior to the application for reimbursement. 277 Ga. App. 464, 464, 627 S.E.2d 90, 92 (2006). O.C.G.A. § 34-9-245, like O.C.G.A. § 45-1-4(e)(1), is silent as to whether it is a statute-of-limitations or a statute-of-repose. That statute simply reads: "[...] **No claim for reimbursement shall be allowed where the applica-tion for reimbursement is filed more than two years from the date such overpayment was made.**" O.C.G.A. § 34-9-245. In holding that O.C.G.A. § 34-9-245 was a statute of repose, the Court of Appeals demonstrated that a statute's absence of an express label as a "statute of repose" is not dispositive of whether the statute operates as a statute of repose.

*Coen v. Aptean, Inc.* ("*Coen* I"), a case cited by Plaintiff in her Response, pro-vides a string-cite listing multiple statutes of repose, including: O.C.G.A. § 9-3-51 (the eight-year statute of repose for construction cases)[5]; O.C.G.A. § 9-3-71(b) (medical malpractice statute of repose); O.C.G.A. § 34-9-245 (worker's compensation disability

---

[5] *See Fort Oglethorpe Associates II, Ltd. v. Hails Const. Co. of Georgia*, 196 Ga. App. 663, 664, 396 S.E.2d 585, 587 (1990) (recognizing O.C.G.A. § 9-3-51as a statute of repose).

6

benefits reimbursement statute of repose); and, O.C.G.A. § 51-1-11 (ten-year products liability statute of repose). *See* (Plaintiff's Response pp. 9-10) (citing *Coen v. Aptean, Inc.* ("*Coen* I"), 346 Ga. App. 815, 826–30, 816 S.E.2d 64, 75–77 (2018), rev'd in part, 307 Ga. 826, 838 S.E.2d 860 (2020) ("Coen II"), and opinion vacated in part, 356 Ga. App. 468, 847 S.E.2d 835 (2020) ("Coen III")). Notably, only one of the 4 statutes of repose cited in *Coen I*, O.C.G.A. § 9-3-71 (which includes the medical malpractice statue of repose) expressly defines itself to include a "statute of repose." All of the other statutes of repose listed in *Coen* I are determined to be a statute of repose based on how they operate, not how they label themselves.

Clearly then, O.C.G.A. § 45-1-4(e)(1) silence's as to whether it is a statute-of-limitations or statute-of-repose, is not dispositive of this issue. What matters is that it provides a time period after which an event occurs when it becomes no longer actionable, irrespective of its discovery. This point is recognized in the definition of "Statute of Repose" in Black's Law Dictionary (12th ed. 2024): "A statute of repose ... limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. **Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted**. STATUTE OF REPOSE, Black's Law Dictionary (12th ed. 2024) (citing 54 C.J.S. Limitations of Actions § 4, at 20-21 (1987) (emphasis added).

O.C.G.A. § 45-1-4(e)(1) has two separate parts, one tied to discovery and one that is not:

> (e)(1) A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier."

O.C.G.A.. § 45-1-4(e)(1). The one-year provision of O.C.G.A. § 45-1-4(e)(1) is tied to discovery, and it serves as statute of limitations.[6] The three-year provision runs from the occurrence of the allegedly retaliatory event (irrespective of discovery) and provides a time period after which the allegedly retaliatory event is no longer actionable. The "whichever is earlier" language only emphasizes this distinction. If the retaliation occurred more than three years prior to the date when the employee attempted to "institute a civil action for relief" under O.C.G.A. § 45-1-4(e)(2), then the lawsuit cannot be brought, even if the retaliation was only discovered within one year prior to attempting to file the lawsuit. This language makes the three-year section of O.C.G.A.. § 45-1-4(e)(1) a statute of repose, similar to the statute of repose created by O.C.G.A. § 34-9-245 and acknowledged by the Georgia Court of Appeals in *Trax-Fax, Inc. v. Hobba.*

---

[6] As explained in Defendants' Motion, pp. 9-10, the Georgia Court of Appeals has recognized that the-one-year period referenced in O.C.G.A. § 45-1-4(e)(1) is a statute of limitations. *Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia,* 326 Ga. App. 350, 353–54, 756 S.E.2d 585, 588 (2014). . The *Tuttle* Court did not expressly address the separate three-year provision of O.C.G.A. § 45-1-4(e)(1), suggesting that it was something different than a statute of limitations. It is a statute of repose.

Other courts analyzing statutes with a similar "whichever is earlier" provision have reached the same conclusion. Take the Michigan Court of Appeals' unpublished decision in *Bishop & Heintz, P.C. v. Finch*, for example. In reviewing a statute, it noted that it

> provides that a claim for legal malpractice cannot be filed after either (1) the expiration of the applicable statute of limitations, i.e., two years as set forth in MCL 600.5805(6), or (2) six years after the act or omission that forms the basis of the claim, *"whichever is earlier."* (Emphasis added.) Here, the two-year statute of limitations, not the six-year statute of repose, applies.

*Bishop & Heintz, P.C. v. Finch*, No. 327400, 2016 WL 3749388, at *2 (Mich. Ct. App. July 12, 2016). So too when the Superior Court of Pennsylvania (an intermediate appellate court) discussed one section of a statutory scheme, noting that it "provides, in part:

> If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

*Bond v. Gallen*, 292 Pa. Super. 207, 214, 437 A.2d 7, 11 (1981), *aff'd*, 503 Pa. 286, 469 A.2d 556 (1983). It then noted that the "**four year period is a statute of repose**; the two-year period is triggered by an event subsequent to the accident." *Id.* (emphasis added). The Southern District of New York agreed when analyzing another statute, noting that "under Section 13, a suit alleging that a defendant violated either Section 11 or Section 12(a)(2) must be filed (a) within one year of the date that the plaintiff discovered the violation, or (b) within three years of the date that the security was

offered to the public, **whichever is earlier**. When differentiating these two time limits, the latter is called the 'statute of repose.'" *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 DLC, 2014 WL 241739, at *4 (S.D.N.Y. Jan. 22, 2014) (emphasis added). Courts are clear—the "whichever is earlier" language, when married to a longer, absolute time-bar and a shorter, discovery-based time bar, indicates the presence of one statute of repose and one statute of limitation. The plain language of Section 45-1-4(e)(1) clearly sets up the same arrangement.

**B. Contrary to Plaintiff's Assertion, O.C.G.A. § 45-1-4(e)(1) is not simply a statute-of-limitations with two alternate deadlines.**

Plaintiff argues that O.C.G.A. § 45-1-4(e)(1) is simply a statute-of-limitations with two alternate deadlines, citing *Franklin v. Eaves*, 337 Ga. App. 292, 298, 787 S.E.2d 265, 271 (2016). *Franklin* does not support that conclusion.

Franklin does not expressly hold that O.C.G.A.. § 45-1-4(e)(1) has an alternative one-year or three-year statute of limitations. Rather, a careful review of the case shows that it was focused on the one-year language of O.C.G.A. § 45-1-4(e)(1) and supports Defendant's reading that O.C.G.A. § 45-1-4(e)(1) has a one-year statute-of-limitations tied to discovery and a three-year statute of repose tied to each discrete act of alleged retaliation:

> The Georgia Whistleblower Act ("the Act") provides that a public employee who experiences retaliation in violation of the statute may file a lawsuit "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." OCGA § 45–1–4(e)(1). **The Act's definition of "retaliation," the discovery of which triggers the running of the statute of limitations, includes "the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action[,]" OCGA § 45–1–4(a)(5), indicating that**

10

**any discrete adverse employment action can create a cause of action and, upon discovery, trigger the running of the statute of limitations.**

Franklin argues on appeal that her cause of action accrued on October 24, 2012, when her supervisor informed her in a meeting that her job duties of credentialing and credit card reporting had been assigned to another employee. **Therefore, she argues, she timely filed her complaint within one year, on October 11, 2013**. However, the County accurately points out that Franklin did not take this position in the trial court below. Franklin stated in her response to the County's motion for summary judgment that the first adverse employment action against her occurred on August 27, 2012, when her supervisor assigned Franklin's credit card processing duties to another employee.

*Franklin v. Eaves*, 337 Ga. App. 292, 297, 787 S.E.2d 265, 270 (2016).  Ultimately, the Court of Appeals held that there was a fact question that precluded summary judgment as to which of the claimed acts of retaliation occurred within one-year of her filing suit.  From the Court's discussion that **"**discovery**"** triggers the "running of the statute of limitations,**"** it can be reasonably inferred from *Franklin* that since the "statute of limitations" is "triggered" or "tied" to discovery, that the *Franklin* court was only thinking of the one-year language being tied to discovery.  Further the Court's factual analysis of whether the claimed events of retaliation occurred within one-year, not three years, further reinforces the conclusion that the Court of Appeals was looking only at the one-year provision of O.C.G.A. § 45-1-4(e)(1) as the statute of limitations.

Thus, *Franklin* is consistent with *Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia* by focusing only on the one-year portion of O.C.G.A. § 45-1-4(e)(1) when discussing the "statute of limitations" of O.C.G.A. § 45-1-4(e)(1).  *See Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 354, 756 S.E.2d 585,

588 (2014) ("Here, Tuttle's cause of action accrued and the one-year limitation period began to run on June 2, 2009 when Tuttle first discovered the retaliation in question, namely, that his position was to be terminated.") That both *Franklin* and *Tuttle* did not expressly address the separate three-year provision of O.C.G.A. § 45-1-4(e)(1) when analyzing a "statute-of-limitation" issue, suggests that the three-year portion of the statute is something different, a "statute of repose."

**C. Plaintiff's argument that Paragraph 42 of Plaintiff's Renewal Action alleges a new claim not included in her Original Action does not save her Renewal Action. Instead, it provides an additional reason why it Plaintiff's Renewal Action is in an invalid renewal attempt pursuant to O.C.G.A § 9-2-61.**

In her Response, pp. 13-14, Plaintiff suggests that the allegations in Paragraph 42 of her Renewal Action, that were not present in her original case, constitute a "new cause of action" that survives Defendant's Motion to Dismiss. *See* (Defendant's Response). By admitting she seeks to assert an entirely new, additional claim, she undermines her own argument she has filed a valid renewal action. This is what Plaintiff argues in her Response on this point:

> Defendant suggests in its Motion that "Plaintiff alleges multiple, discrete acts of whistleblower retaliation, with the last claimed act of retaliation occurring in May 2021" and argues that "all of Plaintiff's claims in the Renewal Action are barred" by the theory of law it offers the Court. Defendant's Motion, p. 13. Similarly, Defendant references Plaintiff's "sole claim in the Renewal Action" and argues that "every act of retaliation in her Complaint took place more than three years before she filed her Renewal Action[.]" Id., p. 6
>
> **Plaintiff, however, offers in her renewal Complaint allegations of retaliation additional to those set forth in her original Complaint.** Specifically, Plaintiff alleges as follows:
>
> 42.

12

Retaliation continued after she was forced from the job when applying for numerous job positions approximating her professional status as Chief of Schools for SCCPSS and available with SCCPSS. She never received an interview and persons dramatically less qualified than her received interviews and were hired.

Renewed Complaint ¶42.

In a renewal action, a plaintiff may allege additional facts or contentions, and the defendant likewise can interpose such defensive pleadings as he may deem best. [cits. omitted] **In other words, the new cause of action stands on its own footing as to such defensive pleadings**.

**Defendant's pleadings clearly, but incorrectly state the claims of her original Complaint are the "sole claim in the Renewal Action."** Defendant's Motion addresses only those claims. Hence, no motion is pending on Dr. Garcia-Wilder's claims of continuing retaliation. [...] Dr. Garcia Wilder's claim of continuing retaliation survives Defendant's Motion.

(Plaintiff's Response pp. 13-14) (emphasis added). Thus, Plaintiff concedes that Paragraph 42 of the Renewal Action contained allegations that were not included in Original Action and that she is trying to add an entirely new claim that was not previously added. In making this argument, she reveals that her Renewal Action is an invalid renewal suit.

"To be a valid renewal of an original suit, so as to suspend the running of the statute of limitation, the new petition must be substantially the same as the original as to the essential parties." *Allstate Ins. Co. v. Baldwin*, 244 .Ga. App. 664, 665, 536 S.E.2d 558, 559 (2000) (holding that attempted renewal action was not valid by trying to name new parties). As further explained by the Georgia Court of Appeals, the renewal suit must not only involve the same "essential parties" but also the "same cause of action:"

13

It is well settled that, in order to show the right to renew the suit within six months after the dismissal of a prior suit on the same cause of action, when such right is relied upon to relieve the plaintiff of the bar of the statute of limitation, it is **necessary for the renewal petition to *show affirmatively* that the former petition was not a void suit, that it is such a valid suit as may be renewed under OCGA § 9-2-61, that it is based upon substantially the same cause of action, and that it is not a renewal of a previous action which was dismissed on its merits** so that the dismissal would act as a bar to the rebringing of the petition.

*Whitesell v. Georgia Power Co.,* 341 Ga. App. 279, 281, 800 S.E.2d 370, 371 (2017) (emphasis added). By arguing in her response that Paragraph 42 of Plaintiff's Complaint contains a wholly new cause of action, Plaintiff concedes that her Renewal Action is not a valid Renewal Action, and it could be dismissed on that alternative basis.[7]

While a Renewal Complaint may include some factual matter beyond that alleged in the original complaint "such as alleging the facts necessary for renewal under OCGA § 9-2-61," *see e.g. Strickland v. Geico Gen. Ins. Co.,* 358 Ga. App. 158, 161, 854 S.E.2d 348, 351 (2021),[8] adding wholly new claims is not permissible. *See Whitesell v. Georgia Power Co.,* 341 Ga. App. 279, 281, 800 S.E.2d 370, 371 (2017); *also, e.g., Ward v. Dodson,* 256 Ga. App. 660, 661, 569 S.E.2d 554, 557 (2002) (holding that plaintiff could not add official capacity claim to a renewal suit when the original suit

---

[7] Plaintiff's March 12, 2024 is further afield of her original complaint, adding a 42 U.S.C. § 1981 claim as a separate count. Defendants reserve the right and expect to move to dismiss Plaintiff's Amended Complaint in a separate pleading.

[8] *See cf. Coen v. Aptean, Inc.* ("*Coen III*"*), 356 Ga. App. 468, 471, 847 S.E.2d 835, 839 (2020)* ("The relevant inquiry is whether the causes of action asserted in the original and renewal suits were substantially the same. [...] Coen's request for punitive damages was not a separate and independent cause of action [...] Consequently, Coen did not add a new cause of action based on a new theory of recovery by requesting punitive damages for the first time in the renewal suit").

only named the defendant in his individual capacity)

While *Allstate* recognizes the possibility that a Court may consider the amendment and relation back provisions of O.C.G.A. § 9-11-15(c) and 9-11-21 in a **valid** renewal action, it may not consider these rules at all when there is no "valid action pending." *Allstate Ins. Co. v. Baldwin*, 244 Ga. App. 664, 666, 536 S.E.2d 558, 560 (2000) ("That the trial court has authority to allow amendments to pleadings and to permit relation-back of the amendments presupposes the existence of a valid action. Here there was no valid action pending when Baldwin sought to add Wisenbaker as a defendant.")

As explained in *Aiken Dermatology & Skin Cancer Clinic, P.A. v. DavLong Sys., Inc.*, when an attempted renewal suit is "invalid" and does not meet the requirements of O.C.G.A. § 9-2-61(a), the Court lacks jurisdiction to hear the case and it is as if the case does not exist. 314 Ga. App. 699, 702, 725 S.E.2d 835, 838 (2012) (holding that renewal suit that was invalid for failure to pay costs was not a pending suit that could result in the dismissal of a second, attempted renewal suit on the basis that the second renewal suit was simultaneous action barred by O.C.G.A. § 9-2-44)).

As explained in Defendant's Original Motion and in this Reply, Plaintiff's attempted renewal action of October 8, 2024, was an invalid renewal action as being barred by the three-year statute of repose set forth in O.C.G.A. § 45-1-4(e)(1). So, no amendments to the Renewal Action to add new claims are permissible, because the Renewal Action is void. See *Allstate Ins. Co. v. Baldwin*, 244 Ga. App. 664, 666, 536 S.E.2d 558, 560 (2000).

15

Plaintiff's Response, by arguing an apparent effort to add a new claim in Paragraph 42 of the Renewal Complaint, discloses an alterative basis for why the attempted Renewal Action is not a valid renewal Action; Plaintiff has sought to add a new claim not included in the first suit. The March 12, 2025 Amended Complaint goes further afield by adding a 42 U.S.C. § 1981 claim. Accordingly, Plaintiff's Response only further discloses why this attempted Renewal Action must be dismissed as not being brought in compliance with O.C.G.A. § 9-2-61.

If Plaintiff thinks she has a new claim that can be timely asserted against the School District, she cannot seek to add it to this void, invalid renewal suit. She must attempt to assert any new claim through a new, separate case. The claims in the Original Action that Plaintiff has unsuccessfully sought to revive through this Renewal Action should be dismissed with prejudice because they were not timely and properly renewed pursuant to O.C.G.A. § 9-2-61.

### III. CONCLUSION

For the foregoing reasons, this Renewal Action should be ***DISMISSED*** as an improper attempt to file a renewal suit O.C.G.A. § 9-2-61 that is barred by Section 45-1-4(e)(1)'s three-year statute of repose and which apparently seeks to advance new claims admittedly beyond the scope Plaintiff's Original Action. As to any claim asserted in her Original Action, the dismissal should be with prejudice. As to any claim new claim attempted to be improperly added to an invalid renewal action, the dismissal should be without prejudice.

[Signature on Next Page]

16

RESPECTFULLY SUBMITTED THIS 17th DAY OF MARCH, 2025.

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

BOUHAN FALLIGANT LLP
/s/ Andrew H. Dekle
LUCAS D. BRADLEY
Georgia State Bar No. 672136
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant Savannah-*
*Chatham County Public School System*

17

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by United States Mail with proper postage affixed as follows, with additional copy by email:

S. Wesley Woolf, Esq.
Woolf Law
2905 Bull Street
Savannah, Georgia 31405
woolf@woolflawfirm.net

Matthew C. Billips, Esq.
BARRETT & FARAHANY
3344 Peachtree Rd., NE Suite 800
Atlanta, GA 30326
matt@justiceatwork.com

This 17th day of March, 2025.

BOUHAN FALLIGANT LLP

/s/ Andrew H. Dekle
LUCAS D. BRADLEY
Georgia State Bar No. 672136
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant Savannah-Chatham County Public School System*

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

Shelia Garcia-Wilder v. Savannah-Chatham County Public School District
Superior Court of Chatham County, Georgia
Civil Action No. SPCV24-0117

18

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 3/20/2025 11:53 AM
Reviewer: DH

**IN THE SUPERIOR COURT OF CHATHAM COUNTY**
**STATE OF GEORGIA**

SHELIA GARCIA-WILDER,     :
              :
   Plaintiff,        :
              :
vs.            :   **CIVIL ACTION NO.**
              :   **SPCV24-01173-MO**
SAVANNAH-CHATHAM COUNTY  :
PUBLIC SCHOOL DISTRICT,    :
              :
   Defendant.       :

---

**MOTION TO STRIKE DEFENDANT'S REPLY BRIEF IN SUPPORT OF**
**MOTION TO DISMISS RENEWAL SUIT**
**OR, IN THE ALTERNATIVE**
**FOR LEAVE TO FILE SUR-REPLY IN SUPPORT OF PLAINTIFF'S RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS RENEWAL SUIT**

COMES NOW PLAINTIFF SHELIA GARCIA-WILDER in the above captioned matter

and files this Motion to Strike Defendant's Reply Brief in Support of Motion to Dismiss Renewal

Suit or, in the Alternative, Motion for Leave to File Sur-Reply in Support of Plaintiff's Response

to Defendant's Motion to Dismiss Renewal Suit, showing the Court as follows:

Defendant filed Defendant's Motion to Dismiss Renewal Suit (Motion) on December 10,

2024 and, upon stipulated extension of time to file response, on February 10, 2025, Dr. Garcia-

Wilder filed Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Renewal Suit

(Response). Defendant filed a Reply Brief in Support of Motion to Dismiss Renewal Suit (Reply)

earlier this week on March 17, 2025.

Neither the Civil Practice Act nor the Uniform Rules of Superior Court provide direction

regarding a reply or sur-reply other than requiring that "each party opposing a motion shall serve

and file a response, reply memorandum, affidavits, or other responsive material no later than 30

days after service of the motion." Ga. Unif. Super. Ct. R. 6.2.  (Rule 6.2).  Citing Rule 6.2, the

Court of Appeals of Georgia referenced as "late filed" a sur-reply filed beyond the 30-day time

frame provided therein. Payton v. City of Coll. Park, 368 Ga. App. 396, 399, 890 S.E.2d 278, 282

(2023), cert. denied (Dec. 19, 2023), overruled on other grounds by Wasserman v. Franklin Cnty.,

S23G1029, 2025 WL 309390 (Ga. Jan. 28, 2025).

Indeed, no express authority exists for filing by the movant of any supporting briefs beyond

the motion itself.  In an earlier case, the Court of Appeals offered uncertainty on whether the trial

court could properly disregard a reply brief filed without consent after the hearing on motion for

summary judgment, concluding that it did have *discretion* to do so.  Blake v. KES, Inc., 329 Ga.

App. 742, 747, 766 S.E.2d 138, 143 (2014).

Without secure foundation as to whether Defendant's Reply or Plaintiff's desired

prospective sur-reply is properly before the Court under the circumstances of the case, Plaintiff

must move to strike Defendant's Reply or in the alternative, seek an Order from the Court allowing

Plaintiff to file a sur-reply.

Perhaps necessarily because of the nature of Plaintiff's Response to Defendant's Motion,

Defendant's Reply filed March 17, 2025, raises numerous procedural and substantive issues not

raised in its original Motion.  Indeed, in its Reply, Defendant states that it "expect[s] to move to

dismiss Plaintiff's Amended Complaint in a separate pleading." Defendant's Reply, p. 14, fn. 7.

With one or more further motions anticipated to address the pleadings in this matter, a sur-

reply from the Plaintiff (and even further briefing from Defendant if necessary) can assist the Court

with a comprehensive analysis of the issues and allow all parties an opportunity to be heard on all

relevant issues. Because Plaintiff proceeds at her peril, for instance, if the Court grants her the

opportunity to file a sur-reply, but at a later time the sur-reply might later be concluded as filed

untimely, see Payton v. City of Coll. Park, supra, Plaintiff respectfully intends to respond to the new issues raised by Defendant's Reply by filing a sur-reply on or before April 3, 2025.

Accordingly, Plaintiff seeks an Order allowing the filing of a sur-reply by Plaintiff on or before April 3, 2025.

RESPECTFULLY SUBMITTED, this 20th day of March, 2025.


                                        **WOOLF LAW**

                                        /s/ S. Wesley Woolf
                                        S. Wesley Woolf
                                        Georgia Bar No. 776175
                                        Counsel for Plaintiff

**WOOLF LAW**
2509 Bull Street
Savannah, Georgia 31405
T: (912) 201-3696
F: (912) 201-3699
woolf@woolflawfirm.net


                                        **BARRETT & FARAHANY**

                                         /s/ Matthew C. Billips
                                        Matthew C. Billips
                                        Georgia Bar No. 057110
                                        Counsel for Plaintiff

**BARRETT & FARAHANY**
3344 Peachtree Rd., NE
Suite 800
Atlanta, GA 30326
(470) 284-7265
matt@justiceatwork.com

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 3/20/2025 11:53 AM
Reviewer: DH

SHELIA GARCIA-WILDER,                 :
                                      :
        Plaintiff,                    :
                                      :
vs.                                   :        CIVIL ACTION NO.
                                      :        SPCV24-01173-MO
SAVANNAH-CHATHAM COUNTY               :
PUBLIC SCHOOL DISTRICT,               :
                                      :
        Defendant.                    :
_____

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by same-day electronic mail and via the Court's electronic filing system as follows:

LUCAS D. BRADLEY
ANDREW H. DEKLE
**BOUHAN FALLIGANT LLP**
Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

This 20th day of March, 2025.

**WOOLF LAW**

*/s/ S. Wesley Woolf*
S. Wesley Woolf
*Counsel for Plaintiff*

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 3/27/2025 11:22 AM
Reviewer: KW

TO:  **Clerk of Superior Court of Chatham County,**
**The Judges of the Superior Court of Chatham County, and**
**Counsel of Record in the Superior Court of Chatham County**

FROM:  **Andrew H. Dekle, Esq.**

RE:  **Notice of Leave of Absence**

DATE:  **March 27, 2025**

---

COMES NOW Andrew H. Dekle and respectfully notifies all Judges before whom he has cases pending, all affected Clerks of Court, and all opposing counsel, that he will be on leave pursuant to Georgia Uniform Court Rule 16. A list of cases pending in Chatham County Superior Court is attached as Exhibit "A."

The periods of leave during which Applicant will be away from the practice of law are as follows:

(1) **May 19, 2025 through May 21, 2025 for personal travel;**

(2) **May 29, 2025 through May 30, 2025 for personal travel;**

(3) **June 12, 2025 through June 13, 2025 for personal travel;**

(4) **June 27, 2025 through July 3, 2025 for personal travel; and**

(5) **September 25, 2025 through September 26, 2025 for personal travel.**

All affected judges and opposing counsel/parties shall have ten days from the date of this Notice to object to it. If no objections are filed, the leave shall be granted.

WHEREFORE, applicant prays that this application be granted.

Respectfully submitted, this 27th day of March, 2025.

One West Park Avenue
Savannah, Georgia 31401
T: 912-232-7000
F: 912-233-0811
ahdekle@bouhan.com

BOUHAN FALLIGANT LLP

/s/Andrew H. Dekle
Andrew H. Dekle, Esq.
Georgia Bar No. 847828

EXHIBIT "A"

| Name of Case and Case Number | Name of Judge | Opposing Counsel / Party |
| --- | --- | --- |
| West Wing Food Service, LLC d/b/a West Wing Pizzeria, Inc. v. Savannah-Chatham County Board of Education<br><br>SPCV16-1034-FR | Honorable Penny Haas Freesemann<br>Chief Judge, Chatham County Superior Court<br>Chatham County Courthouse, Room 422<br>133 Montgomery Street<br>Savannah, Georgia 31401 | Stephen H. Harris, Esq.<br>7 E. Congress Street, Suite 1003<br>Savannah, GA 31401 |
| Shelia Garcia-Wilder v. Savannah-Chatham County Public School District<br><br>SPCV24-01173-MO | Honorable John E. Morse, Jr.<br>Judge, Chatham County Superior Court<br>Chatham County Courthouse, Room 213<br>133 Montgomery Street<br>Savannah, Georgia 31401 | S. Wesley Woolf, Esq.<br>Woolf Law<br>408 East Bay Street<br>Savannah, Georgia 31401<br><br>Mathew Billips, Esq.<br>Barrett & Farahany<br>P.O. Box 530092<br>Atlanta, Georgia 30353-0092 |
| West Construction Company GA, LLC v. Middle Georgia Insulated Structures, LLC, Polar King America Inc., and Joshua Taylor<br><br>SPCV23-00837-FR | Honorable Penny Haas Freesemann<br>Chief Judge, Chatham County Superior Court<br>Chatham County Courthouse, Room 422<br>133 Montgomery Street<br>Savannah, Georgia 31401 | Joshua Taylor<br>414 E. 19th Avenue<br>Cordele, Georgia 31015 |
| Carl Quarterman v. The Board of Public Education for the City of Savannah and the County of Chatham d/b/a The Savannah-Chatham County Public School System<br><br>SPCV24-01510-WA | Honorable Timothy R. Walmsley<br>Judge, Chatham County Superior Court<br>Chatham County Courthouse, Room 421<br>133 Montgomery Street<br>Savannah, Georgia 31401 | Anita K. Balasubramanian, Esq.<br>J. Kyle Brooks, Esq.<br>Camille J. Mashman, Esq.<br>Buckley Bala Wilson Mew LLP<br>600 Peachtree Street NE<br>Suite 3900<br>Atlanta, Georgia 30308 |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this date served a copy of the foregoing Notice of Leave of Absence upon all judges, clerks and opposing counsel listed on the attached Exhibit "A," by depositing the same in the U.S. Mail with adequate postage affixed thereto.

This 27th day of March, 2025.


BOUHAN FALLIGANT LLP


One West Park Avenue                    /s/Andrew H. Dekle
Savannah, Georgia 31401                 Andrew H. Dekle, Esq.
T: 912-232-7000                         Georgia Bar No. 847828
F: 912-233-0811
ahdekle@bouhan.com

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 3/27/2025 4:14 PM
Reviewer: AB

**IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA**

SHELIA GARCIA-WILDER,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　　Civil Action No. SPCV24-01173
SAVANNAH-CHATHAM COUNTY　　　　)
PUBLIC SCHOOL DISTRICT,　　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　)

---

**MOTION TO DISMISS
FIRST AMENDED COMPLAINT IN RENEWAL SUIT**

---

COMES NOW Defendant Savannah-Chatham County Public School System (hereinafter the "School District") and hereby files its Motion to Dismiss Plaintiff Shelia Garcia-Wilder's Amended Complaint in the above-captioned Renewal Action, SPCV24-01173, pursuant to O.C.G.A. 9-11-12b(6) for failure to state a claim. The School District further notes that the filing of this O.C.G.A. § 9-11-12(b)(6) motion shall stay discovery for 90 days or "until the ruling of the court on such motion, whichever is sooner." O.C.G.A. § 9-11-12(j).

## I.　　INTRODUCTION AND BACKGROUND

This purported O.C.G.A. § 9-2-61 renewal suit, as amended, is untimely and invalid. Plaintiff contends this case is simply a renewal of a previous suit[1] under the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4(d), but her March 12, 2025 Amended Complaint seeks to add, for the first, time, a 42 U.S.C. § 1981 claim. As explained in Defendant's original Motion to Dismiss, this attempted renewal suit is untimely because it is barred by the three-year statute of repose for

---

[1] Superior Court of Chatham County Case No. SPCV21-00522 (the "Original Action").

1

GWA claims created by O.C.G.A. § 45-1-4(e) (1). All of the events alleged in the Original Action are cut off by the statute of repose, and, thus, are no longer actionable. Because this attempted "renewal suit" is invalid because it is untimely filed in the face of the applicable statute of repose, any new claims that Plaintiff has sought to add in either her October 8, 2024 Complaint or in her March 12, 2024 Amended Complaint have no valid lawsuit to attach to and should be dismissed on that basis. *See Allstate Ins. Co. v. Baldwin,* 244 Ga. App. 664, 666, 536 S.E.2d 558, 560 (2000) ("It is unnecessary to address the issue of whether the trial court properly applied the amendment and relation-back provisions of OCGA §§ 9–11–15(c) and 9–11–21 in the purported renewal action. Baldwin failed to file a valid renewal action within the six months permitted by the statute. That the trial court has authority to allow amendments to pleadings and to permit relation-back of the amendments presupposes the existence of a valid action.")

In addition to being improperly joined in an invalid renewal suit, Plaintiff's new 42 U.S.C. § 1981 claim fails as a matter of law on the face of Plaintiff's Amended Complaint. Garcia-Wilder does not claim that her contract rights were impaired because of *her* race; she claims that her contract rights were impaired because she allegedly spoke up on behalf of students regarding *their* race.[2] She does not allege those *students* had any impaired contract right—a prerequisite for the kind of Section 1981 claim she asserts.

\*\*\*

On May 12, 2021, Plaintiff Shelia Garcia-Wilder filed her original action against the School District under the Georgia Whistleblower Act, Superior Court of Chatham County Case No. SPCV21-00522 (the "Original Action"). In the Original Action, Plaintiff alleged multiple

---

[2] The School District vigorously denies these allegations, and discovery in the prior action showed them to be unfounded.

discrete actions of whistleblower retaliation, including her May 2020 reassignment from "Chief of Schools" to a "Senior Grant Writer" position, *see* (Complaint, Original Action, ¶¶ 9, 30, 35) and her May 2021 reassignment from "Senior Grant Writer" to "Grant Writer," *see* (Complaint, Original Action ¶36). In her Original Action, May 2021 was the latest time period asserted for her claims. The School District denied Plaintiff's allegations of whistleblower retaliation in the Original Action and denies them again here.

On April 26, 2024, Plaintiff Garcia-Wilder dismissed the Original Action without prejudice, reserving her right to recommence the same within six (6) months hereof pursuant to O.C.G.A. §9-2-61.

On October 8, 2024, Plaintiff Garcia-Wilder filed the above-captioned action, SPCV24-011173, (the "Renewal Action"), seeking to renew her suit pursuant to O.C.G.A. § 9-2-61. Again, Plaintiff alleged multiple, discrete acts of whistleblower retaliation. Again, the locus of the alleged retaliatory acts were prior to **May 2021.** (Complaint, Renewal Action ¶36). Again, the School District denied and denies these allegations.

After the School District moved to dismiss the purported Renewal Complaint as a procedurally improper attempt to thwart the three year statute of repose in the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(e)(1), Plaintiff amended her purported Renewal Complaint. In that amendment, she seemingly sought primarily to add allegations about events occurring after May 2021, and to add a wholly new cause of action under 42 U.S.C. § 1981. In motions practice, she also pointed out one paragraph in the first renewal complaint, in which she blamed improper retaliation for the School District's decision not to hire her for vague other positions for which she claims she was qualified. She characterized that as a "new cause of action." Response at 14.

3

The merits of the case aside, Plaintiff Garcia-Wilder's procedural maneuver must fail, all of the acts of alleged retaliation discussed in her original Complaint are barred by the three-year statute of repose contained in O.C.G.A. § 45-1-4(e)(1). Thus, the whole "renewal" suit is invalid and is an inappropriate vehicle on which to anchor any new claims that are potentially still timely. The reason is simple: the renewal statute is ineffective against a statute of repose, which Plaintiff has agreed to in motions practice. And the three-year maximum for bringing Georgia whistle-blower suits—as opposed to the one-year statute of limitation that begins running once a litigant discovers her right to sue under the statute—is a statute of repose (and thus bars even renewal suits). Secondary sources have directly called the three-year period contained in O.C.G.A. § 45-1-4(e)(1) a statute of repose.[3] Georgia cases that expressly recognize the one-year provision of a O.C.G.A. § 45-1-4(e)(1) as a statute-of-limitation, rather than one-year or three-year statute of limitations, are consistent with the reading that the three-year provision of O.C.G.A. § 45-1-4(e)(1) is not a statute-of-limitations, but a statute of repose. See, e.g., *See Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 355, 756 S.E.2d 585, 589 (2014); *Franklin v. Eaves*, 337 Ga. App. 292, 297, 787 S.E.2d 265, 270 (2016). The wording of the three-year provision of O.C.G.A. § 45-1-4(e)(1) is also similar to the wording of other statutes of repose. See *Trax-Fax, Inc. v.* 277 Ga. App. 464, 464, 627 S.E.2d 90, 92 (2006) (interpreting the statute of repose created by O.C.G.A. § 34-9-245). And federal cases interpreting similar timing statutes provide persuasive authority that supports the conclusion that the three-year period of O.C.G.A. § 45-1-4(e)(1) is a statute of repose. *See, e.g. Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817

---

[3] Micah Barry, *Ordered into Oblivion: How Courts Have Rendered the Georgia Whistleblower Act Useless, and How to Fix It*, 19 SEATTLE J. FOR SOC. JUST. 121, 125–26 (2020) ("The statute of limitations is one year after discovery of the retaliation, with a three-year statute of repose.") (citing O.C.G.A. § 45-1-4(e)(1)).

F.3d 393, 403 (2d Cir. 2016), *as amended* (Apr. 29, 2016) (interpreting the statute of repose contained in § 1658(b) and Section 9(f)).

Thus, the subject statute of repose contained in O.C.G.A. § 45-1-4(e)(1) defeats Dr. Garcia-Wilder's Renewal Action for all acts in her original claim, rendering those claims untimely and rendering this attempted renewal suit an invalid vehicle for anything else attached to it (like new, supplemental retaliation claims, including claims allegedly arising in late October, 2024, after Plaintiff filed her original Complaint in this attempted Renewal Action on October 8, 2024)[4].

Plaintiff's Section 1981 claims also fail. They are affixed to an improper renewal suit, as shown above, and should be dismissed on that basis. Even if they were not dismissed for procedural reasons, the new 1981 claim fails as a matter of law on the face of the Complaint. The new cause of action is also based on Plaintiff's alleged attempts to speak up for Black children in the context of school discipline. But she identifies no impaired contractual right on the part of those Black schoolchildren. To claim Section 1981 retaliation based on allegedly sticking up for someone else, a litigant *must* identify an impaired contract right that the "someone else" had. Impaired statutory or tort rights are not enough and do not trigger the statute. Finally, any alleged acts of retaliation under Section 1981 prior to March 12, 2021 are time-barred under even the most generous four-year statute of limitation.

The Court should ***DISMISS*** this case.

---

[4] Plaintiff's First Amended Complaint apparently seeks to add a supplemental claim for the alleged denial of an opportunity to interview for a new position with the District in "Late October 2024," events not mentioned in the October 8, 2024 Complaint that apparently occurred after it was filed. *See* (Amended Complaint, ¶¶ 48, 65); *see also* O.C.G.A. § 9-11-15(d) ("Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.")

## II.    LEGAL STANDARD

A motion to dismiss "provides a two-pronged attack on a notice pleading complaint." Ruskell, Richard C., *Davis and Shulman's Ga. Practice & Procedure* § 9:5 (2018-2019 Ed.). "Under the first basis of attack, like the general demurrer, the complaint is attacked for failing to allege a claim for relief," meaning it should be dismissed if "it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." *Id.; see also, e.g., Sparra v. Deutsche Bank Nat. Tr. Co.*, 336 Ga. App. 418, 420, 785 S.E.2d 78, 82 (2016) (granting a motion to dismiss a wrongful foreclosure claim as a matter of law where the plaintiff's own allegations revealed that no foreclosure sale had occurred, preventing the plaintiff from proving beyond doubt all of the essential elements of a wrongful foreclosure claim). In effect, a plaintiff can plead itself out of a claim by alleging facts in its complaint that affirmatively defeat one of its attempted causes of action. *See, e.g. Freebirds LLC v. Coca-Cola Co.*, 366 Ga. App. 443, 449, 883 S.E.2d 388, 395 (2023) (recognizing that a plaintiff may "plead himself out of court by revealing a state of facts which affirmatively shows that there is no liability on the defendant" and dismissing a misrepresentation claim because "Freebird's own allegations in its complaint defeat its claim for relief").

"The second prong of the attack deals with actions which are absolutely barred as a matter of law, no matter what hypothetical state of facts might exist." GA. PRACTICE & PROCEDURE § 9:5 (2018-2019 Ed.) "Such defense in bar is based either upon undisputed facts that give rise to defenses of statute of limitations, of res judicata, or of minority, which are an absolute bar to recovery, or upon defenses such as sovereign immunity that attach despite what the factual situation might be." *Id.*

6

"In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a court must assume the factual allegations of the complaint are true, even if they are doubtful in fact." *Charles H. Wesley Educ. Found., Inc. v. State Election Bd.*, 282 Ga. 707, 714, 654 S.E.2d 127, 132 (2007). It should be noted that "when ruling on a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings, the courts may consider written instruments attached to and incorporated into the complaint and answer." *Handberry v. Stuckey Timberland, Inc.*, 345 Ga. App. 191, 191, 812 S.E.2d 547, 549 (2018) (citing O.C.G.A. § 9-11-10(c)).

A motion to dismiss is also an appropriate vehicle to test whether a lawsuit is barred by the statute of repose. *See, e.g. Bush v. Sreeram*, 298 Ga. App. 68, 68, 679 S.E.2d 87, 88 (2009) ("After answering the complaint, the defendants moved to dismiss, arguing that the complaint was filed beyond the five-year statute of repose for medical malpractice claims. The trial court granted the motions, and Bush appealed. Finding no error in the trial court's decision, we affirm.").

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiff's "Renewal" action is invalid.

As explained in *Aiken Dermatology & Skin Cancer Clinic, P.A. v. DavLong Sys., Inc.*, an attempted renewal suit that does not meet the requirements of O.C.G.A. § 9-2-61(a) is invalid, and the Court lacks jurisdiction to hear the case. It is as if the case does not exist. 314 Ga. App. 699, 702, 725 S.E.2d 835, 838 (2012) (holding that renewal suit that was invalid for failure to pay costs was not a pending suit that could result in the dismissal of a second, attempted renewal suit on the basis that the second renewal suit was simultaneous action barred by O.C.G.A. § 9-2-44)). A valid renewal suit must be limited to the same essential parties and the "same cause of action." *See Whitesell v. Georgia Power Co.,* 341 Ga. App. 279, 281, 800 S.E.2d 370, 371 (2017). Accordingly, attempts to add new claims outside the scope of the original case sought to be renewed

7

are improper because there is no viable case for the new cause of action to be added to. *See Allstate Ins. Co. v. Baldwin,* 244 Ga. App. 664, 666, 536 S.E.2d 558, 560 (2000).

All of the claims and events that were the subject of Plaintiff's original action are now barred by the statute of repose and cannot be validly renewed under O.C.G.A. § 9-2-61. Because there is no valid renewal of Plaintiff's Original Action, there is no valid lawsuit for Plaintiff to amend with the addition of new claims based on new facts outside of the Original Action. *See Allstate Ins. Co.,* 244 Ga. App. at 666, 536 S.E.2d at 560.

**1. Section 9-2-61 does not save a suit that is filed after expiration of the statute of repose.**

O.C.G.A. § 9-2-61, Georgia's renewal statute, provides a limited mechanism that (under some circumstances) allows a prior timely suit to be renewed as a new suit outside the governing statute of limitations. It reads:

> (a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

O.C.G.A. § 9-2-61(a) (emphasis added). By its plain language, the statute only references statutes of limitations, not repose.

It has been long established that O.C.G.A. § 9-2-61 does not save a suit that is filed outside the applicable statute of repose. The Supreme Court has been clear on that point for over thirty years now: "We find that the statute of repose abrogates plaintiff's cause of action. Therefore, she

cannot renew her medical malpractice action beyond the five-year statutory period." *Wright v. Robinson*, 262 Ga. 844, 845, 426 S.E.2d 870, 871 (1993).

The *Wright* Court explained why statutes of repose are so inviolable, such that they cannot yield to the renewal statute or any other attempt at modification or expansion:

> A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent. . . . The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

*Wright*, 262 Ga. at 845, 426 S.E.2d at 871–72. Accordingly, if Plaintiff's Renewal Suit is outside any applicable statute of repose, it is untimely, even given the potential operation of Section 9-2-61. Notably, Plaintiff agreed with this position in prior motions practice. Response at 5 ("Plaintiff does not dispute that the renewal action was filed more than three years after [the conduct referenced in the first lawsuit].").

### 2. Section 45-1-4(e)(1) provides both a statute of limitations and a statute of repose.

The Georgia Whistleblower Statute, Section 45-1-4(e)(1), provides both a statute of limitation *and* a statute of repose. The subsection of the statute reads:

> (e)(1) A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection **within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier."**

O.C.G.A.. § 45-1-4(e)(1) (emphasis added). The statute prescribes a one-year limitation period that only accrues **upon discovery** of alleged retaliation. *Id.* And, it prescribes a separate deadline that is *not* based on accrual[5]: a pure three-year time deadline after which no right of action **can**

---

[5] Black's Law Dictionary defines "Accrual," in the statute of limitations in relation to the concept of discovery: "accrual rule (1938) A doctrine delaying the existence of a claim until the plaintiff has discovered it. • The accrual rule arose in fraud cases as an exception to the general limitations rule that a claim comes into existence once a plaintiff knows, or with due diligence should know, facts to form the basis for a claim." ACCRUAL RULE, Black's Law Dictionary (12th ed. 2024).

even be brought, with no reference to a party's discovery of the conduct or the accrual of the same. As the *Wright* Court explained, that is precisely the difference between statutes of limitation and statutes of repose. It explicitly noted that for a statute of repose, the injury does not even have to "have been discovered." *Wright*, 262 Ga. at 845, 426 S.E.2d at 871. The two periods in the whistleblower statute track the limitation/repose distinction precisely: a shorter period that is contingent on accrual through discovery, and a longer absolute period that is inviolable and after which no cause of action can exist.

Black's Law Dictionary's definition of "statute of repose" makes this same distinction; "[a] statute of repose … limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. **Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted**. STATUTE OF REPOSE, Black's Law Dictionary (12th ed. 2024) (citing 54 C.J.S. Limitations of Actions § 4, at 20-21 (1987) (emphasis added). Multiple interpretive principles—and caselaw itself—support the interpretation that the three-year period of O.C.G.A. § 45-1-4(e)(1) is a statute of repose. First, the one-year provision of O.C.G.A. § 45-1-4(e)(1) is tied to discovery, and it serves as statute of limitations. The three-year provision runs from the occurrence of the allegedly retaliatory event (irrespective of discovery) and provides a time period after which the allegedly retaliatory event is

---

Plaintiff notably argued in her Response that under her reading of "accrual," a time limitation can only be a statute of repose if it is related to something besides the occurrence of the underlying civil harm—like the 'file by your 23rd birthday' requirement for a child sex abuse survivor. Response at 7. But that reading is not consistent with multiple statutes of repose under Georgia law. The medical malpractice statute of repose is tied to the occurrence of the purported medical negligence. O.C.G.A. 9-3-71(b). The workers' compensation overpayment statute of repose is tied to—unsurprisingly—the date of overpayment. O.C.G.A. 34-9-245.

no longer actionable. The "whichever is earlier" language only emphasizes this distinction. If the retaliation occurred more than three years prior to the date when the employee attempted to "institute a civil action for relief" under O.C.G.A. § 45-1-4(e)(2), then the lawsuit cannot be brought, even if the retaliation was only discovered within one year prior to attempting to file the lawsuit. This language makes the three-year section of O.C.G.A. § 45-1-4(e)(1) a statute of repose, similar to the statute of repose created by O.C.G.A. § 34-9-245 and acknowledged by the Georgia Court of Appeals in *Trax-Fax, Inc. v. Hobba.*

Other courts analyzing statutes with a similar "whichever is earlier" provision have reached the same conclusion. Take the Michigan Court of Appeals' unpublished decision in *Bishop & Heintz, P.C. v. Finch*, for example. In reviewing a statute, it noted that it

> provides that a claim for legal malpractice cannot be filed after either (1) the expiration of the applicable statute of limitations, i.e., two years as set forth in MCL 600.5805(6), or (2) six years after the act or omission that forms the basis of the claim, "*whichever is earlier.*" (Emphasis added.) Here, the two-year statute of limitations, not the six-year statute of repose, applies.

*Bishop & Heintz, P.C. v. Finch*, No. 327400, 2016 WL 3749388, at *2 (Mich. Ct. App. July 12, 2016). So too when the Superior Court of Pennsylvania (an intermediate appellate court) discussed one section of a statutory scheme, noting that it "provides, in part:

> If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier."

*Bond v. Gallen*, 292 Pa. Super. 207, 214, 437 A.2d 7, 11 (1981), *aff'd,* 503 Pa. 286, 469 A.2d 556 (1983). It then noted that the "**four year period is a statute of repose**; the two-year period is triggered by an event subsequent to the accident." *Id.* (emphasis added). The Southern District of New York agreed when analyzing another statute, noting that "under Section 13, a suit alleging

that a defendant violated either Section 11 or Section 12(a)(2) must be filed (a) within one year of

the date that the plaintiff discovered the violation, or (b) within three years of the date that the

security was offered to the public, **whichever is earlier**. When differentiating these two time lim-

its, the latter is called the 'statute of repose.'" *Nat'l Credit Union Admin. Bd. v. Morgan Stanley &*

*Co.*, No. 13 CIV. 6705 DLC, 2014 WL 241739, at *4 (S.D.N.Y. Jan. 22, 2014) (emphasis added).

Courts are clear—the "whichever is earlier" language, when married to a longer, absolute time-

bar and a shorter, discovery-based time bar, indicates the presence of one statute of repose and one

statute of limitation.  The plain language of Section 45-1-4(e)(1) clearly sets up the same arrange-

ment.

    Other cases examining similar statutes—even ones that do *not* use the "whichever is ear-

lier" language—have also found that when one period is short and triggered by discovery, and one

period is long and begins to run automatically upon the occurrence of the civil wrong, the first is

a limitations period and the second is a repose period.  For example, the United States Code pro-

vides the following time limits on commencement of civil actions arising under Acts of Congress

that relate to securities fraud:

> "**(b)** Notwithstanding subsection (a), a private right of action that involves a claim
> of fraud, deceit, manipulation, or contrivance in contravention of a regulatory re-
> quirement concerning the securities laws, as defined in section 3(a)(47) of the Se-
> curities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later
> than the earlier of--
> **(1)** 2 years after the discovery of the facts constituting the violation; or
> **(2)** 5 years after such violation."

28 U.S.C.A. § 1658.  And, in that setup, which is structured like Georgia's Whistleblower Statute,

multiple courts have accurately referred to the five-year period as a statute of repose.  *See, e.g.*

*Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 403 (2d Cir. 2016), *as amended*

(Apr. 29, 2016) ("Thus, the statutes of repose contained in § 1658(b) and Section 9(f) both purport to apply to Section 9(f), but prescribe different periods of time.").

In fact, other courts applying whistleblower statutes themselves show an important point: that contrary to Plaintiff's theory of how accrual works, statutes of repose in the whistleblower context run from when the retaliation occurs. In the Dodd-Frank context, a clause providing that "[a]n action under this subsection may not be brought more than 6 years after the date on which the violation of subparagraph (A) occurred" is a statute of repose. *Igwe v. City of Miami*, No. 1:15-CV-21603, 2016 WL 7671370, at *4 (S.D. Fla. Sept. 29, 2016). A separate provision in that same law provided a different, shorter period based on discovery. *See id.* But once again, this whistleblower precedent (which relies on a Supreme Court decision, no less) undermines Plaintiff's theory that a time limitation can only be a statute of repose if its commencement and ending are unrelated to the date that the alleged civil wrong is committed. Whether that is the case in a few contexts, like the repose period for a minor's sex-abuse claims, it is definitively *not* how statutes of repose work in the whistleblower context.

Additional statutory context provides yet more reason to read the three-year period referenced in § 45-1-4(e)(1) as a statute of repose. Such context is an appropriate consideration, as the Court of Appeals has previously held that legislative intent and context are key considerations in deciding that a time limitation is a statute of repose. *See Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 468, 627 S.E.2d 90, 94 (2006) (holding that two-year period was statute of repose despite lack of specific language designating it as such, because any other interpretating would generate competing and irreconcilable procedural timelines for two similar types of claims). Interpreting the three-year repose period as a statute of limitations would provide two separate periods within the law that would both be malleable depending on variables like discovery and tolling. The

General Assembly would not have provided two separate dates that could float depending on various accrual doctrines; rather, it provided one date that depended on accrual and one absolute repose period that could not be altered. As the *Trax-Fax* Court showed, because that interpretation is the only one that fits the broader legislative scheme and purpose, it must control.

Further complimenting this scheme, O.C.G.A. § 45-1-4 is a limited waiver of sovereign immunity. *See Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 355, 756 S.E.2d 585, 589 (2014). It must therefore be narrowly construed. *Upshaw v. Columbus Consol. Gov't*, 369 Ga. App. 524, 533, 894 S.E.2d 75, 83 (2023) ("Importantly, 'statutes providing for a waiver of sovereign immunity are in derogation of the common law and thus are to be strictly construed *against* a finding of waiver.'"). It is because of this sovereign immunity principle, for example, that the Georgia Supreme Court held that the ante litem notice deadlines in the Georgia Torts Claim Acts could not be tolled beyond one year, even though not allowing tolling of the ante litem notice might have inequitable results. *See Dep't of Pub. Safety v. Ragsdale*, 308 Ga. 210, 215, 839 S.E.2d 541, 546 (2020)  Thus, reading O.C.G.A. § 45-1-4(e)(1) to contain a three-year statute of repose helps promote the goals of sovereign immunity by providing a firm cut-off date for whistleblower claims that would otherwise be in derogation of ordinary sovereign immunity principles.

Given all of these principles, it is unsurprising that commentators have accurately described Georgia's Whistleblower statute as containing both a statute of limitations (the one-year period, accruing upon discovery) *and* a statute of repose (the inviolable three-year period that is agnostic towards discovery or any other consideration). Those commentators were clear: "Subsections (e) and (f) provide the right of action, jurisdictional limitation, statute of limitations, and remedies for whistleblowers. Actions under the GWA cannot be brought in a magistrate court or state court;

14

they must be brought in superior court. **The statute of limitations is one year after discovery of the retaliation, with a three-year statute of repose.**" Micah Barry, *Ordered into Oblivion: How Courts Have Rendered the Georgia Whistleblower Act Useless, and How to Fix It*, 19 SEATTLE J. FOR SOC. JUST. 121, 125–26 (2020) (citing O.C.G.A. § 45-1-4(e)(1)) (emphasis added). These facts are also why, for instance, the Georgia Court of Appeals has referred to the one-year limitation period in the Whistleblower Act as a "statute of limitations" while declining to refer to the three-year repose period as a "statute of limitations." *See Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 326 Ga. App. 350, 354, 756 S.E.2d 585, 588 (2014) (granting summary judgment on timing grounds).

In response to Defendant's original Motion to Dismiss, Plaintiff offered two primary responses to this argument in prior briefing, aside from trying to pivot to new and different claims that cannot be part of a "renewal." Her first such response was to argue that O.C.G.A. § 45-1-4(e)(1) is simply a statute-of-limitations with two alternate deadlines, citing *Franklin v. Eaves*, 337 Ga. App. 292, 298, 787 S.E.2d 265, 271 (2016).

*Franklin* does not support that conclusion, and it did not expressly hold that O.C.G.A.. § 45-1-4(e)(1) has an alternative one-year or three-year statute of limitations. Rather, a careful review of the case shows that it was focused on the one-year language of O.C.G.A. § 45-1-4(e)(1) and supports Defendant's reading that O.C.G.A. § 45-1-4(e)(1) has a one-year statute-of-limitations tied to discovery and a three-year statute of repose tied to each discrete act of alleged retaliation:

> The Georgia Whistleblower Act ("the Act") provides that a public employee who experiences retaliation in violation of the statute may file a lawsuit "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." OCGA § 45–1–4(e)(1). **The Act's definition of "retaliation," the discovery of which triggers the running of the statute of limitations, includes "the discharge, suspension, or demotion by a public employer of a public employee**

15

**or any other adverse employment action[,]" OCGA § 45–1–4(a)(5), indicating that any discrete adverse employment action can create a cause of action and, upon discovery, trigger the running of the statute of limitations.**

Franklin argues on appeal that her cause of action accrued on October 24, 2012, when her supervisor informed her in a meeting that her job duties of credentialing and credit card reporting had been assigned to another employee. **Therefore, she argues, she timely filed her complaint within one year, on October 11, 2013**. However, the County accurately points out that Franklin did not take this position in the trial court below. Franklin stated in her response to the County's motion for summary judgment that the first adverse employment action against her occurred on August 27, 2012, when her supervisor assigned Franklin's credit card processing duties to another employee.

*Franklin v. Eaves*, 337 Ga. App. 292, 297, 787 S.E.2d 265, 270 (2016). Ultimately, the Court of

Appeals held that there was a fact question that precluded summary judgment as to which of the

claimed acts of retaliation occurred within one year of her filing suit. From the Court's discussion

that "discovery" triggers the "running of the statute of limitations," it can be reasonably inferred

from *Franklin* that since the "statute of limitations" is "triggered" or "tied" to discovery, that the

*Franklin* court was only thinking of the one-year language being tied to discovery. Further, the

Court's factual analysis of whether the claimed events of retaliation occurred within one-year, not

three years, further reinforces the conclusion that the Court of Appeals was looking only at the

one-year provision of O.C.G.A. § 45-1-4(e)(1) as the statute of limitations.

Thus, *Franklin* is consistent with *Tuttle v. Georgia Bd. of Regents of Univ. Sys. of Georgia*

by focusing only on the one-year portion of O.C.G.A. § 45-1-4(e)(1) when discussing the "statute

of limitations" of O.C.G.A. § 45-1-4(e)(1). *See Tuttle v. Georgia Bd. of Regents of Univ. Sys. of*

*Georgia*, 326 Ga. App. 350, 354, 756 S.E.2d 585, 588 (2014) ("Here, Tuttle's cause of action

accrued and the one-year limitation period began to run on June 2, 2009 when Tuttle first discov-

ered the retaliation in question, namely, that his position was to be terminated.") That both *Frank-*

*lin* and *Tuttle* did not expressly address the separate three-year provision of O.C.G.A. § 45-1-

4(e)(1) when analyzing a "statute-of-limitation" issue, suggests that the three-year portion of the statute is something different, a "statute of repose."

Plaintiff's second primary argument in prior briefing (besides attempting to amend and assert new claims) was that because the word "repose" does not appear in the Whistleblower Act, it does not contain a statute of repose. *See* Response at 12 (citing *Robinson v. Boyd,* 288 Ga. 53, 57, 701 S.E.2d 165, 169 (2010)). That argument contradicts drafting principles. While it may be true that some statutes, like the medical malpractice statute-of-repose, include statutory language expressly defining the statute as a statute of repose, cases like *Trax-Fax, Inc. v. Hobba* make clear that it is not necessary for a statute to expressly define itself as a statute of repose in order for that statute to actually be one.

In *Trax-Fax, Inc. v. Hobba*, the Georgia Court of Appeals held that the passage of O.C.G.A. § 34-9-245 created a statute of repose that could be applied retroactively to bar claims for reimbursement of worker's compensation disability benefits paid more than two years prior to the application for reimbursement. 277 Ga. App. 464, 464, 627 S.E.2d 90, 92 (2006). O.C.G.A. § 34-9-245, like O.C.G.A. § 45-1-4(e)(1), is silent as to whether it is a statute-of-limitations or a statute-of-repose. That statute simply reads: "[…] **No claim for reimbursement shall be allowed where the application for reimbursement is filed more than two years from the date such overpayment was made."** O.C.G.A. § 34-9-245. In holding that O.C.G.A. § 34-9-245 was a statute of repose, the Court of Appeals demonstrated that a statute's absence of an express label as a "statute of repose" is not dispositive of whether the statute operates as a statute of repose.

*Coen v. Aptean, Inc.* ("*Coen* I"), a case Plaintiff cited in her Response to Defendant's original Motion to Dismiss, provides a string-cite listing multiple statutes of repose, including:

O.C.G.A. § 9-3-51 (the eight-year statute of repose for construction cases)[6]; O.C.G.A. § 9-3-71(b) (medical malpractice statute of repose); O.C.G.A. § 34-9-245 (worker's compensation disability benefits reimbursement statute of repose); and, O.C.G.A. § 51-1-11 (ten-year products liability statute of repose). *See* (Plaintiff's Response pp. 9-10) (citing *Coen v. Aptean, Inc.* ("*Coen* I"), 346 Ga. App. 815, 826–30, 816 S.E.2d 64, 75–77 (2018), rev'd in part, 307 Ga. 826, 838 S.E.2d 860 (2020) ("*Coen* II"), and opinion vacated in part, 356 Ga. App. 468, 847 S.E.2d 835 (2020) ("*Coen* III")). Notably, only one of the 4 statutes of repose cited in *Coen I* , O.C.G.A. § 9-3-71 (which includes the medical malpractice statue of repose) expressly defines itself to include a "statute of repose." All of the other statutes of repose listed in *Coen* I are determined to be a statute of repose based on how they operate, not how they label themselves. Nor is this principle limited to Georgia law; look above to the national interpretations of similarly worded and similarly situated statutes. The word "repose" is not the indicator that a statute contains a statute of repose; the structure and purpose of the limitation period is. Indeed, no less an authority than the United States Supreme Court has flatly contradicted this type of categorical argument, noting that "the term 'statute of limitations is sometimes used in a less formal way' to refer to 'any provision restricting the time in which a plaintiff bring suit" and noting that "Congress has used the term 'statute of limitations' when enacting statutes of repose." *CTS Corp. v. Waldburger*, 573 U.S. 1, 13 (2014).

In sum, the Georgia Whistleblower Statute's text, analogous federal statutes, Georgia interpretive principles, and sovereign immunity doctrines all show that the Whistleblower Statute contains a one-year statute of limitations and a three-year statute of repose.

---

[6] *See Fort Oglethorpe Associates II, Ltd. v. Hails Const. Co. of Georgia*, 196 Ga. App. 663, 664, 396 S.E.2d 585, 587 (1990) (recognizing O.C.G.A. § 9-3-51 as a statute of repose).

**3.   Applying the Law to Plaintiff's Allegations of Fact Requires Dismissal of Plaintiff's Renewal Action.**

On the face of Plaintiff's Complaint, the Court may conclude that all of Plaintiff's renewal claims in the Renewal Action are barred by O.C.G.A. § 45-1-4(e)(1)'s three-year statute of repose. In this Renewal Action, as in the Original Action, Plaintiff alleges multiple discrete actions of whistleblower retaliation, including her May 2020 reassignment from "Chief of Schools" to a "Senior Grant Writer" position, *see* (Complaint, Renewal Action, ¶¶ 12, 32, 35, 37) and her May 2021 reassignment from "Senior Grant Writer" to "Grant Writer," *see* (Complaint, Original Action ¶38). In Paragraph 38 of the Renewal Action, Dr. Garcia Wilder does not specifically allege which day in May 2021 that she was "further demoted," so construing the allegation in the manner most favorable to her would put the latest date of alleged retaliation on **May 31, 2021.** Three years after May 31, 2021, is May 31, 2024.

On October 8, 2024, Plaintiff Garcia-Wilder this Renewal Action seeking to renew the Original Action pursuant to O.C.G.A. § 9-2-61. **October 8, 2024**, is well after **May 31, 2021**, and the Renewal Action is barred by the application of O.C.G.A. § 45-1-4(e)(1)'s three-year statute of repose.

**B.   Because the renewal fails, any allegedly timely claims appended to the invalid renewal action also fail.**

In her Response to the first Motion to Dismiss, Plaintiff suggested that the allegations in Paragraph 42 of her first complaint in this attempted Renewal Action, which were not present in her original case, constitute a "new cause of action" that survives Defendant's Motion to Dismiss. *See* (Defendant's Response).  Plaintiff's Amended complaint goes further than Paragraph 42 of the first complaint in the Renewal Action by expressly adding a whole new cause of action, a 42

U.S.C. § 1981 claim, and allegations of specific factual occurrences that were not included in the

Original Action or even in Paragraph 42 of the first complaint in this attempted renewal Action.

"To be a valid renewal of an original suit, so as to suspend the running of the statute of

limitation, the new petition must be substantially the same as the original as to the essential par-

ties." *Allstate Ins. Co. v. Baldwin*, 244 .Ga. App. 664, 665, 536 S.E.2d 558, 559 (2000) (holding

that attempted renewal action was not valid by trying to name new parties). As further explained

by the Georgia Court of Appeals, the renewal suit must not only involve the same "essential par-

ties" but also the "same cause of action:"

> It is well settled that, in order to show the right to renew the suit within six months
> after the dismissal of a prior suit on the same cause of action, when such right is
> relied upon to relieve the plaintiff of the bar of the statute of limitation, it is neces-
> sary for the renewal petition to *show affirmatively* that the former petition was not
> a void suit, that it is such a valid suit as may be renewed under OCGA § 9-2-61,
> that it is based upon substantially the same cause of action, and that it is not a re-
> newal of a previous action which was dismissed on its merits so that the dismissal
> would act as a bar to the rebringing of the petition.

*Whitesell v. Georgia Power Co.,* 341 Ga. App. 279, 281, 800 S.E.2d 370, 371 (2017) (emphasis

added). By arguing in her response that Paragraph 42 of Plaintiff's Complaint contains a wholly

new cause of action, Plaintiff reveals that her Renewal Action is not a valid Renewal Action and

it could be dismissed on that alternative basis. The attempted amendment and supplemental claims

in the March 12, 2025 Amended Complaint only compound this problem.

While a Renewal Complaint may include some factual matter beyond that alleged in the

original complaint "such as alleging the facts necessary for renewal under OCGA § 9-2-61," *see*

*e.g. Strickland v. Geico Gen. Ins. Co.,* 358 Ga. App. 158, 161, 854 S.E.2d 348, 351 (2021),[7] adding

---

[7] *See cf. Coen v. Aptean, Inc.* ("*Coen III*")*,* 356 Ga. App. 468, 471, 847 S.E.2d 835, 839 (2020)
("The relevant inquiry is whether the causes of action asserted in the original and renewal suits
were substantially the same. [...] Coen's request for punitive damages was not a separate and

20

wholly new claims is not permissible. *See Whitesell v. Georgia Power Co.,* 341 Ga. App. 279, 281, 800 S.E.2d 370, 371 (2017); *also, e.g. Ward v. Dodson,* 256 Ga. App. 660, 661, 569 S.E.2d 554, 557 (2002) (holding that plaintiff could not add official capacity claim to a renewal suit when the original suit only named the defendant in his individual capacity). While *Allstate* recognizes the possibility that a Court may consider the amendment and relation back provisions of O.C.G.A. § 9-11-15(c) and 9-11-21 in a <u>valid</u> renewal action, it may not consider these rules at all when there is no "valid action pending*." Allstate Ins. Co. v. Baldwin,* 244 Ga. App. 664, 666, 536 S.E.2d 558, 560 (2000). Indeed, when an attempted renewal suit is "invalid" and does not meet the requirements of O.C.G.A. § 9-2-61(a), the Court lacks jurisdiction to hear the case and it is as if the case does not exist. *Aiken Dermatology & Skin Cancer Clinic, P.A. v. DavLong Sys., Inc.,* 314 Ga. App. 699, 702, 725 S.E.2d 835, 838 (2012) (holding that renewal suit that was invalid for failure to pay costs was not a pending suit that could result in the dismissal of a second, attempted renewal suit on the basis that the second renewal suit was simultaneous action barred by O.C.G.A. § 9-2-44)).

As explained in Defendant's Original Motion and in this Motion to Dismiss Amended Complaint, Plaintiff's attempted renewal action of October 8, 2024, was an invalid renewal action as being barred by the three-year statute of repose set forth in O.C.G.A. § 45-1-4(e)(1). So, no amendments or supplements to the Renewal Action to add new claims are permissible, because the Renewal Action is void. See *Allstate Ins. Co. v. Baldwin,* 244 Ga. App. 664, 666, 536 S.E.2d 558, 560 (2000).[8]

---

independent cause of action […] Consequently, Coen did not add a new cause of action based on a new theory of recovery by requesting punitive damages for the first time in the renewal suit")

[8] Plaintiff's allegations in Paragraphs 48 and 65 concerning a failure to be interviewed for a new position with the District "in late October 2024," events occurring after the October 8, 2024 Complaint in this renewal action constitute more than just an attempted amendment, but a

If Plaintiff thinks she has a new claim that can be timely asserted against the School District, she can attempt to do so in a new lawsuit. But, she cannot seek to include her original claims that were voluntarily dismissed and not timely and properly renewed pursuant to O.C.G.A. § 9-2-61. And she cannot use a void renewal suit as an anchor onto which she engrafts those claims.

### C. Plaintiff has failed to state a claim under Section 1981.

Count II of Plaintiff's Amended Complaint also fails to state a claim under 42 U.S.C. § 1981 for several reasons. First, for the same reasons above in Section II.B, the renewal suit is invalid, so there is no viable case for this new 42 U.S.C. § 1981 claim to be added to by amendment. Second, procedural defenses aside, the claim fails as a matter of law because Plaintiff has not alleged that she was seeking to prevent the impairment of contractual rights between the School District and its students. As a matter of law, no such contractual rights exist, as the relationship of students and a public school district is not contractual in nature. Finally, even if the Section 1981 claim were fully cognizable, claims regarding any acts of retaliation prior to March 12, 2021 would be untimely.

### 1. These claims cannot be affixed to an invalid renewal action.

The School District restates and reincorporates its argument from Section II.B. The renewal action centers on claims that the statute of repose bars. Any "new cause of action," whether different whistleblower claims (as admitted in Plaintiff's <u>Response</u>) or under Section 1981 (as

---

"supplemental pleading" under O.C.G.A. § 9-11-15(d) because they "set[] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." If there were a valid renewal action for these supplemental claims could attach, Court approval would be needed before such supplemental pleadings could be added to the case. *See Tyson v. McPhail Properties, Inc.*, 223 Ga. App. 683, 685, 478 S.E.2d 467, 469 (1996) ("Unlike an amended pleading that a party may unilaterally file at any time prior to the entry of a pre-trial order, a party does not have the right to unilaterally file supplemental pleadings.")

provided in the Amended Renewed Complaint) cannot attach to such a fatally flawed vehicle. Even if they would be independently cognizable in their own suit, such claims cannot be affixed to this renewal action, which is void from its initiation.

2. **Plaintiff does not identify an impaired contractual relationship that she allegedly defended.**

Plaintiff's Section 1981 claim must be dismissed because she has failed to identify any contractual right of any person *on whose behalf she advocated*, removing her claim from the Section 1981 rubric. Plaintiff does not claim that her contract rights were impaired because of *her* race; rather, she claims that her contract rights were impaired because she advocated for other people (in this case, students) based on *their* race. *See (Amended Complaint*, ¶¶ 58-59) (describing Garcia-Wilder's alleged complaints about alleged disproportionate or improper treatment of Black students). Section 1981 can, in some cases, support the claim of a person who advocates for a third party that has been racially targeted. But critically, Section 1981 only provides that remedy when (1) the claimant sees a contractual right impaired; *and* (2) she was advocating on behalf of another *who had a contractual right impaired based on race*. Because Garcia-Wilder does not meet the second part of that test, her Section 1981 claim fails as pleaded.

The Tenth Circuit Court of Appeals has demonstrated how this analysis works. It affirmed dismissal of a case where a HOA member reported an "incident of hazardous environmental exposure to an African–American employee of Shamrock Landscaping ('Shamrock'), a company that was performing landscaping work at the Islands." *Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. App'x 411, 412–13 (10th Cir. 2014). That HOA member then suffered several alleged adverse action from the HOA. *Id.* But the Tenth Circuit noted that the complaint did not identify "an impaired contractual relationship, . . . or even allege a contractual relationship between

the African-American employee and defendants." *Id.* at 414 (some internal quotations and citations omitted). As it noted, "[s]uch facts are necessary to demonstrate that Muller engaged in protected opposition to race-based discrimination—that is, that Muller was retaliated against for complaining about the violation of another person's contract-related right." *Id.* So even taking as true that the homeowner spoke up for a Black man who had been tortiously wronged by the defendant, because he was not *contractually* wronged, Section 1981 was not an available remedy for relief, even in the retaliation context.

A District Court case is even more on point. In *Rodriguez v. International Leadership Charter School*, a teacher claimed she was fired because she complained about "sub-par educational services" provided to students with disabilities and non-native English speakers. *Rodriguez v. Int'l Leadership Charter Sch.*, No. 08 CIV. 1012 (PAC), 2009 WL 860622, at *1 (S.D.N.Y. Mar. 30, 2009). The District Court made short work of that claim (and many others), noting that "Rodriguez[] does not allege that Defendants violated her students' contract-related rights because of the students' race or national origin. She is bringing a claim related to her own employment." *Rodriguez v. Int'l Leadership Charter Sch.*, No. 08 CIV. 1012 (PAC), 2009 WL 860622, at *6 (S.D.N.Y. Mar. 30, 2009). Even under a more liberal standard in which a complaint about a student's impaired *contract* right could support a cause of action, *Rodriguez* demonstrates that a teacher complaining about students' treatment simply does not touch such an issue. *Id. See also, e.g., Blythe v. City of New York*, 963 F. Supp. 2d 158, 177 (E.D.N.Y. 2013) ("Plaintiff's campaign statements regarding what she perceived as disparate treatment of African American students and parents was not protected activity for the same reason—plaintiff neither alleged, nor presented any evidence, that she complained that any disparate treatment infringed students' or parents' contract rights based on race. Perceived racial discrimination is not "protected" under § 1981 if it did not

24

impair such students' rights to enter into contracts or rights under any existing contractual relationships.") (internal quotation marks omitted); *see also Eugenio v. Walder*, No. 06-CV-4928(CS)(GAY), 2009 WL 1904526, at *13 (S.D.N.Y. July 2, 2009) ("There is no contractual relationship between P.S. 29's students and the school or the District, and therefore, Defendants' Motions for Summary Judgement should be granted as to Plaintiffs' Section 1981 retaliation claim.").

Those principles govern here. Unlike a college student or some private-school students, there is no arguable contractual relationship between a public-school student and the School District. *See, e.g., Eugenio*, 2009 WL 1904526, at *13. Indeed, if there were, the District would be sued under a breach-of-contract theory every time a student brought suit against it (in order to defeat applicable sovereign immunity bars). Accordingly, Dr. Garcia-Wilder has affirmatively pleaded facts that destroy any Section 1981 claim. She has made clear that the student rights she allegedly stood up for were not contract-based; they were the ordinary *statutory* rights that students enjoy to public schooling. She does "not identify an impaired contractual relationship, . . . or even allege a contractual relationship between the African-American [student] and defendants." *Muller*, 564 F. App'x at 414. Section 1981—which was designed *only* to address contract claims—is not an appropriate vehicle for her claims, and they must accordingly be dismissed.

### 3. Any claims arising from acts before March 12, 2021 (at a minimum) are untimely and should be dismissed.

Plaintiff has filed suit against the School District, which is a state actor. Accordingly, his Section 1981 suit can only be brought through the procedural vehicle of 42 U.SC Section 1983. And Section 1983 has, at most, a four-year statute of limitations. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008) (describing debate between two-year and four-year

period and siding with four-year period for retaliation claims); *see also, e.g., Taylor v. Bd. of Reg. of Univ. Sys. of Ga.*, No. 1:19-cv-03749-AT-RDC, 2021 WL 12300715, at *16 (N.D. Ga. Aug. 2, 2021) (applying two-year period).

Because Plaintiff has never asserted any Section 1981 or 1983 claim prior to March 12, 2025, and because she has not articulated any reason that the statute of limitations for such a claim would be tolled, any claims based on events that occurred prior to March 12, 2021, are time-barred. Discovery may further reveal information showing that the two-year statute applies.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's renewal action should be ***DISMISSED*** as violating Section 45-1-4(c)(1)'s three-year statute of repose. Any additional whistleblower claims that were *not* part of the original suit should be dismissed because the underlying renewal claim is invalid, even if those claims could theoretically be brought in separate proceedings. And any Section 1981 claims should be barred for the same reasons, and also because Plaintiff has not identified any impaired contractual right of the students for whom she allegedly advocated.

RESPECTFULLY SUBMITTED THIS 27th DAY OF MARCH, 2025.

BOUHAN FALLIGANT LLP

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

/s/Lucas D. Bradley
LUCAS D. BRADLEY
Georgia State Bar No. 672136

/s/Andrew H. Dekle
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant Savannah-Chatham
County Public School System*

26

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by United States Mail with proper postage affixed as follows, with additional copy by email:

S. Wesley Woolf, Esq.
**Woolf Law**
2905 Bull Street
Savannah, Georgia 31405
woolf@woolflawfirm.net

Matthew C. Billips, Esq.
**Barrett & Farahany**
3344 Peachtree Rd., NE Suite 800
Atlanta, GA 30326
matt@justiceatwork.com

RESPECTFULLY SUBMITTED THIS 27th DAY OF MARCH, 2025.

BOUHAN FALLIGANT LLP

Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

/s/Lucas D. Bradley
LUCAS D. BRADLEY
Georgia State Bar No. 672136

/s/Andrew H. Dekle
ANDREW H. DEKLE
Georgia State Bar No. 847828
*Attorneys for Defendant Savannah-Chatham*
*County Public School System*

*Shelia Garcia-Wilder v. Savannah-Chatham County Public School District*
Superior Court of Chatham County, Georgia
Civil Action No. SPCV24-01173

27

SPCV24-01173-MO

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 4/3/2025 4:51 PM
Reviewer: DH

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

SHELIA GARCIA-WILDER,                    :
                                         :
        Plaintiff,                       :
                                         :
vs.                                      :        CIVIL ACTION NO.
                                         :        SPCV24-01173-MO
SAVANNAH-CHATHAM COUNTY                  :
PUBLIC SCHOOL DISTRICT,                  :
                                         :
        Defendant.                       :
_____         :

## PLANTIFF'S SUR-REPLY IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

COMES NOW PLAINTIFF, Shelia Garcia-Wilder, and files this Plaintiff's Sur-reply in Opposition to Defendant's Motion to Dismiss. In its Reply Brief in Support of Motion to Dismiss Renewal Suit (Reply), Defendant repeats arguments already offered in support of its Motion focusing on one case from the Georgia Court of Appeals. Defendant further argues that Plaintiff "has sought to amend" the Complaint to add a new act of retaliation and a cause of action under 42 U.S.C. § 1981 and that such amendments are "invalid" because the renewal suit is not limited to the same cause of action as the original action. Plaintiff's renewal action survives Defendant's motion to dismiss and both with her Response and this Sur-reply, Plaintiff demonstrates the error of Defendant's arguments below, as follows:

## I. ARGUMENT AND CITATION OF AUTHORITY

### A. The GWA Statute of Limitations Does not Comport with Supreme Court of Georgia Markers for Determining Statutes of Repose.

The limitations period in the Georgia Whistleblower Act (GWA) is a statute of limitations. The Supreme Court of Georgia is the final arbiter of whether a limitations period is a statute of

1

repose and the Supreme Court of Georgia has described the GWA limitation period only as a statute of limitations. West v. City of Albany, 300 Ga. 743, 748–49, 797 S.E.2d 809, 814 (2017) (a "carefully crafted statute of limitation").[1]

The GWA nowhere describes its limitations period as a statute of repose, but that is not the only indicator of whether the statute's limitations period is a statute of limitations and not a statute of repose. Defendant has shifted its argument, as it first argued that the GWA had a limitations period of one year and a "separate deadline that is not based on accrual" of the cause of action. Motion, p. 8, citing Wright v. Robinson, 262 Ga. 844, 846(1), 426 S.E.2d 870 (1993). As pointed out in Plaintiff's Response, the plain terms of the GWA limitation period have that limitations period running three years from exactly what gave rise to the cause of action – the retaliation. Plainly, both GWA limitations periods are based on the date the cause of action accrued. The Wright case was the centerpiece of Defendant's Motion argument, but it is nowhere to be found in its Reply. Defendants were for it before they were against it.

The Supreme Court has set the mark:

A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose

---

[1] In Coen v. Aptean, Inc., 346 Ga. App. 815, 816 S.E.2d 64 (2018), rev'd in part, 307 Ga. 826, 838 S.E.2d 860 (2020), and opinion vacated in part, 356 Ga. App. 468, 847 S.E.2d 835 (2020), the Georgia Court of Appeals applied the definitive Supreme Court case of Simmons v. Sonyika, 279 Ga. 378, 379, 614 S.E.2d 27 (2005), disapproved on other grounds by Golden v. Floyd Healthcare Mgmt., Inc., 319 Ga. 496, 904 S.E.2d 359 (2024), citing as persuasive authority prior judicial reference to limitation periods as "statutes of limitation":

Applying these principles, we conclude that OCGA § 51-7-84(b) is a statute of limitation rather than a statute of repose. Indeed, several prior cases of this Court have referred to OCGA § 51-7-84(b) as a statute of limitation. See Land v. Boone, 265 Ga. App. 551, 552, 594 S.E.2d 741 (2004) ("An action for frivolous litigation has only a one-year statute of limitation ...."); Wilson v. Hinely, 259 Ga. App. 615, 616, 578 S.E.2d 254 (2003) (referring to "one-year statute of limitation" for statutory abusive litigation claims); Nairon v. Land, 242 Ga. App. 259, 261 (1), 529 S.E.2d 390 (2000) (referring to OCGA § 51-7-84(b) as "statute of limitation"). And, we discern no reason for construing OCGA § 51-7-8(b) differently here, *given the language of the statute compared to other Georgia statutes of limitation and statutes of repose.*

Coen v. Aptean, Inc., 346 Ga. App. 815, 826–30, 816 S.E.2d 64, 75–77 (2018)(emphasis supplied).

delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable.

Simmons v. Sonyika, 279 Ga. 378, at 379, 614 S.E.2d 27 (2005).[2] In express terms, the GWA limits the time in which a party may bring an action for a right which has already accrued.

The argument for the Wright case accrual-based definition of a statute of repose having been abandoned by Defendant, Defendant seeks refuge in the Court of Appeals decision in Trax-Fax v. Hobba, 277 Ga. App. 464, 467-470 (2) (a), 627 S.E.2d 90 (2006). In almost 20 years, Trax-Fax has been cited by the Georgia Supreme Court only once, and then for a proposition unrelated to the interpretation of limitations periods. Further, in its 2018 Coen decision, the Court of Appeals references *Trax-Fax* as authority for the proposition that a statute of repose in Georgia is indicated by "'similar prohibitive language' to other statutes of repose." Coen, 346 Ga. App. at 826–30, 816 S.E.2d at 75–77. Indeed, in reaching its decision in *Trax-Fax*, the Court of Appeals italicized its emphasis on the (workers compensation) statutory prohibitive language "*no claim for reimbursement shall be allowed.*"[3] Trax-Fax, 277 Ga. App. at 467, 627 S.E.2d at 94 (emphasis in

---

[2] As articulated in Plaintiff's Response, the Coen court continued:

> Georgia statutes of limitation commonly contain language stating that a claim "shall be brought" within a certain time period after the right has accrued. See, e.g., OCGA §§ 9-3-22 ("All actions for the enforcement of rights accruing to individuals under statutes or acts of incorporation or by operation of law shall be brought within 20 years after the right of action has accrued ...."); 9-3-24 ("All actions upon simple contracts in writing shall be brought within six years after the same become due and payable. ..."); 9-3-31 ("Actions for injuries to personalty shall be brought within four years after the right of action accrues."); 9-3-33 ("Except as otherwise provided in this article, actions for injuries to the person shall be brought within two years after the right of action accrues ...."). OCGA § 51-7-84(b) contains language similar to these statutes, stating that an abusive litigation claim "must be brought within one year of the date of final termination" of the underlying proceeding, i.e., within one year of when the right accrues.

Coen v. Aptean, Inc., 346 Ga. App. 815, 826–30, 816 S.E.2d 64, 75–77 (2018).

[3] The statute reads in full, as follows: "Should the board find that a claimant has received an overpayment of income benefits from the employer, for any reason, the board shall have the authority to order repayment on terms acceptable to the parties or within the discretion of the board. **No claim** for reimbursement **shall be allowed** where the application for reimbursement is filed more than two years from the date such overpayment was made." O.C.G.A. §34-9-245.

original). As Plaintiff's Response sets forth, Georgia's statutes of repose consistently use such language and the GWA has no such prohibitive language whatsoever. Plaintiff's Response, pp. 10-12.

Plaintiff need not argue that a statute of repose reveal itself with the words "statute of repose." Notwithstanding Defendant's substantial commitment to the argument, the conclusion that such express language is not required is obvious. The Supreme Court of Georgia has identified the markers indicating a state of repose, <u>Simmons</u>, 279 Ga. at 379, 614 S.E.2d 27 (2005),[4] and, applying those definitional factors, the GWA provides no indication that Georgia courts should interpret its limitations period as – and no indication that the General Assembly intended to create – a statute of repose. Defendant's Motion to Dismiss should be denied.

**B. A Plaintiff in a Renewal Action May Pursue Additional Claims Filed Within the Statute of Limitations Applicable to Those Claims**.

Defendant complains that Plaintiff has amended her Complaint, offering for authority cases in which the survival of the amendment requires relation-back of the limitations period for the new claims to the original action. See Defendant's Reply, pp. 12-14. Georgia's renewal cases are replete with restatements of the law that the renewed action and parties thereto must be substantially the same, but a statement of the law more complete and accurate than that offered by Defendant is that:

> A "properly filed renewal action stands on the same footing as the original action with respect to statutes of limitation." <u>Coen v. Aptean, Inc.</u>, 356 Ga. App. 468, 470 (1), 847 S.E.2d 835 (2020). Thus, "if a renewal action is properly filed within six months after dismissal of the original action, it remains viable even though the statute of limitation may have expired.' (Citation and punctuation omitted.) <u>Id</u>. See OCGA § 9-2-61 ("[w]hen any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or a federal court either within the applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later"). *If the statute of limitation has not*

---

[4] See Plaintiff's Response, pp. 9-11.

4

> *run, the plaintiff 'may add new parties and new claims to the refiled action;*
> however, if the statute of limitation has expired, the plaintiff is limited to suing the
> same defendants under the same theories of recovery.' Ward v. Dodson, 256 Ga.
> App. 660, 661, 569 S.E.2d 554 (2002). If the statute of limitation has run, the new
> complaint must be "substantially the same as the original as to the essential parties.
> The renewal statute may not be used to suspend the running of the statute of
> limitation as to defendants different from those originally sued." Id.

Green v. Dep't of Corr., 365 Ga. App. 592, 595, 879 S.E.2d 679, 683 (2022) (emphasis supplied).

Plaintiff's additional claims do not rely on any relation-back to the original action, as the statute

of limitations has not run; nor does Defendant argue that the limitations periods for those claims

have run.

Defendants cite Allstate Ins. Co. v. Baldwin, 244 Ga. App. 664, 536 S.E.2d 558 (2000) for

the proposition that this Court's "authority to allow amendments to pleadings presupposes the

existence of a valid action." Id., at 666. But the plaintiff in Baldwin sought to add a new party to

the renewal action and take advantage of the statute of limitation applicable to the originally-filed

action. Indeed, the plaintiff in Baldwin omitted from the renewal action the party to the original

action, thereby failing to sue the substantially same parties as required by the renewal statute. Id.

at 665. The Baldwin court predictably held, consistent with Green and Ward, supra, that the

renewal statute may not be used to suspend the running of the statute of limitation as to defendants

different from those originally sued. Baldwin, 244 Ga. App. at 665, 536 S.E.2d at 559. Defendant's

offer of Aiken Dermatology & Skin Cancer Clinic, P.A. v. DavLong Sys., Inc., 314 Ga. App. 699,

725 S.E.2d 835 (2012) is the same in that the determination of whether a renewal claim is valid is

focused on the status of the original action when voluntarily dismissed. In Aiken Dermatology,

the action was not considered valid because costs of the previous action were not paid.

Further, in Whitesell v. Georgia Power Co., 341 Ga. App. 279, 280–81, 800 S.E.2d 370, 371

(2017), another case cited by Defendants, the Court noted that it is well-settled that the pleadings

of the renewal action must "*show affirmatively*" that the former action was a valid suit based upon

substantially the same cause of action that had not been dismissed on the merits. Whitesell, 341

Ga. App. at 281, 800 S.E.2d at 372 (emphasis in original). The plaintiff amended the renewal

action and the matter was adjudicated on the amended renewal complaint. The minimal nature of

the Whitesell plaintiff's amendment of the language of the renewal action[5] was deemed

"insufficient" and the amended renewal action was dismissed. The focus of the Whitesell court

adjudging the validity of the renewal action was "clarity with regard to pleading requirements for

filing for a renewal suit." Id.

The renewal statute provides:

> When any case has been commenced . . . within the applicable statute of limitations
> and the plaintiff discontinues or dismisses the same, it may be recommenced in a
> court of this state or in a federal court either within the original applicable period
> of limitations or within six months after the discontinuance or dismissal, whichever
> is later ...; provided, however, if the dismissal or discontinuance occurs after the
> expiration of the applicable period of limitation, this privilege of renewal shall be
> exercised only once.

OCGA § 9-2-61 (a).

The focus of Georgia's appellate courts in determining whether a valid renewal action has

been filed is the renewal statute itself, as demonstrated by the authorities offered by Defendant and

Plaintiff. The inquiry is a pleading inquiry. As demonstrated above with respect to Defendant's

own proffered authority, Plaintiff followed the pleading and other requirements of the renewal

statute to a "t," meticulously documenting every provision thereof and every provision of the case

law underlying the statute. See Plaintiff's original renewed Complaint, ¶¶ 1-7 (with exhibits). The

---

[5] "The amended language, however, failed to cure the defect in a manner which complies with the requirements set out by case law. Instead, the amended complaint simply stated: 'This is a renewal action against the Defendant Georgia Power pursuant to OCGA § 9-2-61. This lawsuit was originally filed in Lowndes County, Georgia, under Civil Action # 2013CV2462." Whitesell, 341 Ga. App. at 281, 800 S.E.2d at 372.

Complaint and Amended Complaint affirmatively conform to every pleading requirement of the statute and case law. And Defendant does not contend otherwise.

Defendant's argument in this regard ignores the critical limitation of the authorities offered by both parties. In those cases, the statute of limitations had run as to the new claims or parties amended into the case. In this case, by contrast, the new claims raised by Plaintiff have their own independent statute of limitations that had not expired as of the date the Complaint was amended. Thus, the amendment is proper and there is no basis on which to grant Defendant's motion to dismiss those claims.

> An examination of the rulings of this court on the act of 1847, substantially re-enacted on this point by the act of 1856--Acts of 1856, p. 237, convinces us that this court has gone great lengths in permitting the renewal of suits within six months, so as not to be barred, if the original suit was not barred, so as to extend the provisions to almost any case where the suit was dismissed not on its merits. See 27 Ga. 372; 13 *Ib.* 55, 306; 32 *Ib.* 435, 448; 60 *Ib.* 628, 629, 631; 48 *Ib.* 362." This statement as to liberal construction has been repeated in several later decisions dealing with the language as now contained in the Code.

Clark v. Newsome, 180 Ga. 97, 100-101, 178 S.E. 386, 387 (1935). Had this case not been dismissed and renewed, no one could credibly argue that Plaintiff would be prevented from adding these new claims by amendment. The fact that this is a renewal action does not limit Plaintiff's right to add claims other than those claims where the limitations period had expired and which would have required relying on the renewal action to toll them. This is not that case here.

## II. CONCLUSION

Plaintiff has filed a valid renewal action, including amendments allowed by law.[6] The GWA does not purport to contain a statute of repose, and the straightforward definitional guide

---

[6] Defendant offers Plaintiff the opportunity of filing additional lawsuits, Defendant's Reply, p. 16, whereupon it will surely raise the "general rule" confronted by the court in Aiken Dermatology, causing dismissal of the later-filed lawsuit when "two lawsuits involving the same cause of action and the same parties that were filed at different times[.] Aiken Dermatology, 314 Ga. App. at 703, 725 S.E.2d at 839.

from the Supreme Court of Georgia in <u>Simmons</u> and from the Court of Appeals in <u>Coen</u> direct this

Court to conclude that the GWA limitations period is a statute of limitation. Defendant's arguments

avoid those guidelines entirely and otherwise miss the mark. Again in its Reply, Defendant reaches

to out-of-state authority – Michigan, Pennsylvania, New York – for authority in an idiosyncratic

area of Georgia law. No terms commonly used by the Georgia legislature to indicate a statute of

repose are found in the GWA limitations provision; and Defendant offers no comparable statute

in the state of Georgia that uses the language of the GWA limitations period for creating a statute

of repose. "The renewal statute is remedial in nature [and] is construed liberally to allow renewal."

<u>Hobbs v. Arthur</u>, 264 Ga. 359, 360 (1), 444 S.E.2d 322 (1994). Dr. Garcia-Wilder's injury occurred

within the GWA statute of limitations and the renewal statute does not bar her renewal action,

either as originally filed or amended. For all the reasons explained below, the GWA does not

include a statute of repose and cannot be interpreted as containing one, and Defendant's Motion

to Dismiss should therefore be denied.

     RESPECTFULLY SUBMITTED this 3rd day of April, 2025.

**WOOLF LAW**

                    */s/ S. Wesley Woolf*
                    S. Wesley Woolf
                    Georgia Bar No. 776175
                    *Counsel for Plaintiff*

**WOOLF LAW**
2509 Bull Street
Savannah, Georgia 31405
T: (912) 201-3696
F: (912) 201-3699
woolf@woolflawfirm.net

[signatures continued on next page]

8

**BARRETT & FARAHANY**

/s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
*Counsel for Plaintiff*

**BARRETT & FARAHANY**
3344 Peachtree Rd., NE
Suite 800
Atlanta, GA 30326
(470) 284-7265
matt@justiceatwork.com

9

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served a true and correct copy of the foregoing on

the following counsel of record by same day electronic mail as follows:

LUCAS D. BRADLEY
ANDREW H. DEKLE
**BOUHAN FALLIGANT LLP**
Post Office Box 2139
Savannah, Georgia 31402
Telephone: (912) 232-7000
Telefax: (912) 233-0811
ldbradley@bouhan.com
ahdekle@bouhan.com

This 3rd day of April, 2025.

**WOOLF LAW**

*/s/ S. Wesley Woolf*
S. Wesley Woolf
Georgia Bar No. 776175
*Counsel for Plaintiff*

10

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 4/10/2025 11:19 AM
Reviewer: KW

**IN THE SUPERIOR COURT OF CHATHAM COUNTY**
**STATE OF GEORGIA**

SHELIA GARCIA-WILDER,               )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )        CIVIL ACTION NO.
                                     )        SPCV24-01173-MO
SAVANNAH-CHATHAM COUNTY              )
PUBLIC SCHOOL DISTRICT,              )
                                     )
        Defendant.                   )

**RESPONSE TO MOTION TO STRIKE DEFENDANT'S REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS RENEWAL SUIT, OR IN THE ALTERNATIVE FOR LEAVE
TO FILE SUR-REPLY BRIEF**

COMES NOW The Savannah-Chatham County Public School District, Defendant in the
above-captioned matter, and files this Response to Motion to Strike Defendant's Reply Brief in
Support of Motion to Dismiss Renewal Suit, or, in the Alternative for Leave to File Sur-Reply
Brief, showing this Honorable Court as follows:

**I. Procedural Posture**

On December 10, 2024, Defendant filed its Motion to Dismiss Renewal Suit.  On
December 20, 2024, the parties stipulated that Plaintiff may have until February 10, 2025, to file
a response, which Plaintiff did.  The February 10, 2025 Response was served by electronic mail.
*See* (February 10, 2025 Response in Opposition to Defendant's Motion to Dismiss, p. 16)
(certifying service by "same day electronic mail").

On March 12, 2025, Plaintiff filed her Amended Complaint.

On Monday, March 17, 2025, Defendant filed its Reply Brief in Support of Motion to
Dismiss Renewal Suit.

1

On March 20, 2025, Plaintiff filed her Motion to Strike Defendant's Reply in Support of Motion to Dismiss Renewal Suit or, in the Alternative, for Leave to File Sur-Reply in Support of Plaintiff's Response to Defendant's Motion to Dismiss Renewal Suit. In that Motion to Strike, she requests either that the Court strike Defendant's <u>Reply brief for being purportedly untimely *or* to allow her to file a Sur-Reply.</u>

On April 3, 2025, Plaintiff filed her Sur-Reply in Opposition to Defendant's Motion to Dismiss, before any ruling on Plaintiff's March 20, 2025 Motion. Defendant has no procedural objection to the filing of this April 3, 2025 Sur-Reply Brief. It does not concede the merits of the arguments therein, and it refers to the arguments made in its own Motions and Reply Brief seeking to dismiss Plaintiff's Complaint and Amended Complaint.

## II. Argument and Citation of Authority.

Plaintiff's Motion to Strike Defendant's March 17, 2025 Reply Brief should be denied, and the Defendant's March 17, 2025 Reply Brief may be properly considered because it was filed before any ruling on Defendant's related December 10, 2024 Motion to Dismiss. For the same reason, Plaintiff has no procedural objection to the Court's consideration of Plaintiff's April 3, 2025 Sur-Reply Brief.

Defendant agrees with Plaintiff that neither the Civil Practice Act nor the Uniform Rules of Superior Court expressly provide direction regarding a movant filing a reply brief or sur-reply in support of their original motion. The Superior Court of Dekalb County previously rejected a motion to strike a movant's reply brief in support of a motion for summary judgment, explaining: "Code Section 9-11-56 and Georgia Uniform Superior Court Rules 6.2 and 6.5 *do not prohibit* the filing of a reply brief. It is a standard practice in the State courts for the moving party to file a reply brief (and to be allowed an oral reply during hearings.)" *Bell v. Waffle House*, Inc., 2012 WL

2

12883890, at *7 (Ga.Super.). Because Uniform Superior Court Rule 6.2 does not expressly govern reply briefs by the party that originally filed a motion or additional sur-reply briefs filed by responding party, Defendant submits that such reply briefs can be filed at any time before the ruling on a motion. As Plaintiff notes, the Georgia Court of Appeals has recognized that a trial court has broad discretion to consider supplemental briefing. *Blake v. KES, Inc.*, 329 Ga. App. 742, 747, 766 S.E.2d 138, 143 (2014).

Plaintiff cites the case of *Payton v. City of Coll. Park* for the proposition that the 30-day time frame provided by 6.2 for a respondent to file its initial response or reply to a motion should also govern supplemental or sur-reply briefs. *Payton v. City of Coll. Park*, 368 Ga. App. 396, 399, 890 S.E.2d 278, 281–82 (2023), cert. denied (Dec. 19, 2023), overruled on other grounds by *Wasserman v. Franklin Cnty.,* 911 S.E.2d 583 (Ga. 2025). The *Payton* Court did not expressly hold that Uniform Superior Court Rule 6.2 governs the time for a movant to file a reply or supplemental brief in support of its own motion. Rather, it declined to consider an argument raised in the Plaintiffs' sur-reply filed more than six months after the defendant's original reply brief that the trial court never ruled on in its own order. *Payton v. City of Coll. Park*, 368 Ga. App. 396, 399, 890 S.E.2d 278, 282 (2023), cert. denied (Dec. 19, 2023), overruled by *Wasserman v. Franklin Cnty.*, 911 S.E.2d 583 (Ga. 2025). While the Court did say the "Court did not address this late-filed argument in its orders" and cited Uniform Superior Court Rule 6.2, suggesting that rule might govern the time of supplemental briefs, that is not an express holding of the case.

Even if Uniform Superior Court Rule 6.2 provided a thirty-day deadline for a movant's reply brief or any party's supplemental briefing, Defendant's March 17, 2025 Reply Brief in Support of its Motion to Dismiss was timely filed when applicable automatic extensions allowed by the Civil Practice Act are considered. O.C.G.A. § 9-11-6(e) provides that: "Whenever a party

3

has the right of is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper, other than process, upon him or her, and the notice or paper is served upon the party by mail or e-mail, three days shall be added to the prescribed period." O.C.G.A. § 1-3-1(d)(3) provides an extension for deadlines that fall on weekends or legal holidays. ("Except as otherwise provided by time period computations specifically applying to other laws, when a period of time measured in days, weeks, months, years, or other measurements of time except hours is prescribed for the exercise of any privilege or the discharge of any duty, the first day shall not be counted but the last day shall be counted; and, if the last day falls on Saturday or Sunday, the party having such privilege or duty shall have through the following Monday to exercise the privilege or to discharge the duty")

The Plaintiff served Defendant with her February 10, 2025 Response to Defendant's December 10, 2024 Motion via email, granting Defendant an additional three days to file its Reply. *See* O.C.G.A. § 9-11-6(e). The thirty-third day after the filing of Plaintiff's Response fell on Saturday, March 15. Thus, even if the Uniform Superior Court Rule 6.2 provided a base 30-day deadline for a movant's reply brief in support of its original motion, Defendant had until Monday, March 17, to file any supplemental reply brief in response to Plaintiff's February 10, 2025 response. The Defendant filed its Reply on Monday, March 17, making the Reply timely in any case.

### III. Conclusion

Plaintiff's motion to strike Defendant's March 17, 2025 Reply Brief should be denied, as Defendant's March 17, 2025 Reply Brief was timely filed before any ruling on the related motion. Even if Uniform Superior Court Rule 6.2 were interpreted to set deadlines for supplemental reply briefs, Defendant's March 17, 2025 Reply Brief was timely filed when automatic extensions for

service by email and deadlines falling on weekends are considered. Defendant has no procedural objection to the Court's consideration of Plaintiff's own April 3, 2025 Sur-Reply Brief, although the arguments therein are unpersuasive and outweighed by Defendant's arguments in its own briefing.

RESPECTFULLY SUBMITTED, THIS 10TH DAY OF APRIL, 2025.


Post Office Box 2139                    BOUHAN FALLIGANT LLP
Savannah, Georgia 31402                 /s/ Andrew H. Dekle
Telephone: (912) 232-7000               LUCAS D. BRADLEY
Telefax: (912) 233-0811                 Georgia State Bar No. 672136
ldbradley@bouhan.com                    ANDREW H. DEKLE
ahdekle@bouhan.com                      Georgia State Bar No. 847828
                                        *Attorneys for Defendant Savannah-Chatham*
                                        *County Public School System*

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 4/10/2025 11:19 AM
Reviewer: KW

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

SHELIA GARCIA-WILDER,   )
           )
  Plaintiff,     )
           )
vs.          )  **CIVIL ACTION NO.**
           )  **SPCV24-01173-MO**
SAVANNAH-CHATHAM COUNTY )
PUBLIC SCHOOL DISTRICT,  )
           )
  Defendant.    )

### CERTIFICATE OF SERVICE

  I do hereby certify that I have this day served a true and correct copy of the foregoing on the following counsel of record by same-day electronic mail and via the Court's electronic filing system, with additional courtesy copies by U.S. Mail, as follows:

<table>
<tr><td>

WESLEY WOLF<br>
**WOOLF LAW**<br>
2509 Bull Street<br>
Savannah, Georgia 31405<br>
Telephone: (912) 201-3696<br>
Telefax: (912) 201-3699<br>
woolf@woolflawfirm.net

</td><td>

MATTHEW C. BILLIPS<br>
**BARRETT & FARAHANY**<br>
3344 Peachtree Road, NE<br>
Suite 800<br>
Atlanta, Georgia 30326<br>
Telephone: (470) 284-7265<br>
matt@justiceatwork.com

</td></tr>
</table>

This 10th day of April, 2025.

<table>
<tr><td>

Post Office Box 2139<br>
Savannah, Georgia 31402<br>
Telephone: (912) 232-7000<br>
Telefax: (912) 233-0811<br>
ldbradley@bouhan.com<br>
ahdekle@bouhan.com

</td><td>

BOUHAN FALLIGANT LLP<br>
/s/ Andrew H. Dekle<br>
LUCAS D. BRADLEY<br>
Georgia State Bar No. 672136<br>
ANDREW H. DEKLE<br>
Georgia State Bar No. 847828<br>
*Attorneys for Defendant Savannah-Chatham*<br>
*County Public School System*

</td></tr>
</table>

6